COPY

Anthony J. Oncidi (State Bar No. 118135)
aoncidi@proskauer.com
Robert H. Horn (State Bar No. 134710)
rhorn@proskauer.com
PROSKAUER ROSE LLP
2049 Century Park East
32nd Floor
Los Angeles, California 90067-3206
Telephone: (310) 557-2900
Facsimile: (310) 557-2193

Attorneys for Plaintiff
Aaron L. Mintz

FILED
2012 MAR 23 PM 4: 14
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON L. MINTZ, an individual,<br>Plaintiff,<br>vs.<br>MARK BARTELSTEIN & ASSOCIATES, INC., d/b/a Priority Sports & Entertainment,<br>Defendant. | Case No. CV12-2554-SVW (SSx)<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Aaron L. Mintz ("Mintz"), for his claims against defendant Mark Bartelstein & Associates, Inc., d/b/a Priority Sports & Entertainment ("Bartelstein"), alleges upon knowledge with respect to his own acts, and upon information and belief as to all other matters, as follows.

**INTRODUCTION**

1. The State of California has a fundamental public policy against contracts that prevent workers from engaging in their lawful business endeavors. California Business and Professions Code § 16600 provides in pertinent part that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

2. This case concerns certain post-employment restrictive covenants that, as a matter of law, are unenforceable in the State of California. Mintz is an athlete agent representing professional basketball players. On March 23, 2012, Mintz resigned from Bartelstein to join another sports agency in Los Angeles, California. Mintz resided and worked in Los Angeles, California, throughout his 11-year employment with Bartelstein. His employment contract with Bartelstein provided that, after a six-month probationary period, Bartelstein could terminate Mintz's employment for any reason, or no reason at all, but Mintz was purportedly precluded from competing with Bartelstein for two years after such termination. The employment contract further provided that Bartelstein could terminate Mintz's employment without notice, but that Mintz had to provide at least 14 days notice. This unilateral notice period is a separate and independent unlawful restraint on Mintz's ability to compete.

3. The sports agency for which Mintz intends to work is a Bartelstein competitor located in Los Angeles, California. Any injunction precluding Mintz from competing with Bartelstein after separation from employment would entail enforcement of the restrictive covenants in California. Therefore, the restrictive covenants are enforceable only to the extent permitted under California law. The

post-employment restrictions contained in Mintz's employment agreement are void and unenforceable under California law. Mintz is free to compete with Bartelstein, and to service any of his former clients who may choose to hire him. Therefore, Mintz is entitled to a judicial declaration that the restrictive covenants are void and unenforceable.

4. Mintz seeks to engage in business with professional basketball players who are or will be former clients of Bartelstein and who desire Mintz to provide services to them.

5. Mintz seeks a declaration that the restrictive covenants are void and unenforceable under California law, so that Mintz may represent his former clients in connection with his new employment.

6. If enforced, the noncompetition provisions in Mintz's employment contract would prohibit Mintz from representing his former clients, thus impairing his ability to generate substantial commissions from athletes who themselves earn substantial compensation in salary, marketing contracts, and commercial opportunities.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.

8. The parties are of diverse citizenship. Mintz is a citizen of the State of California and resides in Los Angeles, California. Bartelstein is a corporation organized under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois.

9. The amount in controversy exceeds $75,000, exclusive of interest and costs. Enforcement of the noncompetition clause would cause Mintz to lose income in an amount significantly in excess of $75,000. Typically, representation agreements with athletes provide for the agent to receive as compensation for his services a percentage of the gross value of all existing and future contracts and

commercial opportunities. While the compensation paid to professional basketball players, and the commissions that in turn are earned by the agent, vary depending upon the player's status and other factors, the gross value of such contracts and commercial opportunities is in the millions of dollars. Mintz's former clients at Bartelstein include some of the most recognizable and talented NBA players. These former clients are likely to earn many millions of dollars in employment and endorsement contracts, from which Mintz (and his new employer) would, but for the onerous and unlawful noncompetition provisions in Mintz's employment contract, earn commissions well in excess of $75,000.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as it is where a substantial part of the events giving rise to the claim alleged in this complaint.

**PARTIES**

11. Mintz is a citizen of the State of California who resides in Los Angeles, California. Mintz is an athlete agent, as defined in California Business and Professions Code § 18895, and is engaged in the business of procuring employment for professional basketball players with professional sports teams and organizations.

