1  ADRIAN M. PRUETZ - State Bar No. 118215
   apruetz@glaserweil.com
2  PATRICIA L. GLASER - State Bar No. 55668
   pglaser@glaserweil.com
3  LAUREN GIBBS - State Bar No. 251569
   lgibbs@glaserweil.com
4  GLASER WEIL FINK JACOBS
     HOWARD AVCHEN & SHAPIRO LLP
5  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
6  Telephone:  (310) 553-3000
   Facsimile:  (310) 556-2920
7
   Attorneys for Defendant and Counterclaimant
8  Mark Bartelstein & Associates Inc.
   d/b/a Priority Sports & Entertainment

9              UNITED STATES DISTRICT COURT
10             CENTRAL DISTRICT OF CALIFORNIA
                    WESTERN DIVISION

| | |
|---|---|
| 11  AARON L. MINTZ, an individual, | CASE NO.: CV12-2554 SVW (SSx) |
| 12              Plaintiff, | Hon. Stephen V. Wilson |
| 13  v. | **COUNTERCLAIM OF MARK** |
| 14  MARK BARTELSTEIN & | **BARTELSTEIN & ASSOCIATES INC.** |
|     ASSOCIATES INC., d/b/a PRIORITY | **D/B/A PRIORITY SPORTS &** |
| 15  SPORTS & ENTERTAINMENT, an | **ENTERTAINMENT FOR:** |
|     Illinois company, | (1)  BREACH OF CONTRACT; |
| 16 | (2)  BREACH OF THE COVENANT OF |
|              Defendant. |       GOOD FAITH AND FAIR |
| 17  MARK BARTELSTEIN & |       DEALING; |
|     ASSOCIATES INC. d/b/a PRIORITY | (3)  BREACH OF THE DUTY OF |
| 18  SPORTS & ENTERTAINMENT, an |       LOYALTY; |
|     Illinois corporation, | (4)  MISAPPROPRIATION OF TRADE |
| 19 |       SECRETS; |
| 20              Counterclaimant, | (5)  INTENTIONAL INTERFERENCE |
|     |       WITH CONTRACTUAL |
| 21  v. |       RELATIONS; |
|     | (6)  INTENTIONAL INTERFERENCE |
| 22  AARON L. MINTZ, an individual, and |       WITH PRESENT AND |
|     CREATIVE ARTISTS AGENCY, LLC, a |       PROSPECTIVE ECONOMIC |
| 23  Delaware limited liability company, |       ADVANTAGE AND BUSINESS |
|     |       RELATIONSHIPS; |
| 24              Counterdefendants. | (7)  CONVERSION; |
|     | (8)  VIOLATION OF CALIFORNIA |
| 25 |       PENAL CODE § 502; |
|     | (9)  DEFAMATION; |
| 26 | (10) TRADE LIBEL; |
|     | (11) CONSPIRACY; AND |
| 27 | (12) CALIFORNIA UNFAIR BUSINESS |
|     |       PRACTICES |
| 28 | [JURY TRIAL DEMANDED] |

761229

Counterclaimant Mark Bartelstein & Associates Inc. d/b/a Priority Sports & Entertainment ("Priority Sports" or "Counterclaimant") submits the following counterclaims against plaintiff and counterdefendant Aaron L. Mintz and counterdefendant Creative Artists Agency, LLC ("CAA") (collectively "Counterdefendants") and alleges as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action under 28 U.S.C. § 1332, in that there is diversity of citizenship and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 because the claims are so related as to form part of the same case or controversy.

2.      Counterdefendants reside in this district, are subject to personal jurisdiction in this district and a substantial portion of the events giving rise to this action occurred in this district. Personal jurisdiction and venue are therefore proper in this district pursuant to 28 U.S.C. §1391. Moreover, by bringing its complaint against Priority Sports in this Court, Mintz consented to the Court's jurisdiction.

## NATURE OF THE ACTION

3.      Mintz and his new employer CAA appear to be engaged in a reckless and relentless campaign to improperly solicit Priority Sports' clients by misappropriating and misusing Priority Sports' confidential, proprietary and trade secret information and by tarnishing Priority Sports' and Mark Bartelstein's good name and the business reputation it took them dozens of years to build and earn. Evidence that has recently come to light suggests that for months, Mintz has been working for CAA and against Priority Sports while still employed by Priority Sports. In fact, Mintz filed this lawsuit while he was still employed by Priority Sports and still denying to Priority Sports that he was leaving! Only after Mintz was caught in his lies did he hurriedly resign to avoid being fired.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

761229

4.      Once Mintz's misconduct came to light, Mintz and CAA decided to follow the adage "the best defense is a good offense," bringing outrageous and meritless claims against Priority Sports and Mark Bartelstein, all in an attempt to preempt Priority Sports' claims against them and distract the public from Mintz and CAA's own misconduct.  However, it is Mintz, with CAA's knowledge, encouragement and participation, that breached his employment agreement with Priority Sports, breached the covenant of good faith and fair dealing and breached his duty of loyalty.  It is Mintz who misappropriated Priority Sports' confidential, proprietary and trade secret information; interfered with Priority Sports' contractual and business relations; converted Priority Sports' property; defamed and libeled Priority Sports' and Mark Bartelstein's good name and business reputation; and committed various acts of computer fraud and unfair business practices.

5.      On information and belief, CAA conspired with Mintz to plan and commit these acts and also engaged in unfair business practices.

## THE PARTIES

6.      Priority Sports is an Illinois corporation with its principal place of business at 325 N. LaSalle Street, Suite 650, Chicago, Illinois 60654.

7.      On information and belief, counterdefendant Mintz is a citizen of the State of California who resides in Los Angeles, California.

8.      On information and belief, counterdefendant CAA is a Delaware limited liability company with its principal place of business at 2000 Avenue of the Stars, Los Angeles, California 90067.

## FACTUAL ALLEGATIONS

## PRIORITY SPORTS HIRES MINTZ

9.      Priority Sports is a full service sports management firm with over twenty years of experience representing National Football League ("NFL"), National Basketball Association ("NBA") and international athletes.  In a notoriously cut-throat business, Priority Sports is comprised of honest, ethical, hard-working,

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

2

761229

passionate and productive professionals who make it a point to build long lasting and meaningful relationships with their athletes and employees.

10.     Priority Sports was founded in 1985 and has become one of the elite firms in the sports management industry.  Priority Sports chooses to remain independently owned so it is not beholden to the bottom line of a large bureaucratic company, but to the best interests of the players it represents.

11.     Priority Sports commits itself not only to the career and well being of its players, on and off the court, but also to its employees.  Priority Sports prides itself on cultivating and furthering the careers of its employees, and considers them family.

12.     In September 2001, Priority Sports hired Mintz.  On information and belief, Mintz had been highly unsuccessful in at least two other sports agencies before he was hired by Priority Sports, but he represented himself as honest and hardworking so Priority Sports gave him another chance.  Priority Sports offered Mintz a position as an intern, even though he had no existing clients, lacked any relevant experience, and would need to be trained to become a basketball player agent.

13.     From his hire date until he unexpectedly, and without proper notice, resigned, Mintz was employed by Priority Sports as an intern, an administrative assistant and eventually, as a basketball player agent.  At the time of his resignation, Mintz had been promoted to the position of President of Athlete Representation.  His job responsibilities included, but were not limited to, assisting Priority Sports in evaluation and development of its professional basketball player clients, lower level contract negotiations, day-to-day assistance with client services and assistance in finding employment opportunities for players.

