1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

AARON L. MINTZ, an individual,  ) NO. CV 12-02554 SVW (SSx)
                                 )
              Plaintiff,         )
                                 ) **MEMORANDUM DECISION AND ORDER**
        v.                       )
                                 ) **GRANTING IN PART AND DENYING IN**
MARK BARTELSTEIN & ASSOCIATES,   )
INC., d/b/a PRIORITY SPORTS &    ) **PART PLAINTIFF'S MOTION TO**
ENTERTAINMENT, and MARK          )
BARTELSTEIN, an individual,      ) **QUASH SUBPOENA TO AT&T, FOR A**
                                 )
              Defendants.        ) **PROTECTIVE ORDER, AND FOR**
_____  )
                                 ) **SANCTIONS (Docket No. 23)**
AND RELATED COUNTERCLAIMS        )
_____  )

**I.**

**INTRODUCTION**

On March 23, 2012, Aaron L. Mintz ("Plaintiff") filed a Complaint for Declaratory Relief (the "Complaint") against Mark Bartelstein & Associates, Inc., d/b/a Priority Sports & Entertainment ("Defendant" or "Priority Sports").[1] Plaintiff is a sports agent who previously worked

_____

[1] The Court has jurisdiction over the Complaint pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000. (Complaint at 2-3).

for Defendant for eleven years before resigning on March 23, 2012, and accepting a position with a competitor. (Complaint at 1). Plaintiff seeks a declaratory judgment stating that his former contract, which contains a post-employment restrictive covenant, is unenforceable as a violation of California's public policy. (Id.).

On April 6, 2012, Plaintiff filed a Complaint for Damages and Injunctive Relief (the "Second Complaint") against Defendant and Mark Bartelstein (collectively, "Defendants") in Case No. CV 12-03055 SVW (SSx). In the Second Complaint, Plaintiff alleges, inter alia, that Defendants illegally accessed his personal email account, (Second Complaint at 4-5), and seeks damages as well as injunctive relief. (Id. at 16).

On April 17, 2012, Defendants filed a Counterclaim (the "Counterclaim") against Plaintiff in Case No. CV 12-02554 SVW (SSx). On April 25, 2012, Defendants filed the same Counterclaim against Plaintiff in Case No. CV 12-03055 SVW (SSx). In the Counterclaim, Defendants allege, inter alia, that Plaintiff misappropriated trade secrets and conspired with Plaintiff's future employer (a competitor sports agency) to steal clients. (Counterclaim at 9-14).

On June 18, 2012, the District Judge consolidated Case No. CV 12-03055 SVW (SSx) with Case No. CV 12-02554 SVW (SSx) and directed that all subsequent filings be made in the lead case, Case No. CV 12-02554 SVW (SSx).

\\

\\

1    On June 26, 2012, Plaintiff filed a Motion To Quash Subpoena To
2  AT&T, For A Protective Order, And For Sanctions (the "Motion"), as well
3  as a Joint Stipulation Regarding The Motion (the "Joint Stip."). On
4  July 3, 2012, Plaintiff filed a Supplemental Memorandum In Support Of
5  The Motion (the "Plaintiff's Supp. Memo."), as well as Objections To The
6  Declaration Of Lauren M. Gibbs Filed In Opposition To The Motion (the
7  "Objections").[2] Also on July 3, 2012, Defendants filed a Supplemental
8  Memorandum In Opposition To The Motion (the "Defendants' Supp. Memo.").
9
10    In the Motion, Plaintiff seeks to quash a subpoena served on AT&T
11  by Defendants because the subpoena is overbroad and seeks confidential
12  information. (Joint Stip. at 2-4). The subpoena seeks information
13  related to telephone calls and text messages made or received by an AT&T
14  account bearing Plaintiff's name. (Id., Declaration of Robert Horn
15  ("Horn Decl."), Exh. A at 31-32). Defendants contend that this
16  information is necessary to prove their counterclaims that Plaintiff
17  made false and defamatory statements about Priority Sports and
18  improperly solicited Priority Sports' clients while still employed at
19  Priority Sports. (Id. at 5). Defendants further contend that Plaintiff
20  has no expectation of privacy in information related to the AT&T account
21  because Priority Sports owned the account and paid all the bills. (Id.
22  at 4-5). Finally, Defendants contend that Plaintiff expressly waived
23  any privacy rights in the AT&T account because he signed an employment
24

25    [2] In the Objections to the Gibbs declaration, Plaintiff contends
26  that Defendants failed to properly authenticate and lay the foundation
   for the AT&T telephone bills and the Priority Sports Employment Manual
27  submitted as exhibits. (Objections at 1). The Court concludes that
   these objections are moot because the parties subsequently submitted
28  without objection additional declarations to supplement the factual
   record, as discussed below. Accordingly, the Objections are overruled.

1    manual (the "Employment Manual") stating that any personal information

2    on company telephone systems shall be the property of Priority Sports

3    and that Priority Sports has the right to review all e-mail, voice mail,

4    and telephone messages.  (Id. at 5).

