Anthony J. Oncidi (State Bar No. 118135)
aoncidi@proskauer.com
Robert H. Horn (State Bar No. 134710)
rhorn@proskauer.com
Susan L. Gutierrez (State Bar No. 273980)
sgutierrez@proskauer.com
Christopher L. Williams (*admitted pro hac vice*)
cwilliams@proskauer.com
PROSKAUER ROSE LLP
2049 Century Park East
32nd Floor
Los Angeles, California 90067-3206
Telephone: (310) 557-2900
Facsimile: (310) 557-2193

Attorneys for Plaintiff and Counterdefendant Aaron L. Mintz
and Counterdefendant Creative Artists Agency, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| AARON L. MINTZ, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MARK BARTELSTEIN & ASSOCIATES, INC., d/b/a Priority Sports & Entertainment; and MARK BARTELSTEIN, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. CV12-2554 SVW(SSx) (Consolidated with Case No. CV12-3055 SVW (SSx))<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S AND COUNTERDEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date: October 29, 2012<br>Time: 1:30 p.m.<br>Ctrm: 6<br><br>Hon. Stephen V. Wilson<br><br>Pretrial Conf: October 29, 2012<br>Trial: November 13, 2012 |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 1

I.     MINTZ IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE COMPLAINT ........................................................................................ 1

      A.    Declaratory Judgment ............................................................................. 1

           1.     The Claim Is Not Moot ................................................................ 1

           2.     Priority Sports Cannot Enforce the 14-Day Notice Provision as a Non-Compete Provision ........................................ 2

      B.    The Computer Fraud and Abuse Act ...................................................... 3

      C.    California Penal Code § 502 ................................................................... 5

      D.    The Electronic Communications and Privacy Act .................................. 5

      E.    Invasion of Privacy ................................................................................. 5

      F.    California Unfair Competition Law ........................................................ 6

II.    MINTZ AND CAA ARE ENTITLED TO SUMMARY JUDGMENT ON THE COUNTERCLAIMS ................................................................................ 7

      A.    Breach of Contract .................................................................................. 7

      B.    The Implied Covenant of Good Faith and Fair Dealing ......................... 8

      C.    Breach of the Duty of Loyalty ................................................................ 8

      D.    Misappropriation of Trade Secrets ......................................................... 9

      E.    Intentional Interference with Contractual Relations ............................ 10

      F.    Intentional Interference with Present and Prospective Economic Advantage ............................................................................................. 10

      G.    Conversion ............................................................................................ 10

      H.    California Penal Code § 502 ................................................................. 10

      I.    Defamation and Trade Libel ................................................................. 10

      J.    Conspiracy ............................................................................................ 12

      K.    California Unfair Competition Law ...................................................... 12

CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Amaral v. Wachovia Morg. Corp.*
692 F. Supp. 2d 1226 (E.D. Cal. 2010) .................................................................. 1

*Az. Cartridge Remanufacturerers Assoc., Inc. v. Lexmark Int'l, Inc.*
290 F. Supp. 2d 1034 (N.D. Cal. 2003) ................................................................ 12

*Columbia Pictures, Inc. v. Bunnell*
245 F.R.D. 443 (C.D. Cal. 2007) ........................................................................... 5

*Everson v. Leis*
556 F. 3d 484 (6th Cir. 2009) ............................................................................... 11

*Facebook, Inc. v. Power Ventures, Inc.*
844 F. Supp. 2d 1025 (N.D. Cal. 2012) ................................................................. 3

*Fox v. Good Samaritan L.P.*
No. C 04-0874, 2010 WL 1260203 (N.D. Cal. Mar. 29, 2010) ............................ 7

*Orr v. Bank of Am., NT & SA*
285 F. 3d 764 (9th Cir. 2002) ............................................................................... 11

*Partington v. Buglosi*
56 F. 3d 1147 (9th Cir. 1995) ............................................................................... 11

*SOAProjects, Inc. v. SCM Microsystems, Inc.*
No. 10-CV-01773, 2010 U.S. Dist. LEXIS 133596 (N.D. Cal. Dec. 7, 2010) ................................................................................................................... 7