12. Bartelstein is a corporation organized under the laws of the State of Illinois, with its principal place of business and headquarters in Chicago, Illinois. Bartelstein is engaged in the business of recruiting and soliciting athletes to enter into agent, endorsement, and financial services contracts, and procuring employment for athletes with professional sports teams and organizations. Although Bartelstein has an office in Los Angeles, California, its principal place of business is Chicago, Illinois, and the vast majority of its business activity takes place in Illinois.

**FACTUAL BACKGROUND**

13. From September 25, 2001 until his resignation on March 23, 2012, Mintz was employed by Bartelstein and represented professional basketball players on Bartelstein's behalf. Throughout his 11-year employment with Bartelstein,

Mintz resided and worked in Los Angeles, California. At the time of his hiring, Mintz was young and fresh out of college school, whereas Bartelstein was a leading sports, entertainment and media company with a dominant position in the field of representing professional basketball players.

14. When Bartelstein hired Mintz, it required him to sign a non-negotiable form employment agreement (the "Employment Agreement") that contained a noncompetition clause. A true and correct copy of the Employment Agreement is attached hereto as Exhibit A.

15. Section IV.A of the Employment Agreement, entitled "Term/Termination," provided that, after a six-month probationary period, Bartelstein could "terminate the Employee's employment with Company for any reason or no reason upon oral or written notice to the Employee and such termination of employment shall be effective immediately." By contrast, section V of the Employment Agreement, entitled "Post-Employment," states:

> A. For two (2) years following the termination of the Employee's employment, regardless of the reason therefore, the Employee agrees that the Employee will not, directly or indirectly, on behalf of himself or others either as an employee, consultant, owner, independent contractor or in any other capacity whatsoever:
>
> 1. Solicit Company Clients;
>
> 2. Recruit Company employees for or on behalf of Company Competitors;
>
> 3. Disclose Confidential Business Information to persons not affiliated with the Company, including, without limitation, Company Competitors, without the Company's prior written consent; or

4. Provide, or assist in providing, either directly or through a Company Competitor, services that are, or are similar to the ser vices, provided by the Company to a Company Client.

Thus, Bartelstein could terminate Mintz's employment at any time, with or without notice, and then preclude him from "directly or indirectly" soliciting or representing any Bartelstein client or former client for a period of two years.

16. Section IV.A of the Employment Agreement provided that, after the first six months of employment, Bartelstein may "terminate the Employee's employment with the Company for any reason or no reason upon oral or written notice to the Employee and such termination of employment shall be effective immediately." By contrast, section IV.D of the Employment Agreement stated:

> Employee may terminate his employment with Company for any reason or not reason upon fourteen (15) days' written notice to the Company. In the event that the Employee provides such written notice to the Company, including during the Employee's first six (6) months of employment with the Company, the Company may elect in its sole discretion to terminate the Employee's employment with the Company effective immediately upon oral or written notice to the Employee of such election.

Put simply, whereas the Employment Agreement permitted Bartelstein to terminate Mintz's employment immediately without notice, it purported to restrict Mintz's ability to terminate his employment – and to prevent him from competing with Bartelstein – for two weeks. This non-compete provision is not enforceable under California law.

17. Mintz seeks to engage in business with and provide services to professional athletes who desire to retain his services, and who are or will be former clients of Bartelstein, or were or are prospective clients of Bartelstein with whom Mintz had dealings. If enforced, the noncompetition provisions in the Employment Agreement would (i) prohibit Mintz from engaging in his business and providing the services that such athletes desire, and (ii) prohibit Mintz's new employer in the course of its business from having Mintz represent such athletes. The noncompetition provisions are void under California law.

18. Part Two of California's Business and Professions Code is entitled "Preservation and Regulation of Competition." Chapter 1 of Part Two is entitled "Contracts in Restraint of Trade." Business and Professions Code § 16600, which is set forth within Chapter 1 of Part Two, addresses noncompetition clauses in employment contracts. It provides, in pertinent part, that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Under § 16600, all post-employment noncompetition covenants are void. *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008) ("noncompetition agreements are invalid under section 16600, even if narrowly drawn, unless they fall within the applicable statutory exceptions").

19. The noncompetition provisions in the Employment Agreement fall squarely within section 16600. If enforced, the noncompetition provisions would bar Mintz from engaging in any business with any former Bartelstein clients because Mintz would be barred for two years from "directly or indirectly" representing anyone who was a client of Bartelstein.