## THE EMPLOYMENT AGREEMENT
## BETWEEN MINTZ AND PRIORITY SPORTS

14.     As part of Priority Sports' and the sports management industry's custom and practice, and as a precondition to his employment at Priority Sports, Priority Sports asked Mintz to sign an employment agreement.  Mintz agreed and entered into

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

the employment agreement with Priority Sports on September 25, 2001 (the "Employment Agreement").  A true and correct copy of the Employment Agreement is attached hereto as Exhibit A.

15.     As Priority Sports is an Illinois corporation with its principal place of business in Chicago, Illinois, and with the majority of its business activities taking place in Illinois, the Employment Agreement contained a non-competition provision that is valid and customary in Illinois.

16.     At the time Mintz signed the Employment Agreement, such non-competition provisions were also valid and customary in California.

17.     As part of his employment duties, Mintz agreed:

> 1. To devote all working time, knowledge, skill, attention, and energy, using his best efforts, to the duties and responsibilities set forth therein;
>
> 2. To serve and further the interest of the Company in every lawful way; and
>
> 3. To follow the Company's policies and directives, and any modifications thereof.

Employment Agreement, Ex. A, at ¶ II.A.

18.     Mintz also agreed that:

"during [Mintz]'s employment with [Priority Sports] [Mintz] will not directly or indirectly, on behalf of himself or others as an employee, consultant, owner, independent contractor or in any other capacity whatsoever:

> 1. Solicit Company Clients or business on behalf of a Company Competitor;
>
> 2. Recruit Company employees on behalf of a Company Competitor;
>
> 3. Perform or engage in activities or in the provision of services, in any capacity, on behalf of or for a Company Competitor;
>
> 4. Become an officer, director, partner, stockholder (other than of an entity listed on a national securities exchange or traded in the over-the counter market, in which case the ownership of not more than 1% of the outstanding securities of any class thereof shall not be considered a breach of this subparagraph B.4), co-venturer,

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

4

PRIORITY SPORTS' COUNTERCLAIM

761229

lender or other investor, consultant, or employee of any Company Competitor; or

5. Disclose Confidential Business Information to anyone, including, without limitation, Company Competitors not affiliated with the Company, without the Company's prior written consent."

Employment Agreement, Ex. A, at ¶ II.B.

19. Mintz agreed to give fourteen days written notice of termination of his employment with Priority Sports. Employment Agreement, Ex. A, at ¶ IV.D.

20. The Employment Agreement also provided that for two (2) years following the termination of Mintz's employment, Mintz would not "directly or indirectly, on behalf of himself or others either as an employee, consultant, owner, independent contractor or in any other capacity whatsoever: … (3) Disclose Confidential Business Information to persons not affiliated with the Company, including, without limitation, Company Competitors, without the Company's prior written consent[.]" Employment Agreement, Ex. A, at ¶ V.A.

21. The Employment Agreement also provided that after termination of his employment, Mintz would not "copy, duplicate, and/or remove documents containing Confidential Business Information from [Priority Sports] offices, and [Mintz] will promptly return to [Priority Sports] any such documents [Mintz] possesses." Employment Agreement, Ex. A, at ¶ V.B.

22. The Employment Agreement defined a Company Competitor as "a corporation, partnership, joint venture, sole proprietorship, association, firm, person or other entity that is in the sports and/or entertainment agency or management business or that offers services that are the same or similar to those offered by the Company, including, any business area which the Company may enter into subsequent to [Mintz's] execution hereof." Employment Agreement, Ex. A, at ¶ I.A.

23. "Confidential Business Information" is defined in the Employment Agreement as "trade secrets and other confidential or proprietary information that [Priority Sports] has developed or maintained or may develop or maintain, including,

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

761229

without limitation, client names and addresses, client agreements or contracts (including the terms and conditions thereof), special requirements of clients, [Priority Sports] financial reports, and [Priority Sports] business plans and strategies, and which [Priority Sports] has made or may make reasonable efforts to maintain the secrecy thereof." Employment Agreement, Ex. A, at ¶ I.B.

24.     The Employment Agreement contains a severability provision in which Mintz agreed that:

> (A) In the event a court holds any provision of this Agreement to be invalid and unenforceable, the remaining provisions shall nonetheless remain enforceable, and

> (B) In the event a court holds any provision of this Agreement to be unreasonable or overbroad, such provision shall be deemed amended to its reasonable or narrow application to the extent necessary to make the provision enforceable and shall be enforced as amended.

Employment Agreement, Ex. A, at ¶ VIII.

## PRIORITY SPORTS' CONFIDENTIAL INFORMATION

25.     In the sports agency industry, client contacts, preferences, plans and strategies are vitally important and this information is not readily available to the public.

26.     Priority Sports has compiled its list of its customers, contacts, preferences, plans and strategies (the "customer lists"). The customer lists contain detailed information, compiled over the decades of its business at great expense and countless hours. The customers lists include some or all of the following information with regard to each customer: client names, addresses, emails, cell phone numbers and birthdays; names and contact information of client family members and other key decisions makers; domestic and international client agreements or contracts (including confidential terms and conditions thereof); recruiting plans and strategies, career options and strategies, special requirements, interests and preferences of

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

clients; domestic and international consultants and preferred service providers (such as sports doctors) in domestic and international locations. Other types of confidential information include, but are not limited to, business plans and strategies. This information is not readily available to the public.

27. Priority Sports has expended great time, energy and resources to protect its invaluable trade secrets, including its customer lists. For example, as set forth above, every employee must sign an agreement agreeing to keep all confidential information secret. *See e.g.,* Employment Agreement, Ex. A at II.A and B.

28. Priority Sports' confidential information policy is reiterated in the Priority Sports' employee handbook, which all employees, including Mintz, received:

> Our work and all information related to our clients is completely confidential. Without the prior approval of Mark Bartelstein, employees are not permitted to discuss any such information with any individual, firm, entity, or agency directly related to Priority or not in the ordinary course of business.

> Similarly, Priority possesses confidential information that must not be revealed to outside parties. Our client list, business plans and strategies, financial information, and personnel information are examples of confidential information that cannot be disclosed to any unauthorized person. Significantly, your confidentiality obligation does not end with your separation of employment with Priority.

> Any violation of this policy is grounds for immediate discipline up to and including discharge.

Employee Handbook at § 5.22

29. Section 5.25, "Code of Conduct," of the Employee Handbook further states, in part:

> **B. The following acts of misconduct will result in discipline up to and including immediate dismissal.**

> …

> 7. Removal of Priority property, records, or confidential information without authorization.

> …

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

761229

8.  Theft of Priority or employee property.

…

10.  Competing with Priority.

…

15.  Unauthorized use or disclosure of confidential information or records.

(Emphasis in original.)

30.     Priority Sports takes at least the following steps to secure its confidential information.  Priority Sports' trade secret information and data are maintained in a database stored on its secure network servers and accessible only by headquarters employees.  Priority Sports spends significant resources to maintain the security of this data and the integrity of the information technology servers on which it is stored. The servers and information contained therein are secured by up-to-date firewalls. Every Priority Sports employee must enter a unique user name and password to log on to his or her computer and computers time-out after two minutes of inactivity. The original player contracts are securely stored in Bartelstein's office and are available to only certain high-level employees, on a need-to-know basis.  Priority Sports' offices are in a secured building. Guests must check in with security and only have access to Priority Sports' offices if access is approved by Priority Sports and they are escorted by a Priority Sports' employee.

## MINTZ PLOTS AND SCHEMES WITH CAA TO BREACH HIS EMPLOYMENT AGREEMENT AND MISAPPROPRIATES PRIORITY SPORTS' CONFIDENTIAL INFORMATION

31.     Mintz worked for Priority Sports for over 11 years.  During this time, other employees at Priority Sports, including Bartelstein, came to think of Mintz as not just an employee, but as family.