5

6        On July 17, 2012, the Court held a hearing to consider the Motion.

7    At the hearing, Plaintiff's counsel objected to Defendants' assertion

8    that, based on the Employment Manual, Plaintiff waived any privacy

9    interest he had in the AT&T account because Defendants failed to provide

10   evidence demonstrating that Plaintiff actually signed or had notice of

11   the Employment Manual.  Defendants' counsel stated that she believed

12   Plaintiff had signed the Employment Manual, but did not know

13   definitively.  Thus, the Court directed the parties to supplement the

14   record to clarify whether Plaintiff signed the Employment Manual, and

15   if not, whether he had notice of it.  On July 24, 2012, Defendants filed

16   a Supplemental Declaration Of Mark Goldstick In Opposition To The Motion

17   (the "Goldstick Decl."), as well as a Supplemental Declaration Of Lauren

18   Gibbs In Opposition To The Motion (the "Gibbs Decl.").  On that same

19   date, July 24, 2012, Plaintiff filed a Declaration of Aaron L. Mintz In

20   Support Of The Motion (the "Mintz Decl.").  The Court has considered the

21   parties' briefs, their statements at the hearing, and the supplemental

22   declarations.  For the reasons stated below, the Court GRANTS IN PART

23   AND DENIES IN PART Plaintiff's Motion.

24   \\

25   \\

26   \\

27   \\

28   \\

4

**II.**

**DISCUSSION**

A.   **The Stored Communications Act Governs Disclosure Of The Content Of Any Messages By AT&T**

The Stored Communications Act ("SCA") generally prohibits "'providers' of communication services from divulging private communications to certain entities and/or individuals." Quon v. Arch Wireless Operating Co., Inc., 529 F.3d 892, 900 (9th Cir. 2008), rev'd on other grounds by City of Ontario, Cal. v. Quon, __ U.S. __ 130 S.Ct. 2619, 177 L. Ed. 2d 216 (2010) (reversing on Fourth Amendment grounds only); see also City of Ontario, 130 S. Ct. at 2627 ("The petition for certiorari filed by Arch Wireless challenging the Ninth Circuit's ruling that Arch Wireless violated the SCA was denied."). The SCA provides different prohibitions depending on whether the communications provider is classified as an "electronic communication service" or a "remote computing service." 18 U.S.C. § 2702(a). The Ninth Circuit has held that wireless communications providers such as AT&T are properly classified as an "electronic communication service." Quon, 529 F.3d at 901 (holding that text messaging pager services provided by Arch Wireless constitute an "electronic communication service" and not a "remote computing service"); see also S. Rep. No. 99-541, at 14 (1986) ("Existing telephone companies and electronic mail companies are providers of electronic communications services.").

Thus, AT&T must comply with the rules applicable to electronic communication services and "shall not knowingly divulge to any person

5

or entity the contents of a communication while in electronic storage by that service," 18 U.S.C. § 2702(a)(1), unless one of the specifically enumerated exceptions in 18 U.S.C. § 2702(b) apply.  18 U.S.C. § 2702(b) contains a number of exceptions which do not apply here, such as the exceptions for law enforcement purposes.  18 U.S.C. § 2702(b)(6)-(8). The relevant exceptions include 18 U.S.C. § 2702(b)(1), which permits the disclosure of the contents of a communication "to an addressee or intended recipient of such communication or an agent of such addressee or intended recipient."  Additionally, 18 U.S.C. § 2702(b)(2) permits the disclosure of the contents of a communication "with the lawful consent of the originator or an addressee or intended recipient of such communication."

    The SCA does not contain an exception for civil discovery subpoenas. See, e.g., Crispin v. Christian Audigier, Inc., 717 F. Supp. 2d 965, 976 (C.D. Cal. 2010) (rejecting argument that the SCA permits the disclosure of the contents of communications pursuant to a civil discovery subpoena)[3]; Flagg v. City of Detroit, 252 F.R.D. 346, 350 (E.D. Mich. 2008) ("[A]s noted by the courts and commentators alike, § 2702 lacks any language that explicitly authorizes a service provider to divulge the contents of a communication pursuant to a subpoena or

---

    [3]   In Crispin, the court explained that reading an exception for civil discovery subpoenas into the SCA "would lead to the anomalous result that, in order to obtain information protected by the SCA, a governmental entity would have to comply with the Federal Rules of Criminal Procedure governing warrants, or for communications more than 180 days old, statutory procedures requiring notice to the subscriber before an administrative subpoena could issue, while a civil litigant could procure information simply by serving a subpoena duces tecum." Crispin, 717 F. Supp. 2d at 975.  Thus, the court concluded that the absence of any exception for civil discovery subpoenas in the text of the statute should be construed as intentional. Id.

court order."); <u>Viacom International Inc. v. Youtube Inc.</u>, 253 F.R.D. 256, 264 (S.D.N.Y. 2008) (holding that the SCA "contains no exception for disclosure of such communications pursuant to civil discovery requests"); <u>In re Subpoena Duces Tecum to AOL, LLC</u>, 550 F. Supp. 2d 606, 611 (E.D. Va. 2008) ("Applying the clear and unambiguous language of § 2702 to this case, AOL, a corporation that provides electronic communication services to the public, may not divulge the contents of the Rigsbys' electronic communications to State Farm because the statutory language of the [SCA] does not include an exception for the disclosure of electronic communications pursuant to civil discovery subpoenas."); <u>O'Grady v. Superior Court</u>, 139 Cal. App. 4th 1423, 1447, 44 Cal. Rptr. 3d 72 (2006) ("Since the [SCA] makes no exception for civil discovery and no repugnancy has been shown between a denial of such discovery and congressional intent or purpose, the Act must be applied, in accordance with its plain terms, to render unenforceable the subpoenas seeking to compel Kraft and Nfox to disclose the contents of e-mails stored on their facilities.").

By contrast, the SCA permits AT&T to "divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) . . . to any person other than a governmental entity." 18 U.S.C. § 2702(c)(6).  Because Defendants are not a governmental entity,[4] AT&T may disclose to them subscriber information, other than content, consistent with the SCA.