*SuccessFactors, Inc. v. Softscape, Inc.*
544 F. Supp. 2d 975 (N.D. Cal. 2008) ................................................................... 3

*Tatum v. City & Cnty. of San Francisco*
441 F. 3d 1090 (9th Cir. 2006) ............................................................................. 11

**CALIFORNIA CASES**

*Bionghi v. Metro. Water Dist. of S. Cal.*
70 Cal. App. 4th 1358 (1999) ................................................................................ 8

*City of Oakland v. McCullough*
  46 Cal. App. 4th 1 (1996) ...................................................................................... 4

*Edwards v. Arthur Andersen LLP*
  44 Cal. 4th 937 (2008) ........................................................................................... 2

*El Dorado Sav. & Loan Ass'n v. Super. Ct.*
  190 Cal. App. 3d 342 (1987) .................................................................................. 6

*Haines v. Parra*
  193 Cal. App. 3d 1553 (1987) ................................................................................ 5

*Jensen v. Hewlett Packard Co.*
  14 Cal. App. 4th 958 (1993) ................................................................................. 11

*Mamou v. Trendwest Resorts, Inc.*
  165 Cal. App. 4th 686 (2008) ................................................................................ 9

*Nygard, Inc. v. Uusi-Kerttula*
  159 Cal. App. 4th 1027 (2008) ............................................................................. 11

**FEDERAL STATUTES**

18 U.S.C. § 1030(e)(11) ............................................................................................ 3

**CALIFORNIA STATUES**

Cal. Bus. & Prof. Code § 16600 ............................................................................... 2

Cal. Civ. Proc. Code § 1985.6 .................................................................................. 6

Cal. Civ. Proc. Code § 2019.210 .............................................................................. 9

Cal. Penal Code § 502 .................................................................................... 5, 6, 10

Cal. Penal Code § 502(e)(4) ..................................................................................... 5

**FEDERAL RULES**

Fed. R. Civ. P. 56(d)(2) .......................................................................................... 11

Fed. R. Evid. 801(c) ................................................................................................ 10

# INTRODUCTION

Plaintiff Aaron L. Mintz ("Mintz") sought nothing more than to exercise his right as a California citizen to terminate his employment at Mark Bartelstein & Associates, Inc., d/b/a Priority Sports & Entertainment ("Priority Sports"), and continue to work as a professional basketball player agent without fear that Priority Sports would seek to enforce two non-compete provisions in his employment contract. Priority Sports and Mark Bartelstein ("Bartelstein") have managed to turn Mintz's claim for declaratory relief into an expensive, relentless crusade to punish and humiliate him. After hacking into Mintz's personal Gmail account and disclosing to others the terms of his contract with his new employer, Creative Artists Agency, LLC ("CAA"), Priority Sports and Bartelstein filed 12 counterclaims based on nothing more than "information and belief." Their interrogatory responses are also based on "information and belief." Bartelstein repeatedly admitted in his deposition that he never had any evidence to support the counterclaims. Depositions of Mintz and CAA turned up no evidence to support the counterclaims. Priority Sports' and Bartelstein's opposition to the motion for summary judgment underscores this lack of evidence, which Priority Sports and Bartelstein essentially admit to by arguing that they *might* uncover something *if* they just had more time. The Court should grant summary judgment for Mintz and CAA.

# ARGUMENT

**I.  MINTZ IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE COMPLAINT**

    **A.  Declaratory Judgment**

        **1.  The Claim Is Not Moot**

The declaratory relief claim in respect to the two-year non-compete is not moot because Priority Sports could seek to enforce the provision at any time prior to March 23, 2014. *See Amaral v. Wachovia Morg. Corp.*, 692 F. Supp. 2d 1226, 1235 (E.D. Cal. 2010) (granting declaratory relief where an event had "not yet occurred"

and relief "could conceivably prevent future litigation"). Priority Sports argues that "it has never attempted to enforce" the provision and "has no intention of doing so in the future." (Opp. 7:17-19.) This argument is not supported by any relevant evidence,[1] and belies the fact that Priority Sports rejected several requests to stipulate to an order that it will not enforce the two-year non-compete. (*See* Mintz Brief, p. 2, at n. 2.) Mintz is entitled to declaratory relief as a matter of law.