20. The noncompetition provisions are particularly unreasonable because, if enforced, it would allow Bartelstein to terminate Mintz without cause at any time after the initial six months of his employment, and then preclude Mintz from terminating his employment immediately and from representing potential clients for

a period of two years. The noncompetition provisions are void under California law.

**THE CONTROVERSY BETWEEN THE PARTIES**

21. Mintz contends that the noncompetition provisions are unenforceable as they violates Business and Professions Code § 16600 and violates the public policy in California prohibiting contracts in restraint of trade.

22. Upon information and belief, Bartelstein contends that the noncompetition provisions are enforceable and that it is entitled to injunctive relief barring Mintz from terminating his employment immediately and from engaging in business with former Bartelstein clients for two years.

23. Bartelstein included within the Employment Agreement at section VI.A a provision purporting to provide it the right to "immediate injunctive relief against the Employee to prevent further violations of the Agreement," but did not include a corresponding right for Mintz. Bartelstein also included at section VI.B a provision purporting to provide it with a right to recover its attorneys' fees, but did not include a corresponding right for Mintz.

**CLAIM FOR RELIEF**

**(Declaratory Relief under 28 U.S.C. §§ 2201, 2202, Fed. R. Civ. P. 57)**

24. Mintz incorporates herein by this reference the allegations in paragraphs 1 through 23 above.

25. An actual, present, and justiciable controversy has arisen between Mintz and Bartelstein regarding the enforceability of the noncompetition provisions in the Employment Agreement.

26. Mintz contends that the noncompetition provision are governed by California law and are invalid and unenforceable as a matter of law under California Business and Professions Code § 16600.

27. Unless the noncompetition provisions are invalidated, Mintz will not be able to represent, and his new employer will not be able to have Mintz represent,

clients formerly affiliated with Bartelstein, which will cause substantial damages to Mintz.

28. Upon information and belief, Bartelstein contends that the noncompetition provisions are enforceable and that it is entitled to specific performance of those provisions, which would preclude Mintz from engaging in business with prospective clients.

WHEREFORE, Mintz prays for a judgment against Bartelstein as follows:

1. A judicial declaration that the noncompetition provisions in the Employment Agreement are unenforceable;

2. A judicial declaration that Bartelstein is not entitled to equitable relief barring Mintz from violating any restrictive covenant in the Employment Agreement;

3. For costs of suit incurred herein; and

4. For such other and further relief as this Court may deem to be just and proper.

DATED: March 23, 2012

Anthony J. Oncidi
Robert H. Horn
PROSKAUER ROSE LLP

By: [signature]
Anthony J. Oncidi

Attorneys for Plaintiff
Aaron L. Mintz

# EXHIBIT A

# EMPLOYMENT AGREEMENT

THIS AGREEMENT is made as of this 25th day of September, 2001 by and between MARK BARTELSTEIN AND ASSOCIATES, INC. d/b/a PRIORITY SPORTS & ENTERTAINMENT (the "Company"), and AaARON MINTZ (the "Employee").

I. DEFINITIONS

A. "Company Competitor" means a corporation, partnership, joint venture, sole proprietorship, association, firm, person, or other entity that is in the sports and/or entertainment agency or management business or that offers services that are the same or similar to those offered by the Company, including, any business area which the Company may enter into subsequent to the Employee's execution hereof.

B. "Confidential Business Information" means trade secrets and other confidential or proprietary information that the Company has developed or maintained or may develop or maintain, including, without limitation, client names and addresses, client agreements or contracts (including the terms and conditions thereof), special requirements of clients, Company financial reports, and Company business plans and strategies, and which the Company has made or may make reasonable efforts to maintain the secrecy thereof.

C. "Company Clients" means any person that has been solicited by and/or utilized the services of and/or from the Company during the period commencing two (2) years before the date of this Agreement and through the termination of the Employee's employment with the Company.

D. "Recruit Company employees" means to persuade, attempt to persuade, solicit or otherwise induce Company employees to leave the Company and to work for a Company Competitor or to hire Company employees on behalf of a competitor or Company Competitor.

E. "Solicit Company Clients" means to solicit, attempt to solicit, assist in the solicitation of, or otherwise participate in the solicitation of, Company Clients to hire or do business with a Company Competitor.