32.     Due to the training and opportunities provided to Mintz at Priority Sports, he was promoted and given the title of President of Athlete Representation

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

8

761229

1  and he progressed from the annual salary of $30,000 stated in his Employment

2  Agreement to a salary of approximately $250,000, with considerable opportunity for

3  an increase.

4       33.    As President of Athlete Representation and a Priority Sports player agent

5  and executive, Mintz owed Priority Sports a duty of loyalty including, but not limited

6  to, acting for the benefit of Priority Sports, protecting the interests of Priority Sports,

7  and subordinating his personal interests to those of Priority Sports.  Mintz also had

8  contractual duties of loyalty to the company.  *See, e.g.,* Employment Agreement,

9  Ex. A, at ¶ II.B.

10       34.    Mintz had no prior basketball agent experience and on information and

11  belief, had been highly unsuccessful in at least two other companies before he was

12  hired at Priority Sports.  Mintz gained all of his experience in this field and learned all

13  of his professional basketball contacts and client information through his employment

14  at Priority Sports.

15       35.    Throughout the past year, a trainer to a number of basketball players

16  informed Priority Sports that Mintz said things that implied he was going off on his

17  own or to another firm.  Mintz later told this same trainer he had a deal from another

18  agency and that Mintz had targeted certain players to take with him.  Priority Sports

19  discussed these allegations at length with Mintz, who adamantly and repeatedly

20  denied them.  Based on their long and close relationship, the Employment Agreement

21  and Mintz's assurances, Priority Sports chose to believe Mintz.

22       36.    After that, Mintz started acting erratically.  He was out of the office for

23  long periods at a time that were unexplained and unaccounted for, he missed business

24  calls, he made inconsistent statements and he began withdrawing from his friendships

25  with Bartelstein and others.

26       37.    On March 23, 2012, Bartelstein received a call from another sports

27  industry participant who told him that Mintz was leaving Priority Sports.

28

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

761229

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

38.    Bartelstein called Mintz the morning of March 23, 2012 to discuss this most recent allegation.  (Bartelstein was in the Chicago office and Mintz was in the Los Angeles office at the time.)  Mintz adamantly denied that he was leaving Priority Sports and said that the rumor was "crazy" and "I don't know why people are saying this."  He then abruptly ended the call and was observed calling someone else on his cell phone and having a short whispered conversation.  Mintz was then observed deleting emails from his computer.

39.    Shortly thereafter, Mintz left the office of Priority Sports and was unreachable for the rest of the workday.  Despite having worked at Priority Sports for eleven years, he ignored both phone calls and text messages from his supervisor, Bartelstein, and from his colleagues.  He later acknowledged that he had spent the day talking with CAA's attorney, Anthony Oncidi, of Proskauer Rose LLP.

40.    Later on the night of March 23, Mintz finally returned Bartelstein's call.  He again denied that he was terminating his employment, as Priority Sports had been told, and stated "I don't think there is anything to that."  Bartelstein said: "What do you mean you don't think there is anything to that?  This is your life.  Is it true or not?"  Only then did Mintz answer the question and reveal that he was leaving Priority Sports.

41.    Following Mintz and Bartelstein's call, Mintz submitted a letter of resignation and told a colleague that his attorney, Anthony Oncidi (who has been CAA's lawyer for more than a decade), had been advising Mintz regarding his termination and had filed the complaint in this action earlier that day—while Mintz was still employed by Priority Sports.

42.    Despite having resigned from Priority Sports, and despite having been asked on March 23 to return any Priority Sports property in his possession, Mintz instead removed the Priority Sports files, laptop, cell phone and office keys from his office.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

43.     Mintz's actions reek of dishonesty and disloyalty.  Mintz continuously and adamantly denied that he was terminating his employment at Priority Sports, while at the same time meeting and consulting with CAA and CAA's attorneys about suing Priority Sports to try and break his Employment Agreement and on information and belief, was already working for CAA.  Even after the complaint in this action was filed, Mintz lied about the fact that he was leaving Priority Sports!

44.     Mintz was required to give a minimum of fourteen days notice of termination.  The notice period is intended to give Priority Sports time to talk with any players Mintz worked with and ensure a smooth transition.  Mintz did not give the required notice and in fact, on information and belief, began surreptitiously speaking to Priority Sports players well before he announced his resignation to Priority Sports, all in an effort to mislead the players, lure them to CAA,  hide his dishonesty and disloyalty, and undermine Priority Sports' ability to defend itself.

45.     On information and belief and as evidenced by the calls Bartelstein received and other evidence, Mintz began working for CAA before he resigned from Priority Sports.  For example, on information and belief, on or around March 7, 2012, while still employed with Priority Sports, Mintz solicited certain NBA players who were Priority Sports' clients on behalf of CAA.  On information and belief, CAA knew in advance of and approved this trip on its behalf through its attorney Mr. Oncidi.  On information and belief, Mintz also met and communicated with other CAA representatives and employees before he terminated his employment with Priority Sports.

46.     On information and belief, Mintz continued to sit in on high-level strategy meetings after he began working for CAA and while still employed at Priority Sports, and relayed this Confidential Information to CAA.  On information and belief, Mintz also removed all his files from his desk on March 23, and took them along with the company laptop computer and cell phone, with the intention of misappropriating Priority Sports' Confidential Information, including its customer

lists, and using it to improperly solicit Priority Sports' clients on his own behalf and on behalf of CAA.

47.   On information and belief, Mintz copied the Priority Sports files maintained on his computer and in hard copy before and after his resignation.   On information and belief, with CAA and its attorney's knowledge and approval and at their behest, Mintz improperly misappropriated and is using and intends to continue using, Priority Sports' Confidential Information, including its customer lists, to take customers from and compete directly with Priority Sports.

48.   For example, in the period preceding his departure from Priority Sports, Mintz sent business emails and information to his Gmail account, which he now contends was his personal account (although it was linked by Mintz to his business account and used by Mintz in connection with his employment at Priority Sports). Mintz was not permitted or authorized to transfer these company emails and confidential and proprietary company information to his personal account for his own personal use.   As an illustration, Section 5.12 of the Employee Handbook, entitled "Internet Access Policy," provides, in relevant part:

- Employees must abide by all federal and state laws with regard to information sent through the Internet.  Company trade secrets, proprietary data and confidential information should not be transmitted over the Internet unless required for business purposes, and it must be sent using secured connections and password protected or approved encryption.

- The Company may use software and systems to monitor and record all Internet usage.  Employees should be aware that security systems are capable of recording (for each and every employee) each World Wide Web site visit, each chat, newsgroup or e-mail message, and each file transfer into and out of our internal networks, and we reserve the right to do so at any time.  **No employee should have any expectation of privacy or confidentiality as to his/her Internet usage.  Use of the Internet constitutes an acceptance of such monitoring.**

761229

- Employees are prohibited from using Internet access through the Company network for any personal profit-making activities or searching for employment.

- Employees should be aware that messages composed, sent or received on the Company e-mail system are, and remain, the property of the Company. All e-mail is subject to review by the Company and Company management reserves the right to monitor e-mail files at any time without advance notice. Anyone who does not consent to such inspection, or uses the e-mail system for improper purposes, may be subject to disciplinary action, up to and including discharge.

(Emphasis in original.)

49.     As yet another example of Mintz's theft and misappropriation, even though Priority Sports asked on March 23 and several times thereafter, Mintz did not return Priority Sports' property in his possession, including, but not limited to, the company documents, laptop computer, cell phone and office keys. On information and belief, the laptop computer, which Mintz used during his employment with Priority Sports, has over 11 years of confidential, proprietary information stored on it. The computer, cell phone and documents contain sensitive, confidential, and proprietary information, including, but not limited to, customer lists, which include client names, addresses, emails, cell phone numbers and birthdays; names and contact information of client family members and other key decisions makers; recruiting plans and strategies, career options and strategies, domestic and international client agreements or contracts (including confidential terms and conditions thereof); special requirements, interests and preferences of clients; and domestic and international consultants and preferred service providers (such as sports doctors) in domestic and international locations.