---

[4] Governmental entities may obtain both subscriber information and the content of communications, but must comply with additional requirements under the SCA.  <u>See</u> 18 U.S.C. § 2703.

Defendants' subpoena to AT&T requests the following ten categories of documents:

Category No. 1:     DOCUMENTS sufficient to show the date, time, originating and receiving telephone number, originating cell site and sector and duration for all incoming and outgoing calls for telephone number [XXX-XXX-XXXX] from March 23, 2011 to March 23, 2012.

Category No. 2:     DOCUMENTS sufficient to show the date, time, originating and receiving telephone number, originating cell site and sector and duration for all incoming and outgoing calls for Account Number [XXXXXXXXXXXX] from March 23, 2011 to March 23, 2012.

Category No. 3:     DOCUMENTS sufficient to show the date, time, originating and receiving telephone number, originating cell site and sector and duration for all incoming and outgoing calls for Account Number [XXXXXXXXXXXX] from March 23, 2011 to March 23, 2012.

Category No. 4:          DOCUMENTS sufficient to show the date, time, originating and receiving telephone number, originating cell site and sector and duration for all incoming and outgoing calls for any phone number associated with Aaron L. Mintz, Social Security No. [XXX-XX-XXXX] ("MINTZ") from March 23, 2011 to March 23, 2012.

Category No. 5:          DOCUMENTS sufficient to show the date, time, originating and receiving telephone number, originating cell site and sector and content for all incoming and outgoing texts for telephone number [XXX-XXX-XXXX] from March 23, 2011 to March 23, 2012.

Category No. 6:          DOCUMENTS sufficient to show the date, time, originating and receiving telephone number, originating cell site and sector and content for all incoming and outgoing texts for Account Number [XXXXXXXXXXX] from March 23, 2011 to March 23, 2012.

Category No. 7:          DOCUMENTS sufficient to show the date, time, originating and receiving telephone number, originating cell site

1  and sector and content for all incoming
2  and outgoing texts for Account Number
3  [XXXXXXXXXXXX] from March 23, 2011 to
4  March 23, 2012.

5

6  Category No. 8:     DOCUMENTS sufficient to show the date,
7                      time, originating and receiving
8                      telephone number, originating cell site
9                      and sector and content for all incoming
10                     and outgoing texts for any phone number
11                     associated with MINTZ from March 23,
12                     2011 to March 23, 2012.

13

14  Category No. 9:    The visiting location register entries
15                     for telephone number [XXX-XXX-XXXX] for
16                     March 2012.

17

18  Category No. 10:   The visiting location register entries
19                     for any telephone number associated with
20                     MINTZ for March 2012.

21

22  (Joint Stip., Horn Decl., Exh. A at 31-32).

23

24      As set forth above, Category Nos. 1, 2, 3, 4, 9, and 10 seek only
25  subscriber information and not the content of any communications.
26  (Joint Stip., Horn Decl., Exh. A at 31-32).  As Defendants are not a
27  governmental entity, AT&T may disclose this information to them
28  consistent with the SCA.  See 18 U.S.C. § 2702(c)(6).  However, Category

10

1    Nos. 5, 6, 7, and 8 seek the content of incoming and outgoing text
2    messages.  (Joint Stip., Horn Decl., Exh. A at 31-32).  Because AT&T
3    is an "electronic communication service" within the meaning of 18 U.S.C.
4    § 2702(a)(1), it may not disclose the content of text messages unless
5    Defendants are "an addressee or intended recipient of such communication
6    or an agent of such addressee or intended recipient," 18 U.S.C. §
7    2702(b)(1), or unless AT&T obtains "the lawful consent of the originator
8    or an addressee or intended recipient of such communication." 18 U.S.C.
9    § 2702(b)(2).

10

11       The parties have not addressed the application of the SCA to
12   Defendants' subpoena.[5]  However, it does not appear that Defendants are
13   an addressee or intended recipient or an agent of such addressee or
14   intended recipient of any of Plaintiff's text messages.  If they were,
15   Defendants would already have possession of the text messages and would
16   not need to subpoena them.  Defendants also do not have the consent of
17   the originator, Plaintiff, and it does not appear that they have the
18   consent of an addressee or intended recipient of any of Plaintiff's text
19   messages.  Thus, the Court concludes that the SCA prohibits AT&T from
20   disclosing the content of any text messages as sought by Category Nos.
21   5, 6, 7, and 8.

22

23

24       [5]  Neither party addressed the question of Plaintiff's standing to
25   challenge a subpoena to a third party.  In Crispin, the Court
     specifically discussed this issue and concluded that "an individual has
26   a personal right in information in his or her [social networking site]
     the same way that an individual has a personal right in employment and
27   bank records . . . this personal right is sufficient to confer standing
     to move to quash a subpoena seeking such information." Crispin, 717 F.
28   Supp. 2d at 974.