### 2. Priority Sports Cannot Enforce the 14-Day Notice Provision as a Non-Compete Provision

Priority Sports misunderstands Mintz's declaratory relief claim in regard to the 14-day notice of termination provision. Mintz does not argue that the provision is void in all respects. An employment contract may require notice of termination.

A notice provision, however, does extend or reinstate at-will employment if the employee terminates without providing the specified notice.[2] Yet this is precisely how Priority Sports seeks to enforce the 14-day notice provision. It argues that Mintz remained employed, *against his will and despite his resignation*, thereby preventing him from changing jobs and lawfully competing. Mintz's at-will employment terminated when he resigned. At that point he had no legal obligation to refrain from competing with Priority Sports. Priority Sports may seek damages resulting from not receiving 14 days' notice, but not based on competition from Mintz during that post-employment period. Any contrary result would require enforcing the 14-day notice provision as a non-compete. *See* Cal. Bus. & Prof. Code § 16600; *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 945-46 (2008).

---

[1] The "evidence" is a statement in Bartelstein's declaration that "Priority Sports maintains a strict confidentiality policy in its employee handbook." (AMF 60.) There is no evidence of a promise not to enforce the two-year non-compete provision.

[2] The 14-day notice provision cannot be construed as employment for a specified term because Priority Sports reserved the right to terminate the employment at *any* point during the 14 days. (UF 5.)

Accordingly, the Court should declare that the 14-day notice provision is void and unenforceable to the extent Priority Sports asserts it prevented Mintz from competing for clients, including his own clients, after his resignation.

### B. The Computer Fraud and Abuse Act

Priority Sports does not dispute that it obtained unauthorized access to (i.e., "hacked") Mintz's personal Gmail account, "viewed a few emails …, including his CAA employment agreement" (Opp. 9:26-27), and later disclosed to others, the terms of that agreement. (UF 7-13, 15-16.) Priority Sports' claim that Mintz did not suffer loss in excess of $5,000 is unsupported by the law and the evidence.

First, the CFAA defines "loss" broadly to include "any reasonable cost to any victim, including the cost of responding to an offense … [and any] cost incurred, or other consequential damage incurred because of interruption in service." *See* 18 U.S.C. § 1030(e)(11).[3] In the Ninth Circuit, "[c]osts associated with investigating intrusions into a computer network and taking subsequent remedial measures are losses within the meaning of the [CFAA]." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F. Supp. 2d 1025, 1039 (N.D. Cal. 2012). *See also SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 981 (N.D. Cal. 2008) (holding that the cost of discovering the offender's identity or method of access may be a "loss" for purposes of the CFAA). Thus, Mintz's expense in hiring counsel to prove Priority Sports as the hacker constitutes a "loss" under the CFAA.

Priority Sports attempts to distinguish *Facebook* (in a footnote) on the ground that the costs there were incurred as part of an internal investigation. (Opp. 11, n. 2.) Priority Sports does not cite any authority to establish that fees paid to an attorney to determine a hacker's identity through an internal investigation or through

---

[3] Priority Sports' conduct caused an interruption in service, as Mintz was unable to access his personal Gmail account after Priority Sports changed the password. (UF 11.)

1 | litigation is a material distinction. Costs incurred to identify a hacker constitute
2 | "loss" under the CFAA.

3 |       Second, Priority Sports argues that even if Mintz did incur a loss, he did so needlessly because he suspected from the beginning that Priority Sports was the hacker. (Opp. 11:14-12:4.) Priority Sports knows that suspicion is not admissible evidence, which is why it attempted to prevent Mintz from obtaining proof of the hacker's identity. In its answer to the complaint, Priority Sports falsely *denied* that it was the hacker.[4] Mintz had to subpoena Comcast Cable Communications ("Comcast") to obtain the name of its subscriber associated with the IP address from which the hacking originated. Because Comcast would not disclose this information without a court order and Priority Sports refused to stipulate to such an order, Mintz had to file a motion, which Priority Sports *opposed*. Magistrate Judge Segal issued the order to Comcast. (*See* Dkt. No. 34.) Comcast identified Priority Sports employee Brad Ames as the hacker. For Priority Sports now to argue that the fees it *forced* Mintz to incur to identify the hacker were avoidable is the acme of audacity.