II. EMPLOYMENT DUTIES

A. The Company agrees to employ the Employee in such position and with the duties and responsibilities provided for in Exhibit A, as may be changed from time to time by the Company. The Employee hereby accepts such employment and agrees:

1. To devote all working time, knowledge, skill, attention, and energy, using his best efforts, to the duties and responsibilities set forth herein;

2. To serve and further the interests of the Company in every lawful way; and

3. To follow the Company's policies and directives, and any modifications thereof.

B. The Employee agrees that during the Employee's employment with the Company the Employee will not, directly or indirectly, on behalf of himself or others either as an employee, consultant, owner, independent contractor or in any other capacity whatsoever:

1. Solicit Company Clients or business on behalf of a Company Competitor;

2. Recruit Company employees on behalf of a Company Competitor;

3. Perform or engage in activities or in the provision of services, in any capacity, on behalf of or for a Company Competitor;

4. Become an officer, director, partner, stockholder (other than of an entity listed on a national securities exchange or traded in the over-the-counter market, in which case the ownership of not more than 1% of the outstanding securities of any class thereof shall not be

Ex. A -10-

considered a breach of this subparagraph B.4), co-venturer, lender or other investor, consultant, or employee of any Company Competitor; or

5. Disclose Confidential Business Information to anyone, including, without limitation, Company Competitors not affiliated with the Company, without the Company's prior written consent.

C. Without the Company's prior written consent, the Employee will not copy, duplicate, and/or remove documents containing Confidential Business Information from Company offices or any other location where such documents are maintained in the regular course and scope of Company business. Notwithstanding the preceding sentence, the Employee may remove such documents if done in the ordinary course of his or her obligations and responsibilities in connection with the Employee's employment by the Company provided that the Employee returns such documents to the Company promptly after use.

## III. COMPENSATION

As compensation for the services to be performed by the Employee under this Agreement and for the covenants herein, including but not limited to non-disclosure and non-solicitation covenants herein contained, the Company agrees to pay and to provide to the Employee, and the Employee agrees to accept an annual salary of $30,000. The Company, in its sole discretion, shall determine what, if any, additional compensation, raises and/or bonuses the Company may pay or provide to the Employee. The Company shall also provide the Employee with such employee benefits, if any, offered from time to time by the Company to employees in positions similar to that of the Employee.

IV. TERM/TERMINATION

A. The Employee's employment by the Company pursuant to the terms of this Agreement shall commence on the date hereof and shall continue until terminated by the Company or Employee in accordance with the terms of this Agreement. The Company agrees that it shall not terminate Employee's employment with the Company during the Employee's first six (6) months of employment with the Company except for "Cause" as defined below. After the Employee's first six (6) months of employment with the Company, the Company may terminate the Employee's employment with the Company for any reason or no reason upon oral or written notice to the Employee and such termination of employment shall be effective immediately. The Company may at any time, including during the Employee's first six (6) months of employment with the Company, terminate the Employee's employment with the Company immediately for "Cause," which shall mean: (1) conduct amounting to fraud, dishonesty, or willful misconduct; (2) a material breach of the Employee's obligations under this Agreement including the Employee's failure to perform the Employee's job duties in accordance with the Company's employment policies and practices; or (3) conviction of or entry of a plea of nolo contendere, no contest, adjudication withheld or similar lack of a dispositive finding of innocence in response to a criminal charge or charges which constitute a felony, crime of falsehood, or crime involving fraud or moral turpitude. In the event such "Cause" shall exist, the Company may terminate this Agreement, effective immediately, upon notice to the Employee.

B. In addition, notwithstanding anything in this Agreement to the contrary, the Company may terminate the Employee's employment with the Company on 15 days' written notice to the Employee after a physician appointed by the Company verifies that the Employee is disabled and unable to perform the essential duties for which he was employed for a period of six (6) months in any 12-consecutive-month period. During any such period of disability, the Employee shal

Ex A
-12-

be entitled only to such compensation as provided under any of the Company's applicable salary continuation, short-term disability, and long-term disability plans.

C. In the event of any termination by the Company of the Employee's employment pursuant to this section, the Employee shall be entitled to receive the compensation due under this Agreement only through the effective date of such termination.

D. Employee may terminate his employment with the Company for any reason or no reason upon fourteen (14) days' written notice to the Company. In the event that the Employee provides such written notice to the Company, including during the Employee's first six (6) months of employment with the Company, the Company may elect in its sole discretion to terminate the Employee's employment with the Company effective immediately upon oral or written notice to the Employee of such election.