50.     CAA and its attorneys have acknowledged that the laptop computer and company files are Priority Sports' property, but they did not offer to return Priority Sports' computer, documents and keys until April 10, 2012. They have refused to

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

13

761229

1  return the cell phone.  On information and belief, Mintz and/or CAA have destroyed

2  and/or are attempting to destroy evidence showing the depth of their misconduct.

3      51.    On information and belief, CAA knew of Mintz's contract with and

4  obligations to Priority Sports, as well as contracts between Priority Sports and its

5  basketball clients.  CAA conspired with Mintz to breach his contract and duty of

6  loyalty to Priority Sports by, among other things, asking and incentivizing Mintz to

7  solicit Priority Sports' clients on behalf of CAA while he was still an employee of

8  Priority Sports, and using Priority Sports Confidential Information, including its

9  customer lists, to try to poach Priority Sports' clients.

10  **MINTZ DEFAMES PRIORITY SPORTS**

11      52.    On information and belief, Mintz has made false, misleading and

12  damaging statements about Priority Sports.  For example, Mintz told members of the

13  sports media that another employee was leaving, although this information was

14  confidential, and he did so in a manner that suggested the employee was leaving

15  because Priority Sports' business was not good.  Mintz's comments were widely

16  tweeted and stated as: "Hearing at least 1 person @ priority sports feels betrayed by

17  Mintz leaving. Whispers that another employee on the way out."  In fact, the

18  employee supposedly "on the way out" was retiring on good terms with the company,

19  and others have been designated to cover his responsibilities.

20      53.    Mintz also has been approaching basketball players under contract to

21  Priority Sports and telling them, their families and their advisors that there will be a

22  "mass exodus" of players from Priority Sports, naming specific players.  Mintz's

23  statements are patently false and damaging and were made with the clear intention of

24  damaging Priority Sports.

25      54.    Mintz has also falsely represented to basketball players under contract to

26  Priority Sports that "he did all the work" at Priority Sports and that Mark

27  Bartelstein—who hired Mintz as an inexperienced intern and trained him to be a

28  player agent—"only came in at the last minute to get his name in the paper."  These

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

statements are patently false and damaging and were made with the clear intent to damage Mark Bartelstein and Priority Sports. To further damage Priority Sports, Mintz told these players, their families and their advisors that "Priority Sports was going to fall apart because of his leaving."

55.    Mintz's statements noted above were false and defamatory, and have damaged Priority Sports and Mark Bartelstein.

56.    In sum, Mintz and CAA have engaged in a campaign to misappropriate Priority Sports' Confidential Information, improperly solicit its clients, and smear its good name and reputation.  Priority Sports feels confident that discovery, including testimony from the players Mintz and CAA improperly solicited, will reveal just how deep their lies and deceitfulness go.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

### Against Counterdefendant Mintz

57.    Priority Sports realleges and incorporates by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

58.    On or about September 25, 2001, Priority Sports and Mintz entered into the Employment Agreement, a binding contract.

59.    Priority Sports performed all of its obligations under the Employment Agreement or has been excused therefrom.

60.    Pursuant to the Employment Agreement, Mintz agreed: "(1) To devote all working time, knowledge, skill, attention, and energy, using his best efforts, to the duties and responsibilities set forth herein; (2) To serve and further the interest of the Company in every lawful way; and (3) To follow the Company's policies and directives, and any modifications thereof."  Employment Agreement, Ex. A, at ¶ II.A.

61.    The Employment Agreement provided that during his employment Mintz would not:  "(1) Solicit Company Clients or business on behalf of a Company

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

Competitor; (2) Recruit Company employees on behalf of a Company Competitor; (3) Perform or engage in activities or in the provision of services, in any capacity, on behalf of or for a Company Competitor; ….. or (5) Disclose Confidential Business Information to anyone, including, without limitation, Company Competitors not affiliated with the Company, without the Company's prior written consent." Employment Agreement, Ex. A, at ¶ II.B.

62. Pursuant to the Employment Agreement, Mintz was required to give fourteen days written notice of termination. Employment Agreement, Ex. A, at ¶ IV.D.

63. The Employment Agreement provided that for two years following the termination of Mintz's employment, Mintz would not "directly or indirectly, on behalf of himself or others either as an employee, consultant, owner, independent contractor or in any other capacity whatsoever: … (3) Disclose Confidential Business Information to persons not affiliated with the Company, including, without limitation, Company Competitors, without the Company's prior written consent[.]" Employment Agreement, Ex. A, at ¶ V.A.

64. Mintz was also to return all company property, and the Employee Agreement provides that Mintz will not "copy, duplicate, and/or remove documents containing Confidential Business Information from the Company offices, and [Mintz] will promptly return to the Company any such documents the Employee possesses."

65. These provisions are valid and enforceable.

66. The confidentiality covenants and other provisions contained in the Employment Agreement are reasonably necessary to protect legitimate protectable interest in confidential, proprietary and trade secret information, customer relationships, work force and good will.

67. Mintz has breached and continues to breach the Agreement by, at least:

  a) Working for and on behalf of CAA while he was still employed at Priority Sports;

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

16

761229

b)  Soliciting and recruiting clients for CAA while he was still employed at Priority Sports;

c)  Misappropriating Confidential Business Information, including, but not limited to, emails and other confidential, proprietary and trade secret information;

d)  Disclosing Confidential Business Information to CAA while he was still employed at Priority Sports;

e)  Failing to give fourteen days written notice of termination;

f)  Failing to return all company property and Confidential Information, including, but not limited to, physical documents and electronic documents stored on his company-issued laptop computer and cell phone containing Confidential Business Information; and

g)  Continuing to disclose and utilize confidential, proprietary and/or trade secret information to benefit Mintz and Priority Sports' competitor, CAA.

68.    The Employment Agreement contains Severability provision in which Mintz agreed that:

(A) In the event a court holds any provision of this Agreement to be invalid and unenforceable, the remaining provisions shall nonetheless remain enforceable, and

(B) In the event a court holds any provision of this Agreement to be unreasonable or overbroad, such provision shall be deemed amended to its reasonable or narrow application to the extent necessary to make the provision enforceable and shall be enforced as amended.

69.    As a direct and proximate result of Mintz's breaches, Priority Sports has been damaged in an amount to be determined at trial.

70.    As a direct and proximate result of at least one of these many breaches, Priority Sports has been injured and faces irreparable injury unless Mintz is enjoined

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1  and restrained by order of this Court.  By way of example and not limitation, Priority

2  Sports is threatened with losing clients, its competitive advantage, its trade secrets and

3  its good will in ways that may be impossible to compensate.

### SECOND CLAIM FOR RELIEF

**Breach of the Covenant of Good Faith and Fair Dealing**

**Against Counterdefendant Mintz**

7    71.    Priority Sports realleges and incorporates by reference each and every

8  allegation contained in the above paragraphs as if fully set forth herein.

9    72.    The Employment Agreement between Priority Sports and Mintz

10  contained an implied covenant of good faith and fair dealing that requires the parties

11  to act reasonably and in good faith in fulfilling their respective obligations to one

12  another, and to refrain from undertaking any actions to deprive the other of the benefit

13  of the bargain.

14    73.    Mintz has breached the covenant of good faith and fair dealing by the

15  acts alleged herein, which include, but are not limited to: working for and soliciting

16  Priority Sports' clients on behalf of CAA while still an employee of Priority Sports;

17  misappropriating and using Priority Sports Confidential Information for his own and

18  CAA's benefit and to compete with Priority Sports while still employed by Priority

19  Sports and after; and by his many other acts of deceit and disloyalty.

20    74.    As a direct and proximate result of Mintz's breach and bad faith, Priority

21  Sports has been damaged in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF

**Breach of Duty of Loyalty**

**Against Counterdefendant Mintz**

25    75.    Priority Sports realleges and incorporates by reference each and every

26  allegation contained in the above paragraphs as if fully set forth herein.

27    76.    As President of Athlete Representation and a Priority Sports basketball

28  player agent and executive, Mintz owed Priority Sports a duty of loyalty, care,

*Glaser Weil Fink Jacobs*
*Howard Avchen & Shapiro LLP*

18

761229

1  diligence and skill, including acting for Priority Sports' benefit, protecting Priority

2  Sports' interests and refraining from undertaking or participating in activities adverse

3  to the interests of Priority Sports.  Such duties were contained and reaffirmed in the

4  parties' Employment Agreement and the Employee Handbook.

5      77.   Mintz breached his duty to Priority Sports as a result of the acts alleged

6  herein, including, but not limited to:

     a)  Working for and on behalf of CAA while he was still employed at
        Priority Sports;

     b)   Soliciting and recruiting clients for CAA while he was still employed
        at Priority Sports;

     c)  Misappropriating Confidential Business Information, including, but
        not limited to, emails and other confidential, proprietary and trade
        secret information;

     d)   Disclosing Confidential Business Information to CAA while he was
        still employed at Priority Sports;

     e)  Using Priority Sports' time and resources to plan his move to CAA;
        and

     f)  Using his position at Priority Sports for his own and CAA's benefit
        and for his future move to CAA in his interactions with Priority
        Sports' clients.

21      78.   As a direct and proximate result of Mintz's breach of his duty of loyalty

22  owed to Priority Sports, Priority Sports has suffered damages in an amount to be

23  determined in accordance with proof at trial.

24      79.   Mintz's actions were willful, wanton, malicious, and oppressive and

25  justify an award of exemplary and punitive damages.

26  / / /

27  / / /

28  / / /

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

761229

# FOURTH CLAIM FOR RELIEF

## Misappropriation of Trade Secrets

### Against Counterdefendants

80.     Priority Sports realleges and incorporates by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

81.     At all relevant times, Priority Sports was in possession of trade secret information as defined by California's Uniform Trade Secrets Act ("CUTSA"), Civil Code § 3426.1(d), which consisted of, at least, its customer lists, including client names, addresses, emails, cell phone numbers and birthdays, names and contact information of client family members and other key decisions makers, domestic and international client agreements or contracts (including confidential terms and conditions thereof), recruiting plans and strategies, career options and strategies, special requirements, interests and preferences of clients, and domestic and international consultants and preferred service providers (such as sports doctors) in domestic and international locations; and business plans and strategies.

82.     Mintz was provided access to such trade secrets as a consequence of his executive position.  The Priority Sports proprietary business and customer information to which Mintz was provided access constitutes trade secrets because, as described herein, Priority Sports derives independent economic value from that information, such information is not generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy.

83.     Despite Priority Sports' demand, Mintz removed from Priority Sports' premises and failed and refused to return Priority Sports' confidential and proprietary files, his cell phone or the laptop computer issued by Priority Sports to Mintz that, on information and belief, contains over 11 years worth of highly confidential and

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

761229

1    proprietary information, despite Priority Sports' demand that he return this property at

2    the time of his resignation on March 23, 2012 and after.

3         84.    Nearly three weeks after his resignation, on April 10, 2012, CAA and

4    Mintz's lawyers notified Priority Sports' lawyers that they could pick up the laptop

5    computer, the keys to Priority Sports' office and two boxes of Priority Sports

6    documents Mintz had taken from Priority Sports' office. They refused to return the

7    company cell phone.

8         85.    On information and belief, Mintz did not plan to resign on March 23 and

9    would have resigned later, at the end of the basketball season, had Priority Sports not

10   discovered his deception.  Accordingly, Mintz had not completed his

11   misappropriation of Priority Sports' Confidential Information, including its customer

12   lists, and his deletion of incriminating evidence at the time of his resignation.

13        86.    On information and belief, Mintz spent the period between March 23 and

14   April 10 unlawfully copying and transferring Priority Sports' Confidential

15   Information and deleting incriminating evidence of his unauthorized acts from his

16   laptop computer, cell phone and company documents.

17        87.    CAA is aware that Mintz has a duty to not use or disclose Priority

18   Sports' Confidential Information, including its customer lists.  On information and

19   belief, CAA is aware of and has encouraged Mintz to misappropriate and use Priority

20   Sports' Confidential Information, including its customer lists, for the benefit of CAA

21   and to wrongfully compete with Priority Sports.

22        88.    Counterdefendants' wrongful conduct in misappropriating and using

23   Priority Sports' Confidential Information, including customer lists and the

24   confidential, proprietary and trade secret information contained therein, unless and

25   until enjoined and restrained by order of this Court, will cause great and irreparable

26   injury to Priority Sports' business.

27        89.    As a direct and proximate result of Counterdefendants' wrongful

28   conduct, Priority Sports has been damaged in an amount to be determined at trial.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

761229

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

90.     Counterdefendants' actions were willful, wanton, malicious and oppressive and justify an award of exemplary and enhanced damages and attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### Intentional Interference With Contractual Relations

### Against Counterdefendant CAA

91.     Priority Sports realleges and incorporates by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

92.     As set forth above, Priority Sports and Mintz had an existing business relationship and valid and subsisting written Employment Agreement.

93.     On information and belief, CAA knew of this relationship and contract. On information and belief, CAA intentionally interfered with this relationship and contract by inducing and compensating Mintz to work for, solicit Priority Sports' clients, and misappropriate Confidential Information, including trade secrets and proprietary and confidential information other than trade secrets, on behalf of CAA, while Mintz was still employed by Priority Sports.

94.     As a result of CAA's interference, the contract between Priority Sports and Mintz was disrupted and breached, as set forth above.

95.     As a direct and proximate result of CAA's wrongful conduct, Priority Sports has been damaged in an amount to be determined at trial.

96.     In doing the acts alleged herein, CAA acted with oppression, fraud, malice, and in conscious disregard of the rights of Priority Sports, and Priority Sports is thus entitled to punitive damages according to proof at the time of trial.

/ / /

/ / /

/ / /

/ / /

/ / /

761229

## **SIXTH CLAIM FOR RELIEF**

### **Intentional Interference with Present and Prospective**

### **Economic Advantage and Business Relationships**

### **Against Counterdefendants**

97.    Priority Sports realleges and incorporates by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

98.    As set forth above, Priority Sports and Mintz had an existing business relationship that resulted and likely would have continued to result in an economic benefit to Priority Sports.

99.    Priority Sports also had an existing business relationship with certain basketball players that resulted and likely would have continued to result in an economic benefit to Priority Sports.

100.    On information and belief, CAA knew of Mintz and Priority Sports' relationship.  On information and belief, CAA intentionally interfered with and intended to disrupt this relationship by doing the wrongful acts set forth above, including inducing Mintz to work for, solicit Priority Sports' clients, and misappropriate Confidential Information, including trade secrets and proprietary and confidential information other than trade secrets, on behalf of CAA, while Mintz was still employed by Priority Sports.

101.    Mintz and CAA(on information and belief) also knew of Priority Sports' relationship with certain basketball players and intentionally interfered with and intended to disrupt these relationships by using Priority Sports' Confidential Information, including proprietary and confidential information other than trade secrets, to improperly solicit Priority Sports' clients.

102.    As a direct and proximate result of Counterdefendants' wrongful conduct, Priority Sports has been damaged in an amount to be determined at trial.

103.    In doing the acts alleged herein, Counterdefendants' acted with oppression, fraud, malice, and in conscious disregard of the rights of Priority Sports,

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

23

761229

and Priority Sport is thus entitled to punitive damages according to proof at the time of trial.

### SEVENTH CLAIM FOR RELIEF

### Conversion

### Against Counterdefendant Mintz

104.   Priority Sports realleges and incorporates by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

105.   In addition to Mintz's misappropriation and usage of Priority Sports' trade secrets as described above, Mintz also removed and retained property belonging to Priority Sports, including, but not limited to, two boxes of Priority Sports' documents, a laptop computer and cell phone owned by Priority Sports, without Priority Sports' consent, for his personal economic advantage.

106.   As a proximate result of Mintz's removal and retention of Priority Sports' property, Mintz has caused Priority Sports to suffer damages in an amount to be proven at trial.

107.   The acts of conversion by Mintz were done willfully and maliciously, with the deliberate intent to injure Priority Sports' business, thereby entitling Priority Sports to exemplary damages and/or attorneys' fees in an amount to be proven at trial.

### EIGHTH CLAIM FOR RELIEF

### Violation of California Penal Code § 502

### Against Counterdefendant Mintz

108.   Priority Sports realleges and incorporates by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

109.   Priority Sports maintains and owns a computer network, computer programs, or software and a computer system as those terms are defined in the California Penal Code § 502 (collectively "Computer System"), and which includes the computers and network provided by Priority Sports to Mintz while he was

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

761229

1  employed by Priority Sports.  On its Computer System, Priority Sports maintains its

2  data, including its confidential, proprietary and trade secret information.

3      110.   On information and belief, Mintz knowingly and without permission or

4  exceeding permission, accessed Priority Sports' Computer System and the property

5  and data contained therein; and took, transferred, copied, and thereafter made use of

6  the data and supporting documents from the Computer System.

7      111.   Mintz did these acts knowingly and without permission under California

8  Penal Code § 502 and in violation of Priority Sports' express computer and internet

9  usage policies, which he agreed to follow.  On information and belief, Mintz deleted

10  and/or destroyed all evidence of his misdeeds in derogation of his legal obligations

11  under the statute.  Mintz acted for the benefit of Priority Sports' competitor CAA

12  and/or his own personal interests and therefore, his actions were "without

13  permission."  Mintz's actions violated Priority Sports' policies, including, but not

14  limited to, the Employment Agreement and Employee Handbook.

15      112.   On information and belief, Mintz engaged in these actions knowingly

16  and intentionally, and for the purposes of wrongfully obtaining and controlling

17  Priority Sports' property and data.

18      113.   Mintz's conduct violates California Penal Code § 502, including, but not

19  limited to, c(c)(1), (2), (3), (6) and (7).

20      114.   As an actual and proximate result of Mintz's conduct, Priority Sports has

21  suffered actual and/or consequential damages in an amount to be proven at the time of

22  trial, but in excess of the jurisdictional amount of this Court.

23      115.   Priority Sports has also suffered irreparable injury from these acts, and

24  due to the continuing threat of such injury, has no adequate remedy at law, entitling

25  Priority Sports to injunctive relief and other equitable relief.

26      116.   Mintz's wrongful conduct described above was oppressive, fraudulent

27  and malicious, entitling Priority Sports to an award of punitive and exemplary

28  damages in a sum sufficient to punish and make an example of Mintz.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

25

761229

117.   Priority Sports is also entitled to recover its reasonable attorneys' fees pursuant to California Penal Code § 502(e).

### NINTH CLAIM FOR RELIEF

### Defamation

### Against Counterdefendant Mintz

118.   Priority Sports realleges and incorporates by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

119.   As set forth above, Mintz has made false and defamatory statements about Priority Sports to third parties that have injured Priority Sports' reputation. For example, Mintz told members of the sports media that another employee was leaving, although this information was confidential, and he did so in a manner that suggested the employee was leaving because Priority Sports' business was not good.  Mintz's comments were widely tweeted and stated as: "Hearing at least 1 person @ priority sports feels betrayed by Mintz leaving. Whispers that another employee on the way out."  In fact, the employee supposedly "on the way out" was retiring on good terms with the company, and others have been designated to cover his responsibilities.

120.   Mintz also has been approaching basketball players under contract to Priority Sports and telling them, their families and their advisors that there will be a "mass exodus" of players from Priority Sports, naming specific players.  Mintz's statements are patently false and damaging and were made with the clear intention of damaging Priority Sports.

121.   Mintz has also falsely represented to basketball players under contract to Priority Sports that "he did all the work" at Priority Sports and that Mark Bartelstein—who hired Mintz as an inexperienced intern and trained him to be a player agent—"only came in at the last minute to get his name in the paper."  These statements are patently false and damaging and were made with the clear intent to damage Mark Bartelstein and Priority Sports. To further damage Priority Sports,

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1    Mintz told these players, their families and their advisors that "Priority Sports was

2    going to fall apart because of his leaving."

3        122.   Mintz's statements noted above were false and defamatory, and have

4    damaged Priority Sports and Mark Bartelstein.

5        123.   These statements tend to injure Priority Sports and Mark Bartelstein in

6    their occupation and business.

7        124.   As a proximate result of Mintz's defamation, Priority Sports has

8    suffered, and will continue to suffer, damages and special damages through a decline

9    in business, loss of goodwill and injury to its business reputation.

10       125.   Mintz's wrongful conduct described above was oppressive, fraudulent

11   and malicious, entitling Priority Sports to an award of punitive and exemplary

12   damages in a sum sufficient to punish and make an example of Mintz.

13                        **TENTH CLAIM FOR RELIEF**

14                              **Trade Libel**

15                     **Against Counterdefendant Mintz**

16       126.   Priority Sports realleges and incorporates by reference each and every

17   allegation contained in the above paragraphs as if fully set forth herein.

18       127.   As set forth above, Mintz has made false statements to others that

19   disparaged the quality of Priority Sports' property, goods and/or services.

20       128.   Mintz's false statements have induced others not to deal with Priority

21   Sports.

22       129.   As a proximate result of Mintz's trade libel, Priority Sports has suffered,

23   and continues to suffer, damages in an amount to be shown according to proof.

24       130.   Priority Sports has no adequate remedy at law and will continue to be

25   damaged unless this Court enjoins and restrains Mintz from making false statements

26   about Priority Sports and Priority Sports' property, goods and/or services.

27   / / /

28   / / /

761229

1    131.   Mintz's wrongful conduct described above was oppressive, fraudulent

2    and malicious, entitling Priority Sports to an award of punitive and exemplary

3    damages in a sum sufficient to punish and make an example of Mintz.

### ELEVENTH CLAIM FOR RELIEF

### Conspiracy

### Against All Counterdefendants

7    132.   Priority Sports realleges and incorporates by reference each and every

8    allegation contained in the above paragraphs as if fully set forth herein.

9    133.   On information and belief, Counterdefendants Mintz and CAA

10   knowingly and willingly conspired and agreed among themselves to engage in a

11   scheme to commit the aforementioned wrongful acts, including, but not limited to,

12   breach of Mintz's contract with Priority Sports and Mintz's duty of loyalty to Priority

13   Sports and to have Mintz misappropriate and use Priority Sports' Confidential

14   Information and defame Priority Sports and Mark Bartelstein, to wrongfully solicit

15   basketball players under contract to Priority Sports while Mintz was still in Priority

16   Sports' employ and after.

17   134.   Counterdefendants did the acts and things alleged herein pursuant to, and

18   in furtherance of, the conspiracy and scheme to breach Mintz's agreement with and

19   his duty of loyalty to Priority Sports and to interfere with Priority Sports' contracts

20   with basketball players and present and prospective economic advantage derived

21   therefrom.  CAA furthered the conspiracy by lending aid and encouragement to and

22   compensating Mintz for his breaches and by having their lawyer serve as Mintz's

23   advisor in doing the acts complained of therein.

24   135.   Counterdefendants conspired and schemed to do the acts alleged herein

25   in furtherance of their own financial gain.

26   136.   As a direct and proximate result of Counterdefendants' conspiracy,

27   Priority Sports has been damaged in an amount to be determined at trial.

28

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

761229

137.    As a direct and proximate result of Counterdefendants' conspiracy, Priority Sports has been injured and faces irreparable injury unless Counterdefendants are enjoined and restrained by order of this Court.  By way of example and not limitation, Priority Sports is threatened with losing clients, its competitive advantage, its trade secrets and its goodwill in ways that may be impossible to compensate.

### TWELFTH CLAIM FOR RELIEF

### California Unfair Business Practices – Cal. Bus. & Prof. Code § 17200 *et seq.*

### Against Counterdefendants

138.    Priority Sports realleges and incorporates by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

139.    California Business and Professions Code § 17200 et seq. prohibits unfair competition in the form of an unlawful, unfair, or fraudulent business practices.

140.    As set forth above, Counterdefendants' conduct is unlawful, unfair, and/or fraudulent.

141.    Accordingly, Counterdefendants have committed unlawful, unfair, and/or fraudulent acts as defined in California Business and Profession Code § 17200.

142.    Counterdefendants' conduct is intentional, and Counterdefendants are fully aware that it is illegal, unfair, and/or fraudulent.

143.    Counterdefendants are fully aware of the harm (both financial and otherwise) that their conduct has caused, and continues to cause, Priority Sports.

144.    As a result of the foregoing, Priority Sports will suffer immediate and irreparable harm, and has suffered, and will continue to suffer, harm, including harm that cannot be adequately compensated by money damages.  Further, Counterdefendants have been unjustly enriched in an amount to be proven at the time of trial, entitling Priority Sports to restitution and/or other equitable relief.

/ / /

/ / /

/ / /

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

761229

### PRAYER FOR RELIEF

WHEREFORE, Priority Sports prays for judgment as follows:

1.     For all actual and compensatory damages in an amount to be proven at trial;

2.     For restitution and/or disgorgement of all money, profits, compensation or property Counterdefendants have acquired or will acquire by any wrongful or unlawful means;

3.     For restitution and/or disgorgement of all money, profits, compensation or property Mintz has acquired or will acquire by or as a result of Mintz's breach of contract, breach of the covenant of good faith and fair dealing and breach of loyalty;

4.     For an order requiring Mintz, as well as those acting in concert with him, including, but not limited to, CAA to:

    a) Return all Priority Sports' trade secrets and confidential information;

    b) Return all Priority Sports' property;

    c) Return and provide access to any and all media and electronic storage devices and virtual repositories containing any Priority Sports' property including, but not limited to, any portable USB storage devices and any other external hard drives used by him;

    d) Produce any and all electronic devices operated or used by Mintz, as well as those acting in concert with him, for inspection and imaging, to verify the use, access, disclosure, printing, copying, and return of confidential property;

    e) Produce any and all online storage areas utilized by Mintz, as well as those acting in concert with him, for inspection, to verify use, access, disclosure, printing, copying, and return of Priority Sports' property;

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

761229

5.    For an injunction, requiring Counterdefendants, their agents, servants and employees, and all persons, acting under, in concert with, or for them:

    a)  To refrain from using Priority Sports' confidential information to solicit any business from, or initiate any further contact with, any customer of Priority Sports whom Mintz served at Priority Sports, and/or any prospective customer or any customers whose identities he learned as a result of his employment with Priority Sports (the "Customers"), including for the purpose of advising any Customers of his new affiliation with CAA or for the purpose of inviting, encouraging, or requesting the transfer of any Customer contracts or accounts from Priority Sports to CAA;

    b) To refrain from continuing the misappropriation of Priority Sports' trade secrets by ongoing use or disclosure of Priority Sports' proprietary information, including, but not limited to, in any communications with Customers;

    c) To refrain from destroying, erasing or otherwise making unavailable for further proceedings in this matter, any records or documents (including data or information maintained in computer files or other electronic storage media in Mintz's possession, custody or control which were obtained from, or contain information derived from, any Priority Sports records, which pertain to Priority Sports' customers, or which relate to any of the events alleged in the counterclaims in this action; and

    d) To return all copies of Priority Sports' trade secrets, as described in Priority Sports' counterclaims, and;

    e) To refrain from making false and defamatory statements about Priority Sports.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

PRIORITY SPORTS' COUNTERCLAIM

761229

6.     For exemplary and punitive damages in an amount to be determined, as appropriate to punish Counterdefendants and deter like conduct;

7.     For prejudgment and post-judgment interest at the maximum legal rate, as provided by the laws of California, as applicable;

8.     For all attorneys' fees and costs and other costs and expenses incurred by Priority Sports in this action; and

9.     That Priority Sports be granted such other and further relief as the Court deems just and proper.

DATED: April _17_, 2012     By: _____

ADRIAN M. PRUETZ
PATRICIA L. GLASER
LAUREN M. GIBBS
GLASER WEIL FINK JACOBS
  HOWARD AVCHEN & SHAPIRO LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, Ca 90067

*Attorneys for Defendant and
Counterclaimant*
Mark Bartelstein & Associates Inc.,
d/b/a Priority Sports & Entertainment

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

761229

## **DEMAND FOR JURY TRIAL**

Priority Sports respectfully requests a jury trial on all issues triable by jury.

DATED:  April _17_ , 2012          By: _[signature]_

ADRIAN M. PRUETZ
PATRICIA L. GLASER
LAUREN M. GIBBS
GLASER WEIL FINK JACOBS
  HOWARD AVCHEN & SHAPIRO LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, Ca 90067

*Attorneys for Defendant and
Counterclaimant*
Mark Bartelstein & Associates Inc.,
d/b/a Priority Sports & Entertainment

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

761229

# EXHIBIT "A"
# EMPLOYMENT AGREEMENT

## EMPLOYMENT AGREEMENT

THIS AGREEMENT is made as of this 25th day of September, 2001 by and between MARK BARTELSTEIN AND ASSOCIATES, INC. d/b/a PRIORITY SPORTS & ENTERTAINMENT (the "Company"), and AaARON MINTZ (the "Employee").

### I. DEFINITIONS

A. "Company Competitor" means a corporation, partnership, joint venture, sole proprietorship, association, firm, person, or other entity that is in the sports and/or entertainment agency or management business or that offers services that are the same or similar to those offered by the Company, including, any business area which the Company may enter into subsequent to the Employee's execution hereof.

B. "Confidential Business Information" means trade secrets and other confidential or proprietary information that the Company has developed or maintained or may develop or maintain, including, without limitation, client names and addresses, client agreements or contracts (including the terms and conditions thereof), special requirements of clients, Company financial reports, and Company business plans and strategies, and which the Company has made or may make reasonable efforts to maintain the secrecy thereof.

C. "Company Clients" means any person that has been solicited by and/or utilized the services of and/or from the Company during the period commencing two (2) years before the date of this Agreement and through the termination of the Employee's employment with the Company.

D. "Recruit Company employees" means to persuade, attempt to persuade, solicit or otherwise induce Company employees to leave the Company and to work for a Company Competitor or to hire Company employees on behalf of a competitor or Company Competitor.

E.  "Solicit Company Clients" means to solicit, attempt to solicit, assist in the solicitation of, or otherwise participate in the solicitation of, Company Clients to hire or do business with a Company Competitor.

## II.  EMPLOYMENT DUTIES

A.  The Company agrees to employ the Employee in such position and with the duties and responsibilities provided for in Exhibit A, as may be changed from time to time by the Company.  The Employee hereby accepts such employment and agrees:

1.  To devote all working time, knowledge, skill, attention, and energy, using his best efforts, to the duties and responsibilities set forth herein;

2.  To serve and further the interests of the Company in every lawful way; and

3.  To follow the Company's policies and directives, and any modifications thereof.

B.  The Employee agrees that during the Employee's employment with the Company the Employee will not, directly or indirectly, on behalf of himself or others either as an employee, consultant, owner, independent contractor or in any other capacity whatsoever:

1.  Solicit Company Clients or business on behalf of a Company Competitor;

2.  Recruit Company employees on behalf of a Company Competitor;

3.  Perform or engage in activities or in the provision of services, in any capacity, on behalf of or for a Company Competitor;

4.  Become an officer, director, partner, stockholder (other than of an entity listed on a national securities exchange or traded in the over-the-counter market, in which case the ownership of not more than 1% of the outstanding securities of any class thereof shall not be

considered a breach of this subparagraph B.4), co-venturer, lender or other investor, consultant, or employee of any Company Competitor; or

     5. Disclose Confidential Business Information to anyone, including, without limitation, Company Competitors not affiliated with the Company, without the Company's prior written consent.

    C. Without the Company's prior written consent, the Employee will not copy, duplicate, and/or remove documents containing Confidential Business Information from Company offices or any other location where such documents are maintained in the regular course and scope of Company business. Notwithstanding the preceding sentence, the Employee may remove such documents if done in the ordinary course of his or her obligations and responsibilities in connection with the Employee's employment by the Company provided that the Employee returns such documents to the Company promptly after use.

### III. COMPENSATION

    As compensation for the services to be performed by the Employee under this Agreement and for the covenants herein, including but not limited to non-disclosure and non-solicitation covenants herein contained, the Company agrees to pay and to provide to the Employee, and the Employee agrees to accept an annual salary of $30,000. The Company, in its sole discretion, shall determine what, if any, additional compensation, raises and/or bonuses the Company may pay or provide to the Employee. The Company shall also provide the Employee with such employee benefits, if any, offered from time to time by the Company to employees in positions similar to that of the Employee.

## IV.  TERM/TERMINATION

A.  The Employee's employment by the Company pursuant to the terms of this Agreement shall commence on the date hereof and shall continue until terminated by the Company or Employee in accordance with the terms of this Agreement.  The Company agrees that it shall not terminate Employee's employment with the Company during the Employee's first six (6) months of employment with the Company except for "Cause" as defined below. After the Employee's first six (6) months of employment with the Company, the Company may terminate the Employee's employment with the Company for any reason or no reason upon oral or written notice to the Employee and such termination of employment shall be effective immediately.  The Company may at any time, including during the Employee's first six (6) months of employment with the Company, terminate the Employee's employment with the Company immediately for "Cause," which shall mean:   (1) conduct amounting to fraud, dishonesty, or willful misconduct; (2) a material breach of the Employee's obligations under this Agreement including the Employee's failure to perform the Employee's job duties in accordance with the Company's employment policies and practices; or (3) conviction of or entry of a plea of nolo contendere, no contest, adjudication withheld or similar lack of a dispositive finding of innocence in response to a criminal charge or charges which constitute a felony, crime of falsehood, or crime involving fraud or moral turpitude.  In the event such "Cause" shall exist, the Company may terminate this Agreement, effective immediately, upon notice to the Employee.

B.  In addition, notwithstanding anything in this Agreement to the contrary, the Company may terminate the Employee's employment with the Company on 15 days' written notice to the Employee after a physician appointed by the Company verifies that the Employee is disabled and unable to perform the essential duties for which he was employed for a period of six (6) months in any 12-consecutive-month period.  During any such period of disability, the Employee shall

be entitled only to such compensation as provided under any of the Company's applicable salary continuation, short-term disability, and long-term disability plans.

C. In the event of any termination by the Company of the Employee's employment pursuant to this section, the Employee shall be entitled to receive the compensation due under this Agreement only through the effective date of such termination.

D. Employee may terminate his employment with the Company for any reason or no reason upon fourteen (14) days' written notice to the Company. In the event that the Employee provides such written notice to the Company, including during the Employee's first six (6) months of employment with the Company, the Company may elect in its sole discretion to terminate the Employee's employment with the Company effective immediately upon oral or written notice to the Employee of such election.

## V. POST-EMPLOYMENT

A. For two (2) years following the termination of the Employee's employment, regardless of the reason therefore, the Employee agrees that the Employee will not, directly or indirectly, on behalf of himself or others either as an employee, consultant, owner, independent contractor or in any other capacity whatsoever:

1. Solicit Company Clients;

2. Recruit Company employees for or on behalf of Company Competitors;

3. Disclose Confidential Business Information to persons not affiliated with the Company, including, without limitation, Company Competitors, without the Company's prior written consent; or

4.  Provide, or assist in providing, either directly or through a Company Competitor, services that are, or are similar to the services, provided by the Company to a Company Client.

B.  Upon and after the termination of Employee's employment, regardless of the reason therefor, the Employee shall not copy, duplicate, and/or remove documents containing Confidential Business Information from Company offices, and the Employee will promptly return to the Company any such documents the Employee possesses.

## VI.  ENFORCEMENT

A.  The Employee acknowledges that the Employee's breach of this Agreement would cause the Company irreparable harm, and that the Company would have no adequate remedy at law.  Thus, the Employee agrees that, in the event the Employee breaches the Agreement, the Company will be entitled to immediate injunctive relief against the Employee to prevent further violations of the Agreement.

B.  The Employee agrees that, if the Employee breaches this Agreement, the Employee will be liable to the Company for damages resulting from the breach, including but not limited to court costs and reasonable attorneys' fees.

C.  This Agreement and any disputes arising under it will be governed by the laws of the State of Illinois without regard to principles of conflicts of laws.

D.  The parties hereto acknowledge that this Agreement is enforceable in the state courts of Illinois.  The parties hereto further consent to the jurisdiction of the state courts of Cook County, Illinois, and further agree to waive any objection that they may have to the jurisdiction or venue of such courts to adjudicate any dispute arising under this Agreement.

## VII. WAIVERS/MODIFICATIONS

A.   The Company's failure to enforce, or delay in enforcing, any provision of this Agreement is not a waiver of any of its rights under the Agreement.  Waiver of any provision of this Agreement must be in writing and signed by the Company.

B.   All modifications of this Agreement must be in writing and signed by each of the parties hereto.

## VIII. SEVERABILITY

A.   In the event a court holds any provision of this Agreement to be invalid and unenforceable, the remaining provisions hereof shall nonetheless remain enforceable.

B.   In the event a court holds any provision of this Agreement to be unreasonable or overbroad, such provision shall be deemed amended to its reasonable or narrow application to the extent necessary to make the provision enforceable and shall be enforced as amended.

## IX. ENTIRE AGREEMENT

A.  This Agreement is the entire agreement between the parties with respect to the subject matter hereof.

B.   The Employee acknowledges that the Employee has read this Agreement in its entirety, has been afforded reasonable time to consult any attorney regarding its terms, and has entered into this Agreement freely, willingly, voluntarily, and with full understanding of its terms and acknowledge the terms are reasonable and enforceable against the Employee.

**MARK BARTELSTEIN & ASSOCIATES, INC. d/b/a PRIORITY SPORTS & ENTERTAINMENT**

By _____

Its _____

**AaARON MINTZ**

_____

Dated: _____