1    While the SCA prohibits AT&T from disclosing the content of any
2    text messages to Defendants pursuant to a subpoena, the SCA does not
3    prevent Defendants from obtaining this information through other means.
4    See, e.g., Flagg, 252 F.R.D. at 366 (holding that although the SCA
5    prohibited a phone company's disclosure pursuant to a civil discovery
6    subpoena, the plaintiff could obtain the same information by serving a
7    request for production of documents on the defendant pursuant to Federal
8    Rule of Civil Procedure 34); Juror Number One v. Superior Court, 206
9    Cal. App. 4th 854, 865, 142 Cal. Rptr. 3d 151 (2012) (holding that
10   although the SCA prohibited the court from ordering Facebook to produce
11   copies of a juror's wall postings, the court could order the juror to
12   request the wall postings from Facebook directly).  Indeed, Federal Rule
13   of Civil Procedure 34(a)(1) expressly permits a party to "serve on any
14   other party a request . . . to produce" "electronically stored
15   information" that is "in the responding party's possession, custody, or
16   control."  Here, documents reflecting the content of Plaintiff's text
17   messages are within his "control" because he has "the legal right to
18   obtain [these] documents on demand" from AT&T.  United States v. Int'l
19   Union of Petroleum & Indus. Workers, 870 F.2d 1450, 1452 (9th Cir.
20   1989); see also Duran v. Cisco Systems, Inc., 258 F.R.D. 375, 379 (C.D.
21   Cal. 2009).  Because Plaintiff is the "originator" of his text messages,
22   he may request copies of these messages from AT&T consistent with the
23   SCA.  See 18 U.S.C. § 2702(b)(2).

24

25   Thus, Defendants may request documents reflecting the content of
26   Plaintiff's relevant text messages, consistent with the SCA, by serving
27

28

12

a request for production of documents on Plaintiff pursuant to Rule 34.[6] See, e.g., O'Grady, 139 Cal. App. 4th at 1446 ("Where a party to the communication is also a party to the litigation, it would seem within the power of a court to require his consent to disclosure on pain of discovery sanctions."). Of course, Plaintiff may raise privacy or other objections to any Rule 34 document request, but those objections have not yet been properly raised before this Court. See Flagg, 252 F.R.D. at 357-58 (holding that the plaintiff could serve a document request pursuant to Rule 34 consistent with the SCA, but noting that the defendant may still raise privilege or relevancy objections).

In sum, the SCA prevents AT&T from providing the content of text messages to Defendants under the current subpoena. However, because Category Nos. 1, 2, 3, 4, 9, and 10 seek only subscriber information and not the content of communications, AT&T may disclose this information to Defendants consistent with the SCA. Although the SCA does not prohibit AT&T from disclosing subscriber information to Defendants, Plaintiff raises privacy objections to this information. (Joint Stip. at 3-4). Thus, the Court must next examine whether the disclosure of Plaintiff's subscriber information violates his privacy rights.

---

[6] At first glance, it may appear that the Court is elevating form over function to conclude that the SCA prohibits a third-party subpoena which can essentially be accomplished through a request for production of documents directed to Plaintiff. However, "it would be far from irrational for Congress to conclude that one seeking disclosure of the contents of e-mail, like one seeking old-fashioned written correspondence, should direct his or her effort to the parties to the communication and not to a third party who served only as a medium and neutral repository for the message." O'Grady, 139 Cal. App. 4th at 1446.

**B.    California Law Governs The Assertion Of Plaintiff's Privacy Rights**

The Court has jurisdiction over this action, including Defendants' counterclaims, pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000. (Counterclaim at 1).  Because jurisdiction is based on diversity, the Court looks to the substantive law of the forum state, California, to resolve the assertion of Plaintiff's privacy rights.  See, e.g., Downing v. Abercrombie & Fitch, 265 F.3d 994, 1005 (9th Cir. 2001); Home Indem. Co. v. Lane Powell Moss & Miller, 43 F.3d 1322, 1326 (9th Cir. 1995); see also F. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").  "Where the state supreme court has not ruled on a question in issue, [a federal court sitting in diversity] look[s] to other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law."  Home Indem. Co., 43 F.3d at 1326 (internal quotation marks omitted).

Under the California Constitution, all people have a constitutionally protected right to privacy.  See Cal. Const. Art. I, § 1 ("All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.").  To prevent a constitutionally protected invasion of privacy, a plaintiff must establish: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by

14

defendant constituting a serious invasion of privacy." <u>TBG Ins.</u>
<u>Services Corp. v. Superior Court</u>, 96 Cal. App. 4th 443, 449, 117 Cal.
Rptr. 2d 155 (2002) (internal quotation marks omitted); <u>accord</u> <u>Life</u>
<u>Technologies Corp. v. Superior Court</u>, 197 Cal. App. 4th 640, 652, 130
Cal. Rptr. 3d 80 (2011).

"Assuming the existence of a legally cognizable privacy interest,
the extent of that interest is not independent of the circumstances, and
other factors (including advance notice) may affect a person's
reasonable expectation of privacy." <u>TBG Ins. Services Corp.</u>, 96 Cal.
App. 4th at 449. "A reasonable expectation of privacy is an objective
entitlement founded on broadly based and widely accepted community
norms, and the presence or absence of opportunities to consent
voluntarily to activities impacting privacy interests obviously affects
the expectations of the participant." <u>Id.</u> (internal quotation marks
omitted).

## 1. Factual Background

As set forth above, the parties have submitted supplemental
declarations to clarify the facts regarding Plaintiff's assertion of his
right to privacy. According to Plaintiff, "[t]he phone number on the
AT&T account identified in Priority Sports' subpoena was [his] personal
mobile phone number before [he] became employed with Priority Sports in
September 2001." (Mintz Decl. at 2, ¶ 2). Plaintiff states that he
"had no other mobile phone number for the more than 11 years [he] was
employed with Priority Sports" and that he "used the mobile phone number
for all of [his] personal mobile phone communications prior to and

during [his] employment." (Id.).  Plaintiff states that "[a]bout two
months after [he] began working [for Priority Sports], [he] mentioned
to Kenny Zuckerman, [his] supervisor and the office manager, that [he]
was using [his] personal mobile phone for business, and asked if the
company would pay [his] phone bill." (Id. at 2, ¶ 3).  Plaintiff states
that "Mr. Zuckerman was able to get the company to pay the bill for
usage of [his] personal phone." (Id.).

Plaintiff states that in "early October 2009," he became
"dissatisfied with Verizon, which was [his] mobile carrier at the time,"
and so he "opened the AT&T account identified in Priority Sports'
subpoena." (Mintz Decl. at 2, ¶ 4).  Plaintiff states that he "set up
the AT&T account as a personal account, not a business account" and that
he "had no other personal mobile number or personal mobile telephone
account." (Id.).  According to Plaintiff, he "simultaneously purchased
a Blackberry from AT&T" at a cost of $413.33.  (Id. at 2, ¶ 5).
Plaintiff states that "Priority Sports paid only $300, and deducted
$113.33 from [his] paycheck." (Id.); (see also id., Exh. 1) (credit
card statement showing cost of Blackberry and pay stub reflecting
deduction).

Plaintiff states that he contacted AT&T regarding his mobile
telephone on March 23, 2012, the same day he resigned from Priority
Sports, and was informed that "[his] personal AT&T account that [he]
opened in early October 2009 had been changed to a Priority Sports
business account in late 2011." (Mintz Decl. at 3, ¶ 6).  Plaintiff
states that he "never requested that [his] personal AT&T account be

16

changed to a business account, nor did [he] authorize anyone to make this change." (Id.).

With regard to the Employment Manual, Plaintiff states that he "never read the manual," that he has "no recollection of having signed [an] acknowledgment" of the terms of the manual, and that he "believe[s] [he] never did." (Mintz Decl. at 3, ¶ 7). Plaintiff states that "no one from [Priority Sports] orally informed [him] of any policy providing any of the following: that [he] could only use [his] Blackberry for company business; that personal use of [his] Blackberry should be kept to an absolute minimum; that Priority Sports was asserting that it own[ed] the Blackberry and [his] personal information stored on the device; that Priority Sports was asserting that it had the right to monitor and review [his] personal information on [his] Blackberry; that Priority Sports was asserting that [he] [had] no right of privacy in information related to [his] personal telephone calls, personal text messages, and call locations." (Id. at 3, ¶ 8).

Finally, Plaintiff states that "[g]iven that the mobile telephone number was [his], the AT&T account was [his] personal account (until someone changed to a Priority Sports business account without [his] knowledge or consent a few months before [his] resignation), [he] paid part of the purchase price of the Blackberry at Priority Sports' insistence, and [he] was unaware of any computer policy concerning mobile devices, [his] expectation was that information related to [his] personal telephone calls, personal text messages, and locations where [he] used [his] mobile phone was [his] private information." (Mintz Decl. at 3-4, ¶ 9).

17

Defendants have offered the declaration of Mark Goldstick, Chief Financial Officer and head of Human Resources of Priority Sports. (Goldstick Decl. at 2, ¶ 1).  Mr. Goldstick asserts that he sent all Priority Sports employees an email on December 28, 2009 "telling them that they would be receiving a revised Priority Sports' employee handbook and that it was 'very important that everyone read and understands the manual so there are no misunderstandings of Priority's policies.'"  (Id. at 2, ¶ 2); (see also id., Exh. 1) (copy of December 28, 2009 email).  Plaintiff is the first addressee in this email.  (Id., Exh. 1).  Mr. Goldstick states that "[o]n December 29, 2009, [he] sent the Employment Manual to [Priority Sports'] employees in the Los Angeles, California office, including [Plaintiff] via UPS."  (Id. at 2, ¶ 3); (see also id., Exh. 2) (copy of UPS shipping bill).  Finally, Mr. Goldstick states that "Priority Sports received confirmation that the package had been delivered on December 31, 2009."  (Id. at 3, ¶ 3).

According to Lauren Gibbs, counsel for Defendants, Plaintiff's counsel provided her with boxes of documents from Plaintiff's office. (Gibbs Decl. at 2, ¶¶ 2-4).  Ms. Gibbs states that one of the boxes contained a copy of the Employment Manual.  (Id. at 2, ¶ 5).  This copy of the Employment Manual contained Section 5.10, which states in relevant part:

> The personal use of Priority equipment or property should be kept to an absolute minimum . . . .  Any personal or other information placed on Priority E-mail, voice mail, telephones, blackberries, or any computer system shall be the property of Priority, and shall not be considered the private

or confidential property of the employee.  Indeed, Priority has the ability and right to review E-mail, voice mail, and telephone messages.

(<u>Id.</u> at 3, ¶ 6); (<u>see also</u> <u>id.</u>, Exh. 2) (copy of Section 5.10 of the Employment Manual).  Finally, Ms. Gibbs notes that Plaintiff admitted receiving a copy of the Employment Manual in his Answer to the Counterclaim.  (<u>Id.</u> at 3, ¶ 7); (<u>see also</u> <u>id.</u>, Exh. 23 at 4, ¶ 28) (copy of Plaintiff's Answer to the Counterclaim).

**2.    Plaintiff Had Only A Limited Expectation Of Privacy In The AT&T Account**

As set forth above, the Court must consider all the circumstances to determine the extent of Plaintiff's expectation of privacy in the AT&T account.  See <u>TBG Ins. Services Corp.</u>, 96 Cal. App. 4th at 450 ("[O]ur decision about the reasonableness of [the employee's] claimed expectation of privacy must take into account any accepted community norms, advance notice to [the employee] about [the employer's] policy statement, and whether [the employee] had the opportunity to consent to or reject the very thing that constitutes the invasion.").  Having considered the facts in the parties' supplemental declarations, the Court concludes that the circumstances weigh both in favor of, and against, Plaintiff's expectation of privacy.  Thus, the Court concludes that Plaintiff had only a limited expectation of privacy in the AT&T account.

19

As an initial matter, the mobile phone number in question was Plaintiff's personal number before he began working for Priority Sports. (Mintz Decl. at 2, ¶ 2). Priority Sports began paying the bill for this phone shortly after Plaintiff started working at Priority Sports because Plaintiff was using his personal phone to also make business calls. (Id. at 2, ¶ 3). Thus, Priority Sports knew that Plaintiff was using the phone to make personal calls. (Id.). The fact that Priority Sports was aware of and permitted Plaintiff to make personal calls increases Plaintiff's expectation of privacy because he could reasonably believe that he had Priority Sports' approval to use the phone for personal reasons.

By contrast, the facts surrounding Plaintiff's purchase of a Blackberry fall both in favor and against an expectation of privacy. Plaintiff transferred his account to AT&T from Verizon in early October 2009 and simultaneously purchased a Blackberry. (Mintz Decl. at 2, ¶¶ 4-5). Plaintiff set up the account as a personal account and paid for part of the cost of the Blackberry. (Id.). The total cost of the Blackberry was $413.33. (Id. at 2, ¶ 5). "Priority Sports paid only $300, and deducted $113.33 from [Plaintiff's] paycheck." (Id.). The fact that Plaintiff paid for part of the cost of the Blackberry increases his expectation of privacy because he could reasonably believe that he owned the phone. However, at the same time, the fact that Priority Sports paid for part of the Blackberry reduces Plaintiff's expectation of privacy because it would have been unreasonable for him to believe that he retained exclusive ownership of the phone.

20

On December 28, 2009, Priority Sports distributed an Employment Manual, (Goldstick Decl. at 2, ¶ 2), which advised employees not to use company equipment for personal reasons and stated that Priority Sports had the right to review all e-mail, voice mail, and telephone messages on company equipment.  (Gibbs Decl. at 3, ¶ 6).  While Plaintiff received a copy of the Employment Manual, (id. at 3, ¶ 7), he never read the manual, has no recollection of signing an acknowledgment of the terms of the manual, and believes that he never signed any such acknowledgment. (Mintz Decl. at 3, ¶ 7). Defendants have not produced any contrary evidence proving that Plaintiff did sign such an acknowledgment.   The fact that Priority Sports distributed the Employment Manual, which Plaintiff acknowledges receiving, (Gibbs Decl. at 3, ¶ 7), reduces Plaintiff's expectation of privacy.  At the same time, however, the fact that Plaintiff never read the Employment Manual or signed an acknowledgment of its terms, mitigates the reduction.

Defendants contend that Plaintiff "has no right to privacy" in the AT&T account and rely primarily on Holmes v. Petrovich Dev. Co., LLC, 191 Cal. App. 4th 1047, 1068-69, 119 Cal. Rptr. 3d 878 (2011). (Joint Stip. at 11).  In Holmes, the California Court of Appeal held that an employee had no expectation of privacy in emails she sent to her attorney from a company computer because the company had a policy against using computers for personal reasons and the policy stated that the company could monitor all emails.  Id. at 1068-71.  The court of appeal emphasized that the computer used to send the emails "belong[ed] to the [company]," that the company had a policy against using its computers for personal reasons, and that the employee was "aware of and agree[d] to these conditions."  Id. at 1068; see also id. at 1068-69

21

1    ("Holmes used her employer's company e-mail account after being warned
2    that it was to be used only for company business, that e-mails were not
3    private, and that the company would randomly and periodically monitor
4    its technology resources to ensure compliance with the policy."). 
5    Indeed, the employee "admitted reading and signing" the company policy.
6    Id. at 1052.
7
8         The Court concludes that Holmes weighs against Plaintiff's
9    expectation of privacy in the AT&T account, but Holmes is
10   distinguishable because Plaintiff did not read or sign the Employment
11   Manual, (Mintz Decl. at 3, ¶ 7), as did the employee in Holmes. Holmes,
12   191 Cal. App. 4th at 1052. Another important distinguishing factor is
13   that Priority Sports knew Plaintiff was using the AT&T account for
14   personal reasons, (Mintz Decl. at 2, ¶ 3), and the fact that Priority
15   Sports did not pay for the total cost of Plaintiff's Blackberry is tacit
16   recognition of this knowledge. (Id. at 2, ¶¶ 4-5). By contrast, in
17   Holmes, the court of appeal emphasized that the employee "did not use
18   her home computer" to send the emails in question, but "[i]nstead, she
19   used [her employer's] computer." Holmes, 191 Cal. App. 4th at 1068.
20
21        Plaintiff contends that the subpoena served on AT&T violates his
22   privacy rights and relies primarily on Sovereign Partners Ltd. P'shp v.
23   Restaurant Teams Int'l, Inc., 1999 WL 993678, at *3-4 (S.D.N.Y. Nov. 2,
24   1999), Herff Jones, Inc. v. Okla. Graduate Servs., 2007 WL 2344705, at
25   *2-5 (W.D. Okla. Aug. 15, 2007), and Special Markets Ins. Consultants,
26   Inc. v. Lynch, 2012 WL 1565348, *1-3 (N.D. Ill. May 2, 2012). (Joint
27   Stip. at 8-9). In Sovereign Partners Ltd. P'shp, the U.S. District
28   Court for the Southern District of New York held that a subpoena to AT&T

1   seeking telephone records "raise[d] significant privacy concerns" and

2   ordered the production of records to the court for in camera review, as

3   well as the production of redacted records to the plaintiff. Sovereign

4   Partners Ltd. P'shp, 1999 WL 993678, at *4. However, the court provided

5   very little analysis of the privacy issues at stake and appeared to be

6   applying New York privacy law. Id. Thus, Sovereign Partners Ltd. P'shp

7   has only slight application to this case.

8

9        In Herff Jones, Inc., the U.S. District Court for the Western

10  District of Oklahoma quashed subpoenas to AT&T and other

11  telecommunications providers seeking telephone records and GPS data

12  because the court concluded that the requested information was either

13  "not relevant to any claim or defense" or that "the requests [were]

14  overly broad." Herff Jones, Inc., 2007 WL 2344705, at *3. However, the

15  court based its ruling on Federal Rule of Civil Procedure 26 and did not

16  address the issue of privacy rights under state law. Id. at *2-5.

17  Thus, Herff Jones, Inc. also has only slight bearing on the instant

18  case. Moreover, the Court concludes that the telephone records sought

19  by Defendants here are relevant under Federal Rule of Civil Procedure

20  26(b)(1) to Defendants' counterclaims that Plaintiff made false and

21  defamatory statements about Priority Sports and improperly solicited

22  Priority Sports clients while still employed at Priority Sports.

23

24       Finally, in Special Markets Ins. Consultants, Inc., the U.S.

25  District Court for the Northern District of Illinois quashed subpoenas

26  to Verizon Wireless and Yahoo, Inc. seeking email and text messaging

27  records because the records would have revealed the content of

28  communications and disclosure would therefore violate the SCA. Special

Markets Ins. Consultants, Inc., 2012 WL 1565348, at *1-3.  However, the court held in the alternative, that "even if the subpoenas were not prohibited by the SCA, the court would enter a protective order under Rule 26(c)" because the subpoenas encompassed irrelevant personal communications and therefore were "grossly overbroad."  Id. at *3.  The Court concludes that Special Markets Ins. Consultants, Inc. weighs in favor of Plaintiff's expectation of privacy in the AT&T account, but provides only limited guidance because the court's primary holding was based on the SCA.  The court did not address the issue of privacy rights under state law.  Id. at *4-9.

Having considered the applicable authority, as well as the supplemental declarations, the Court concludes that Plaintiff had a legally protected privacy interest in the AT&T account, but that under the circumstances, he had only a limited expectation of privacy.  See TBG Ins. Services Corp., 96 Cal. App. 4th at 449-50.  Thus, the Court must next examine the intrusiveness of the requested information.  See id. at 449.  As set forth above, the SCA prohibits AT&T from disclosing the content of any text messages as sought by Category Nos. 5, 6, 7, and 8.  Thus, the Court must limit the scope of Defendants' subpoena to telephone numbers and cell site information, as well as the date, time, and duration of calls.  (Joint Stip., Horn Decl., Exh. A at 31-32).

The Court concludes that the disclosure of telephone numbers and cell site information, as well as the date, time, and duration of calls does not represent a significant intrusion of Plaintiff's privacy, particularly because the Court can issue an appropriate protective order.  See, e.g., TBG Ins. Services Corp., 96 Cal. App. 4th at 448, 454

1  (concluding that production of a home computer which "contain[ed]

2  significant personal information and data . . . including the details

3  of [an employee's] personal finances, his income tax returns, and all

4  of his family's personal correspondence" did not represent "a serious

5  invasion" of the employee's privacy because the court could issue a

6  protective order (internal quotation marks and brackets omitted)); <u>see</u>

7  <u>also id.</u> at 454 ("Appropriate protective orders can define the scope of

8  [the employer's] inspection and copying of information on the computer

9  to that which is directly relevant to this litigation, and can prohibit

10  the unnecessary copying and dissemination of [the employee's] financial

11  and other information that has no rational bearing on this case."

12  (citation omitted)).  Indeed, "Priority Sports agreed that the documents

13  could be produced Attorneys' Eyes Only, pursuant to a protective order

14  entered by the Court, eliminating any privacy concerns." (Joint Stip.

15  at 15).  Thus, the Court has balanced Plaintiff's limited expectation

16  of privacy in the AT&T account against the intrusiveness of the

17  disclosure and concludes that Plaintiff's privacy interests can be

18  adequately protected with an appropriate protective order.

19

20  **Accordingly, the Court directs the parties to submit a stipulated**

21  **protective order within five days of the date of this Order.  Once the**

22  **Court has entered a protective order, Defendants shall serve a copy of**

23  **this Order on AT&T and AT&T shall have seven days to comply with the**

24  **subpoena.  AT&T shall produce all of the requested information except**

25  **for the content of text messages as sought by Category Nos. 5, 6, 7, and**

26  **8.**

27  \\

28  \\

1   **C.   Federal Law Supports The Court's Decision To Enforce The Subpoena**

2   **For Information Other Than The Content Of Communications**

3

4        As set forth above, California law governs the assertion of

5   Plaintiff's privacy rights because this Court has jurisdiction based on

6   diversity.  However, the Court finds it significant that federal law is

7   consistent with the Court's application of California law.  For example,

8   in City of Ontario, the Supreme Court assumed that a government employee

9   had a reasonable expectation of privacy in text messages sent on an

10  employer-provided pager, but ultimately concluded that the employer's

11  search of the pager by reading the text messages was reasonable.  City

12  of Ontario, 130 S. Ct. at 2630-31.[7]  The Supreme Court explained that

13  "the extent of an expectation is relevant to assessing whether the

14  search was too intrusive."  Id. at 2631.  The Supreme Court evaluated

15  the particular circumstances of the case and concluded that "[e]ven if

16  [the employee] could assume some level of privacy would inhere in his

17  messages, it would not have been reasonable for [him] to conclude that

18  his messages were in all circumstances immune from scrutiny."  Id.

19  Thus, the Supreme Court found that the employee "had only a limited

20  expectation" of privacy in the text messages.  Id.  Ultimately, the

21  Supreme Court balanced the intrusiveness of the search against the

22  employee's limited expectation of privacy to determine that the search

23

24

25

─────────────

26        [7]  The Supreme Court declined to review the Ninth Circuit's ruling

27  that the wireless company's disclosure of the text messages violated the
    SCA and instead only addressed whether the employer's review of those

28  text messages also violated the Fourth Amendment.  See City of Ontario,
    130 S. Ct. at 2627-28.

was reasonable.[8]   Id. ("From the [employer's] perspective, the fact that [the employee] had only a limited privacy expectation, with boundaries that we need not here explore, lessened the risk that the review would intrude on highly private details of [the employee's] life."). The Supreme Court's balancing of the privacy interests in City of Ontario is consistent with the Court's conclusion that the subpoena to AT&T should be enforced, subject to a protective order.

Federal law also supports the Court's conclusion that the disclosure of telephone numbers, as well as the date, time, and duration of calls does not represent a significant intrusion of Plaintiff's privacy. Indeed, the Supreme Court has held that individuals have no expectation of privacy in outgoing telephone numbers because "[a]ll telephone users realize that they must 'convey' phone numbers to the telephone company" and that "the phone company has facilities for making permanent records of the numbers they dial." Smith v. Maryland, 442 U.S. 735, 742, 99 S. Ct. 2577, 61 L. Ed. 2d 220 (1979). Relying on Smith, the Ninth Circuit has held that individuals also have no expectation of privacy in incoming telephone numbers and related phone records. See, e.g., United States v. Reed, 575 F.3d 900, 914 (9th Cir. 2009) (finding no expectation or privacy in outgoing and incoming telephone numbers, as well as data about "call origination, length, and time of call"); California v. FCC, 75 F.3d 1350, 1361 (9th Cir. 1996)

---

[8]   Although the Court relied in part on the government employer's need to scrutinize the employee's text messages because he was a law enforcement officer, City of Ontario, 130 S. Ct. at 2631, "the Court also conclude[d] that the search would be regarded as reasonable and normal in the private-employer context." Id. at 2633 (internal quotation marks omitted).

("A phone number is not among the select privacy interests protected by a federal constitutional right to privacy."); <u>In re Application of United States for an Order etc.</u>, 616 F.2d 1122, 1128 n.4 (9th Cir. 1980) ("There can no longer be any constitutional objection to the voluntary compliance of a telephone company with the request of a law enforcement agency for a pen register or trace.")[9]; <u>United States v. Lustig</u>, 555 F.2d 737, 747 (9th Cir. 1977) ("It is well established that the 'expectation of privacy' only extends to the content of telephone conversations, not to records that conversations took place.").

Federal courts are currently divided over whether individuals have a reasonable expectation or privacy in historic cell site information. <u>See, e.g.</u>, <u>In re Application of the United States of America for an Order Directing a Provider of Electronic Communication Service to Disclose Records to the Government</u>, 620 F.3d 304, 317 (3d Cir. 2010) (finding expectation of privacy); <u>Id.</u> at 321 n.11 (Tashima, J., concurring) (suggesting there may be no expectation of privacy, but stating that it depends on unknown facts); <u>In re U.S. for Historical Cell Site Data</u>, 747 F. Supp. 2d 827, 839-40 (S.D. Tex. 2010) (finding expectation of privacy); <u>U.S. Telecom Ass'n. v. FCC</u>, 227 F.3d 450, 459 (D.C. Cir. 2000) (finding no expectation of privacy). As set forth above, however, Plaintiff's privacy interests can be adequately protected with an appropriate protective order. Thus, federal law

---

[9]   "Both the pen register and the ESS trace are designed to record, through the monitoring of electrical impulses created by the turning of the telephone dial, actual telephone numbers to or from which calls are placed." <u>In re Application of United States for an Order etc.</u>, 616 F.2d at 1128.

supports the Court's decision to enforce the subpoena for information other than the content of communications.

### III.

### CONCLUSION

IT IS ORDERED THAT Plaintiff's Motion to Quash Subpoena to AT&T, for a Protective Order, and for Sanctions (Docket No. 23) is GRANTED IN PART AND DENIED IN PART.  The Motion is GRANTED IN PART because the Stored Communications Act prohibits AT&T from disclosing the content of any text messages as sought by Category Nos. 5, 6, 7, and 8.  The Motion is DENIED with regard to the remainder of the subpoena.  The Motion is also DENIED to the extent Plaintiff seeks sanctions.

**The Court directs the parties to submit a stipulated protective order within five days of the date of this Order.  Once the Court has entered a protective order, Defendants shall serve a copy of this Order on AT&T and AT&T shall have seven days to comply with the subpoena. AT&T shall produce all of the requested information except for the content of text messages as sought by Category Nos. 5, 6, 7, and 8.**

**IT IS SO ORDERED.**

DATE: August 14, 2012                                    /S/
                                                _____
                                                SUZANNE H. SEGAL
                                                UNITED STATES MAGISTRATE JUDGE