      Third, Priority Sports argues that the declaration of Mintz's attorney is not sufficient to establish the loss, citing *City of Oakland v. McCullough*, 46 Cal. App. 4th 1, 10 (1996). (Opp. 10:18-11:8.) Priority Sports' reliance on *City of Oakland* is misplaced. There, the court held that the fees billed by a legal assistant were not recoverable because, unlike all other claimed fees, these fees were mentioned only in a brief and not in the supporting declaration. The declaration of Mintz's counsel provides uncontroverted evidence that it billed Mintz for $27,796.25 the fees.[5] Priority Sports also argues that CAA's agreement to indemnify Mintz means there

---

[4] *See* Priority Sports' Apr. 25, 2012 Answer ¶¶ 13-15, 22-25 (denying hacking); Horn Decl. ¶ 8, Ex. E (same).

[5] UF 14; Horn Supp. Decl. ¶ 2, Ex. A. Priority Sports mentions that Mintz submitted evidence of fees "without any backup." To the extent backup is necessary, and Priority Sports does not cite any authority to establish that it is, copies of the bills to Mintz are attached to the supplemental declaration Robert H. Horn, filed concurrently herewith.

4

1 was no loss (Opp. 10:21-11:4), but fails to cite any authority such evidence is
2 required. Under Priority Sports' reasoning, a party with insurance, a contingency
3 fee arrangement, or a related person or entity (such as an employer or family
4 member) willing to advance litigation expenses could not recover attorneys' fees.

       **C.**    <u>**California Penal Code § 502**</u>

6        The section 502 claim is established by the same undisputed facts proving
7 that Priority Sports' hacked into Mintz's personal Gmail account. (UF 7-16.)
8 Priority Sports argues that this claim fails because Mintz did not incur a loss. (Opp.
9 10, n.1.) Unlike the CFAA, section 502 does not set a minimum loss threshold. As
10 demonstrated above, Mintz suffered a loss. He is also entitled to present to the jury
11 his claim for punitive damages under section 502(e)(4). *See Haines v. Parra,* 193
12 Cal. App. 3d 1553, 1560-61 (1987) (granting summary judgment and stating that
13 punitive damages are wholly within the control of the jury).

       **D.**    <u>**The Electronic Communications and Privacy Act**</u>

15        The basis and damages for Mintz's ECPA claim mirror those in regard to his
16 CFAA claim. (UF 7-16.) Priority Sports' opposition that it did not seize Mintz's
17 CAA employment contract "in transmission" ignores that fact that the Stored
18 Communications Act ("SCA") is "part of the ECPA" and allows for recovery based
19 on unauthorized retrieval of stored electronic data. *See Columbia Pictures, Inc. v.*
20 *Bunnell*, 245 F.R.D. 443, 449-50 (C.D. Cal. 2007).

       **E.**    <u>**Invasion of Privacy**</u>

22        Priority Sports does not dispute that Mintz had a legally protectable privacy
23 interest in his personal Gmail account, a reasonable expectation of privacy under the
24 circumstances, and that hacking into a personal e-mail account is a serious invasion
25 of privacy. (Opp. 12:16-13:23.) Thus, Mintz is entitled to judgment on this claim.
26        In a weak effort to avoid liability, Priority Sports asserts that the intrusion at
27 issue stems from "nothing more" than "a review of Mintz's agreement with CAA."
28

(Opp. 13:8-9.) This is plainly false, as the intrusion involved hacking into Mintz's personal Gmail account and reviewing several documents stored therein.

Priority Sports' argument that whether the terms of Mintz's employment contract with CAA are private is a question of fact is incorrect. (Opp. 12:22-13:23.) It is well-settled that a person has a protectable privacy interest in his employment records. *See El Dorado Sav. & Loan Ass'n v. Super. Ct.*, 190 Cal. App. 3d 342, 345-46 (1987) (employee's personnel file protected by the constitutional right to privacy); Cal. Civ. Proc. Code § 1985.6 (establishing procedure to subpoena personnel records in order to protect the employee's right of privacy). Again, Priority Sports does not dispute that Mintz had a reasonable expectation of privacy in his Gmail account where he stored his CAA employment contract and other personal material.

Priority Sports' argument that Mintz did not have a reasonable expectation of privacy in his CAA employment agreement is ludicrous. It cites the following evidence: (i) when third party Josh Ketroser ("Ketroser") informed Mintz that Priority Sports employee Kenny Zuckerman had disclosed Mintz's CAA compensation, and Ketroser repeated the compensation terms to Mintz, Mintz confirmed their accuracy; (ii) Mintz authorized his girlfriend to access his Gmail account for the limited purpose of determining who hacked into that account (*see* Daucus Decl., Ex. E); and (iii) Mintz disclosed the terms of his Priority Sports contract to CAA. (Opp. 12-23.) This evidence does not create a triable issue of fact regarding a reasonable expectation of privacy.

**F.   California Unfair Competition Law**

Mintz is entitled to judgment on this claim based on the predicate violations of the CFAA, ECPA, and California Penal Code § 502 discussed above.

## II. MINTZ AND CAA ARE ENTITLED TO SUMMARY JUDGMENT ON THE COUNTERCLAIMS

### A. Breach of Contract

Mintz presented evidence that before he resigned he did not work for CAA, solicit players on CAA's behalf, or disclose confidential information to CAA. Priority Sports now contends that its failure to provide opposing evidence has "no bearing on the viability of" and is "not determinative on the question of breach." (Opp. 15:23-25, 16:8-10.) Yet this is how Priority Sports framed the issues in its breach of contract counterclaim. (*See* Counterclaims ¶ 68.) Allegations of the pleadings frame and limit issues on summary judgment. *See Fox v. Good Samaritan L.P.*, No. C 04-0874, 2010 WL 1260203, *11 (N.D. Cal. Mar. 29, 2010). In abandoning these allegations, Priority Sports effectively admits it never had any evidence to support them.[6]

Priority Sports fails to cite any evidence that Mintz worked for CAA before he resigned. It cites additional facts 1-7 (Opp. 15:7-10), but they establish only that Mintz met with CAA about potential employment and took preventive steps against enforcement of the unlawful non-compete provisions in his Priority Sports employment contract.

Priority Sports admits that the only "evidence" of solicitation is the vague and contradictory testimony of Floyd Johnson. (Opp. 16:1-2.) But Priority Sports fails to address the absence of damage: Taj Gibson, the player with whom Johnson is associated, remains with Priority Sports. (UF 23.) Priority Sports also notes that Mintz "communicated" with two recruits, Mike Scott and Terrence Ross, while employed by Priority Sports (Opp. 16:4-4), but *that was his job*. There is no evidence that Mintz solicited these recruits for CAA prior to his resignation.

---

[6] Priority Sports does not dispute that the California Uniform Trade Secrets Act ("CUTSA") preempts the misappropriation segment of the breach of contract counterclaim. *See SOAProjects, Inc. v. SCM Microsystems, Inc.*, No. 10-CV-01773, 2010 U.S. Dist. LEXIS 133596, *27 (N.D. Cal. Dec. 7, 2010).

Priority Sports cannot establish damage resulting from the lack of 14 days' notice. Relying solely on Bartelstein's declaration, Priority Sports argues that lack of notice deprived it of the opportunity to contact clients. (Opp. 16:19-23.) It cites Bartelstein's *conclusion* that "due to the lack of ability to communicate regarding Mintz's departure" (whatever that means), he was unable to contact *one* (unidentified) client for "some time" after Mintz resigned. (Bartelstein Decl. ¶ 7.) Yet Bartelstein also stated that he spoke with that player within *five days* of Mintz's departure and persuaded him to remain a client. (*Id*.) Bartelstein further stated that another client terminated his representation four months later, in *August 2012*. (*Id*.) The relevance of that event to the 14-days after Mintz's resignation is anyone's guess. Regardless, Bartelstein self-serving statements in his declaration cannot obscure his deposition testimony that: (i) he has no evidence that Mintz prevented him from contacting clients; and (ii) he *did* contact clients during the 14-day period. (UF 53.) If Priority Sports' "evidence" establishes anything, it is the absence of damage.

### B. The Implied Covenant of Good Faith and Fair Dealing

The bases for Priority Sports' breach of contract and breach of the implied covenant counterclaims are the same. (*Compare* Opp. 15:7-13, 16:3-17 *with* 17:12-17.) *See Bionghi v. Metro. Water Dist. of S. Cal.*, 70 Cal. App. 4th 1358, 1370 (1999) (granting summary judgment where a breach of the implied covenant claim was duplicative of a breach of contract claim).

### C. Breach of the Duty of Loyalty

Priority Sports' evidence for this counterclaim is that Mintz met with CAA about potential employment and took preventive legal measures to protect his right to continue to work (including obtaining CAA's agreement to pay his attorneys' fees for filing the complaint for declaratory relief; meeting with an attorney for that purpose; and entering into a joint defense agreement in anticipation of litigation). (Opp. 18:7-8.) This conduct was preparatory, not competitive, as a matter of law.

*See Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 719 (2008) ("An employee does not breach his duty of loyalty by *preparing* to compete with his employer" and where "there was and is no evidence" that the plaintiff actively competed during employment) (emphasis in original).

### D. Misappropriation of Trade Secrets

Priority Sports brought and has maintained its misappropriation of trade secrets claim in bad faith. It has never offered more than a general description of the purported trade secret information.[7] It ignores the cases and evidence cited by Mintz and CAA establishing that the claimed trade secret information is generally known or available in the professional basketball industry. (*See* UF 30-38.) Accordingly, the Court should find that Priority Sports has failed to identify any trade secret.

Although Priority Sports argues that it *maintains* trade secrets, it fails to provide any evidence that Mintz or CAA misappropriated such information. (Opp. 18:3-27.) In contrast, Mintz and CAA *did* provide evidence establishing that they did not acquire, disclose, or use any Priority Sports purported trade secret. (*See* Mot. 18:13-16; UF 33-38.) Priority Sports argues that Mintz "concedes" to using information to contact unidentified "players" via Skype on behalf of CAA. (Opp. 15:10-13, 19:7-9 (*citing* AMF 47, 55).) The cited evidence, however, is statements by Bartelstein, not by Mintz, and none of Bartelstein's statements concern any use of information by Mintz. (Bartelstein Decl. ¶¶ 6-7, 13-14.) Further, Priority Sports does not dispute that the sole side letter Mintz generally discussed with CAA does not have a confidentiality provision and was previously disclosed to a third party. (UF 40-41.)

---

[7] Indeed, Priority Sports responded to UF 32 by asserting that recruiting "strategies," player "preferences" and "providers of services" to players lack "any specificity" as to be meaningful. Yet *this is how Priority Sports described its "trade secrets."* Priority Sports thus admits that it cannot satisfy the most basic condition to a misappropriation claim under the CUTSA. *See* Cal. Civ. Proc. Code § 2019.210 (requiring plaintiff to identify the trade secret with reasonable particularity).

9

### E. Intentional Interference with Contractual Relations

CAA did nothing wrong. The evidence shows only that CAA met with Mintz about potential employment, agreed to indemnify him for attorneys' fees incurred in litigation with Priority Sports, and entered into a joint defense agreement. Priority Sports cannot establish any damage resulting from this lawful conduct.

### F. Intentional Interference with Present and Prospective Economic Advantage

Priority Sports does not dispute that it bases this counterclaim on the same evidence as those for breach of contract, breach of the duty of loyalty, and trade secret misappropriation. (Opp. 21:4-7.) This counterclaim fails for the same reasons provided above.

### G. Conversion

Priority Sports abandons its conversion claim with regard to the laptop and documents. (Opp. 21:10-16.) Its claim is now based on one fact: that Mintz delivered the Blackberry to his attorneys, who have declined to deliver physical possession to Priority Sports (based on a dispute of ownership), but have produced all contact data and text messages stored on the device. Priority Sports fails to offer any evidence of damage resulting from the lack of physical custody of the Blackberry, and none exists.

### H. California Penal Code § 502

Priority Sports relegates this counterclaim to a footnote at the end of its brief. Priority Sports has no evidence and resorts to arguing that if it just had more time it might be able to prove something. (Opp. 25, n. 3.)

### I. Defamation and Trade Libel

Priority Sports argues that it will prove defamation at trial. (Opp. 21:18-22:7.) Now is the time to produce admissible evidence, and Priority Sports has not done so. It fails to submit a declaration from any person who supposedly heard an alleged statement directly from Mintz. It does not dispute that it relies solely on

information and belief, hearsay, and double hearsay. *See* Fed. R. Evid. 801(c). The Court's analysis should end here. *See Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment"). Priority Sports' "Hail Mary" request to delay a ruling pursuant to Rule 56(d)(2) fails.[8] (Opp. 23:12-24:12.)

The Court can decide as a matter of law whether the alleged statements are non-actionable opinion. *Jensen v. Hewlett Packard Co.*, 14 Cal. App. 4th 958, 971 (1993). Priority Sports does not even attempt to dispute that each alleged statement is opinion, instead raising (but not applying) the issue of "pure" versus "mixed" opinion. The alleged statements are "pure" opinion because they "do not imply facts capable of being proved true or false." *Partington v. Buglosi*, 56 F. 3d 1147, 1153 n.10 (9th Cir. 1995). Priority Sports' argument about "mixed opinion" and "undisclosed facts" is baseless, as there is simply no admissible evidence that Mintz made any of the alleged statements, or that anyone heard any of the alleged statements. In any event, "insider status" does not transform opinion into fact. *See Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1053 (2008) (despite a worker's "insider status" as an employee, statements that the employer "keeps an eye on his workers like a hawk" and wanted employees "to work 'round the clock"

---

[8] Rule 56(d)(2) requires a declaration satisfying the following specific criteria: (i) facts indicating a likelihood that controverting evidence exists as to a material fact; (ii) specific reasons why such evidence was not discovered or obtained earlier in the proceeding, (iii) proposed steps to timely obtain such evidence, and (iv) an explanation of how those facts will defeat the pending summary judgment motion. *See Tatum v. City & Cnty. of San Francisco*, 441 F. 3d 1090, 1101 (9th Cir. 2006); *Everson v. Leis*, 556 F. 3d 484, 493 (6th Cir. 2009) ("[B]are allegations or vague assertions of the need for discovery are not enough"). Priority Sports' evidence fails to satisfy these requirements. Christopher Daucus states in his declaration that Priority Sports' counsel issued deposition subpoenas to Paul George and Jordan Crawford, and Mintz's counsel agreed to accept service on their behalf. Mintz's counsel cannot compel these witnesses to appear, nor has Priority Sports sought to compel their appearance. Nothing prevented Priority Sports from doing so. Moreover, Priority Sports conveniently fails to mention Nick Young ("Young"), the third purported witness who it contends heard alleged defamatory statements. Young is Bartelstein's client and represented by his counsel. Mintz's counsel cannot be blamed for Priority Sports' failure to secure a declaration from Young.

1  were non-actionable opinions merely "expressing [the employee's] opinion that [his
2  employer] was an overly demanding boss").

### J. Conspiracy

Priority Sports' does not offer any legitimate basis for bringing a conspiracy counterclaim against the same parties against whom it alleges direct liability. The claim is superfluous. Further, Priority Sports has failed to raise a triable issue as to any of the predicate counterclaims. *See Az. Cartridge Remanufacturerers Assoc., Inc. v. Lexmark Int'l, Inc.*, 290 F. Supp. 2d 1034, 1050 (N.D. Cal. 2003) (granting summary judgment for defendant on conspiracy claim where predicate acts failed).

### K. California Unfair Competition Law

Summary judgment is appropriate because Priority Sports has not and cannot demonstrate any violation of a predicate law.

### CONCLUSION

For the foregoing reasons, Mintz and CAA respectfully request that the Court enter an order granting: (i) partial summary judgment in favor of Mintz on the complaint; and (ii) summary judgment or, alternatively, partial summary judgment, in favor of Mintz and CAA on the counterclaims.

DATED: October 15, 2012

Anthony J. Oncidi
Robert H. Horn
Christopher L. Williams (admitted *pro hac vice*)
Susan L. Gutierrez
PROSKAUER ROSE LLP


By: _____/s/_____
Anthony J. Oncidi
Attorneys for Plaintiff and Counterdefendant Aaron L. Mintz and Counterdefendant Creative Artists Agency, LLC