V. POST-EMPLOYMENT

A. For two (2) years following the termination of the Employee's employment, regardless of the reason therefore, the Employee agrees that the Employee will not, directly or indirectly, on behalf of himself or others either as an employee, consultant, owner, independent contractor or in any other capacity whatsoever:

1. Solicit Company Clients;

2. Recruit Company employees for or on behalf of Company Competitors;

3. Disclose Confidential Business Information to persons not affiliated with the Company, including, without limitation, Company Competitors, without the Company's prior written consent; or

4. Provide, or assist in providing, either directly or through a Company Competitor, services that are, or are similar to the services, provided by the Company to a Company Client.

B. Upon and after the termination of Employee's employment, regardless of the reason therefor, the Employee shall not copy, duplicate, and/or remove documents containing Confidential Business Information from Company offices, and the Employee will promptly return to the Company any such documents the Employee possesses.

## VI. ENFORCEMENT

A. The Employee acknowledges that the Employee's breach of this Agreement would cause the Company irreparable harm, and that the Company would have no adequate remedy at law. Thus, the Employee agrees that, in the event the Employee breaches the Agreement, the Company will be entitled to immediate injunctive relief against the Employee to prevent further violations of the Agreement.

B. The Employee agrees that, if the Employee breaches this Agreement, the Employee will be liable to the Company for damages resulting from the breach, including but not limited to court costs and reasonable attorneys' fees.

C. This Agreement and any disputes arising under it will be governed by the laws of the State of Illinois without regard to principles of conflicts of laws.

D. The parties hereto acknowledge that this Agreement is enforceable in the state courts of Illinois. The parties hereto further consent to the jurisdiction of the state courts of Cook County, Illinois, and further agree to waive any objection that they may have to the jurisdiction or venue of such courts to adjudicate any dispute arising under this Agreement.

Ex A
14

VII. WAIVERS/MODIFICATIONS

A. The Company's failure to enforce, or delay in enforcing, any provision of this Agreement is not a waiver of any of its rights under the Agreement. Waiver of any provision of this Agreement must be in writing and signed by the Company.

B. All modifications of this Agreement must be in writing and signed by each of the parties hereto.

VIII. SEVERABILITY

A. In the event a court holds any provision of this Agreement to be invalid and unenforceable, the remaining provisions hereof shall nonetheless remain enforceable.

B. In the event a court holds any provision of this Agreement to be unreasonable or overbroad, such provision shall be deemed amended to its reasonable or narrow application to the extent necessary to make the provision enforceable and shall be enforced as amended.

IX. ENTIRE AGREEMENT

A. This Agreement is the entire agreement between the parties with respect to the subject matter hereof.

B. The Employee acknowledges that the Employee has read this Agreement in its entirety, has been afforded reasonable time to consult any attorney regarding its terms, and has entered into this Agreement freely, willingly, voluntarily, and with full understanding of its terms and acknowledge the terms are reasonable and enforceable against the Employee.

**MARK BARTELSTEIN & ASSOCIATES, INC. d/b/a PRIORITY SPORTS & ENTERTAINMENT**

By [signature]

Its Pres.dent

**AaARON MINTZ**

[signature]

Dated: 10/2/01

Ex A -15-

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

**CV12- 2554 SVW (SSx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[ ] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.



AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the
CENTRAL District of CALIFORNIA

AARON L. MINTZ, an individual,

*Plaintiff*

v.

MARK BARTELSTEIN & ASSOCIATES, INC., d/b/a Priority Sports & Entertainment,

*Defendant*

Civil Action No. CV12-2554-SVW (SSx)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*
MARK BARTELSTEIN & ASSOCIATES, INC.,
d/b/a Priority Sports & Entertainment

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Anthony J. Oncidi, Esq.
Robert H. Horn, Esq.
Proskauer Rose LLP
2049 Century Park East, Suite 3200
Los Angeles, California 90067-3206

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*
SEAL
MARILYN DAVIS

Date: MAR 23 2012

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

This summons for *(name of individual and title, if any)* ______________________

was received by me on *(date)* ______________ .

☐ I personally served the summons on the individual at *(place)* ______________________ on *(date)* ______________ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* ______________ , a person of suitable age and discretion who resides there, on *(date)* ______________ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* ______________________ , who is designated by law to accept service of process on behalf of *(name of organization)* ______________________ on *(date)* ______________ ; or

☐ I returned the summons unexecuted because ______________________ ; or

☐ Other *(specify)*:

My fees are $ __________ for travel and $ __________ for services, for a total of $ __________ .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________
*Server's signature*

______________________
*Printed name and title*

______________________
*Server's address*

Additional information regarding attempted service, etc: