1 | Anthony J. Oncidi (State Bar No. 118135)
aoncidi@proskauer.com
2 | Robert H. Horn (State Bar No. 134710)
rhorn@proskauer.com
3 | Susan L. Gutierrez (State Bar No. 273980)
sgutierrez@proskauer.com
4 | Christopher L. Williams (*admitted pro hac vice*)
cwilliams@proskauer.com
5 | PROSKAUER ROSE LLP
2049 Century Park East
6 | 32nd Floor
Los Angeles, California 90067-3206
7 | Telephone:  (310) 557-2900
Facsimile:   (310) 557-2193
8 |
9 | Attorneys for Plaintiff and Counterdefendant Aaron L. Mintz
and Counterdefendant Creative Artists Agency, LLC

10 | Patricia L. Glaser - State Bar No. 55668
pglaser@glaserweil.com
11 | Paul B. Salvaty - State Bar No. 171507
psalvaty@glaserweil.com
12 | Jill Basinger – State Bar No. 195739
jbasinger@glaserweil.com
13 | Lauren Gibbs - State Bar No. 251569
lgibbs@glaserweil.com
14 | GLASER WEIL FINK JACOBS
    HOWARD AVCHEN & SHAPIRO LLP
15 | 10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
16 | Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920
17 |
18 | Attorneys for Defendants and Counterclaimants
Mark Bartelstein & Associates Inc. d/b/Priority Sports &
19 | Entertainment and Mark Bartelstein

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| AARON L. MINTZ, an individual, | Case No. CV12-2554 SVW(SSx) (Consolidated with Case No. CV12-3055 SVW (SSx)) |
| Plaintiff, | |
| vs. | **[PROPOSED] JOINT JURY INSTRUCTION BOOKLET** |
| MARK BARTELSTEIN & ASSOCIATES, INC., d/b/a Priority Sports & Entertainment; and MARK | Hon. Stephen V. Wilson |

1

BARTELSTEIN, an individual,

2

Defendants.

3

4

5

6

AND RELATED COUNTERCLAIMS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Final Pretrial Conf.</u>:

Date:   October 29, 2012
Time:   1:30 p.m.
Ctrm:   6

<u>Trial</u>:

Date:   November 13, 2012
Time:   8:30 a.m.
Ctrm:   6

**1**

Pursuant to Federal Rule of Civil Procedure 51, Local Rule 51, and the Standing Order re Civil Trial Preparation before the Honorable Stephen V. Wilson, plaintiff and counterdefendant Aaron L. Mintz ("Mintz"), counterdefendant Creative Artists Agency, LLC ("CAA"), and defendants and counterclaimants Mark Bartelstein & Associates, Inc., d/b/a Priority Sports & Entertainment ("Priority Sports"), and Mark Bartelstein ("Bartelstein") hereby identify the following proposed jury instructions.

Consistent with the Standing Order, the parties submit only proposed substantive jury instructions.  Also consistent with the Standing Order, areas of dispute are noted as follows:  the instructions to which the parties agree appear first (Set One); the instructions submitted by Mintz and/or CAA (and contested by Priority Sports and/or Bartelstein) appear second (Set Two); and the instructions submitted by Priority Sports and/or Bartelstein (and contested by Mintz and/or CAA) appear third (Set Three).  Further in accordance with the Standing Order, the basis for each party's:  (i) objection to a contested instruction, and (ii) alternative instruction, is provided on the page(s) placed after that party's own alternative instruction.

DATED: October 25, 2012             Anthony J. Oncidi
                                    Robert H. Horn
                                    Christopher L. Williams (*admitted pro hac vice*)
                                    Susan L. Gutierrez
                                    PROSKAUER ROSE LLP


                                    By: _____/s/_____
                                              Anthony J. Oncidi

                                    Attorneys for Plaintiff and Counterdefendant
                                    Aaron L. Mintz and Counterdefendant Creative
                                    Artists Agency, LLC

DATED: October 25, 2012

Patricia Glaser
Paul Salvaty
Jill Basinger
Christopher Dacus
GLASER WEIL FINK JACOBS
   HOWARD AVCHEN & SHAPIRO LLC


By: _____/s/_____
                    Paul Salvaty
Attorneys for Defendants and Counterclaimants
Mark Bartelstein & Associates, Inc. d/b/a
Priority Sports Entertainment, and Mark
Bartelstein

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2

## SET ONE

**Uncontested Instructions**

**Submitted by All Parties**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INSTRUCTIONS FOR:

**Plaintiff Aaron L. Mintz's Claims**

**&**

**Defendants' Priority Sports' & Mark Bartelstein's Affirmative Defenses**

**Mr. Mintz's Special Instruction No. 1**

**The Computer Fraud and Abuse Act**

**(18 U.S.C. §§ 1030(a)(2)(C), (a)(4))**

Mr. Mintz claims that Priority Sports violated the Computer Fraud and Abuse Act ("CFAA"). The CFAA is a federal statute that allows a plaintiff to bring a lawsuit to obtain compensatory damages against a defendant who allegedly violated the CFAA, if the defendant's alleged violation resulted in the plaintiff suffering loss.

Mr. Mintz claims that on March 25, 2012, Priority Sports intentionally accessed his personal email account without his permission.

The first way Mr. Mintz may prevail on this claim is to prove, by a preponderance of the evidence, that Priority Sports:

1. Intentionally accessed a computer without authorization or exceeding authorization;

2. Thereby obtained information from a protected computer, including a website; and

3. That as a result, Mr. Mintz suffered a loss aggregating at least $5,000 in value.

The second way Mr. Mintz may prevail on this claim is to prove, by a preponderance of the evidence, that Priority Sports:

1. Knowingly and with intent to defraud, accessed a protected computer, including a website, without authorization or exceeding authorized access;

2. That by means of such conduct, Priority Sports furthered the intended fraud and obtained anything of value; and

3. That as a result, Mr. Mintz suffered a loss aggregating at least $5,000 in value.

5

1   For purposes of the CFAA, a "protected computed" means any computer –
2   including a website – which is used in interstate commerce or communication.
3   Also for purposes of the CFAA, "exceed authorized access" means to access a
4   computer without authorization and to use such access to obtain or alter information
5   in the computer that the accesser is not entitled so to obtain or alter.
6   Also for purposes of the CFAA, "fraud" means a showing of wrongdoing and
7   does not require proof of actual fraud.
8   Also for purposes of the CFAA, "loss" means any reasonable cost to Mr.
9   Mintz, including the cost of responding to an offense, conducting a damage
10   assessment, restoring data or information to its condition prior to the offense, and
11   any revenue lost, cost incurred, or other consequential damages incurred because of
12   the interruption of service.
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Authority:  18 U.S.C. §§ 1030 (a)(2)(C), (a)(4), (g), (c)(4)(A)(i)(I), (e)(2), (e)(6), (e)(11); *eBay Inc. v. Digital Point Solutions, Inc*., 608 F. Supp. 2d 1156, 1164 (N.D. Cal. 2009) (stating that a website may qualify as a "protected computer" under the CFAA, and that "fraud" consists merely of wrongdoing and not actual fraud).

**Mr. Mintz's Special Instruction No. 2**

**California Data Access and Fraud Act**

**(Cal. Pen. Code § 502(c))**

Mr. Mintz also claims that Priority Sports violated California's Data Access and Fraud Act, California Penal Code § 502(c) ("Section 502"). Mr. Mintz has alleged four (4) ways in which Priority Sports may have violated Section 502.

The first way Mr. Mintz may prevail on this claim is to prove, by a preponderance of the evidence, that Priority Sports:

1. Knowingly accessed Mr. Mintz's personal email account; and

2. Without permission, used the data stored on Mr. Mintz's personal email account in order to either: (i) devise or execute any scheme or artifice to defraud, or (ii) wrongfully control or obtain property or data.

The second way Mr. Mintz may prevail on this claim is to prove, by a preponderance of the evidence, that Priority Sports:

1. Knowingly accessed Mr. Mintz's personal email account; and

2. Without permission, took, copied, or made use of any data stored in Mr. Mintz's personal email account.

The third way Mr. Mintz may prevail on this claim is to prove, by a preponderance of the evidence, that Priority Sports:

1. Knowingly and without permission provided or assisted in providing a means of accessing Mr. Mintz's personal email account.

The fourth way Mr. Mintz may prevail on this claim is to prove, by a preponderance of the evidence, that Priority Sports:

1. Knowingly and without permission accessed or caused to be accessed, Mr. Mintz's personal email account.

8

1   Authority:  Cal. Pen. Code § 502(c)(1),(2), (6), (7).

**Mr. Mintz's Special Instruction No. 3**

**The Electronic Communications Privacy Act**

**(18 U.S.C. §§ 2501 *et seq.*)**

Mr. Mintz claims that Priority Sports violated the Electronic Communications Privacy Act ("ECPA").  The ECPA is a federal statute that allows a plaintiff to bring a lawsuit to obtain compensatory, and in some cases, punitive damages, against a defendant who allegedly violated the ECPA.  Mr. Mintz has alleged three (3) ways in which Priority Sports may have violated the ECPA.

The first way Mr. Mintz may prevail on this claim is to prove, by a preponderance of the evidence, that Priority Sports:

1.     Intentionally intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept, Mr. Mintz's transmission of emails from his personal email account.

The second way Mr. Mintz may prevail on this claim is to prove, by a preponderance of the evidence, that Priority Sports:

1.     Intentionally disclosed or endeavored to disclose, to any other person the contents of any electronic communication, knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of this section of the ECPA.

The third way Mr. Mintz may prevail on this claim is to prove, by a preponderance of the evidence, that Priority Sports:

1.     Intentionally used or endeavored to use, the contents of any electronic communication, knowing or having reason to that the information was obtained through interception of an electronic communication in violation of this section of the ECPA.

For purposes of the ECPA, "intercept" means the auditory or other acquisition of the contents of any electronic communication through the use of any electronic, mechanical, or other device.  The electronic communication must be intercepted during transmission, not after it has already been transmitted and is in electronic storage.

Authority:  18 U.S.C. §§ 2511(1)(a),(c),(d); *Konop v. Hawaiian Airlines, Inc*., 302 F. 3d 868, 878 (9th Cir. Cal. 2002) (providing description of statutory definition of the term "interception").

**Mr. Mintz's Special Instruction No. 4**

**The CFAA, Section 502, and the ECPA – Loss**

**(18 U.S.C. § 1030(g); Cal. Pen. Code § 502(e)(1); 18 U.S.C. § 2520(c)(2))**

If you decide that Mr. Mintz has proven any of his claims under the Computer Fraud and Abuse Act, the Data Access and Fraud Act (Cal. Pen. Code § 502), and/or the Electronic Communications Privacy Act against Priority Sports, you must decide how much will reasonably compensate Mr. Mintz for the harm.  This compensation is called "loss."

Mr. Mintz must prove the amount of his loss.  However, Mr. Mintz does not have to prove the exact amount of loss that will provide reasonable compensation for the harm.  You must not speculate or guess in awarding relief.

The specific item of loss claimed by Mr. Mintz is the costs associated with investigating the intrusion into his personal email account and taking subsequent remedial measures.

These losses may be recovered only once, even if Mr. Mintz succeeds on more than one of the claims described above.

13

Authority:  18 U.S.C. § 1030(g); Cal. Pen. Code § 502(e)(1); 18 U.S.C. § 2501(c); *Facebook, Inc. v. Power Ventures, Inc*., 844 F. Supp. 2d 1025, 1039 (N.D. Cal. 2012) ("Costs associated with investigating intrusions into a computer network and taking subsequent remedial measures are losses with the meaning of the statute [CFAA]"); *Multiven Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010) (providing same regarding CFAA and Section 502).

**Matthew Bender & Judicial Council of California ("MB") 300F.20 –**
**Affirmative Defense – Waiver**

You may find waiver if you find that Mr. Mintz deliberately acted so inconsistently with an intent to enforce the right associated with the Data Access and Fraud Act (California Penal Code § 502), violation of the Electronic Communications Privacy Act, and/or invasion of privacy that a reasonable person would believe that Mr. Mintz had relinquished that right.

15

Authority:  MB 300F.20 (modified to add relevant causes of action, and to add names of parties and appropriate pronouns).

# CACI 1800  Intrusion Into Private Affairs

Mr. Mintz claims that Priority Sports violated his right to privacy.  To establish this claim, Mr. Mintz must prove all of the following:

1. That Mr. Mintz had a reasonable expectation of privacy in his personal email account;

2. That Priority Sports intentionally intruded into Mr. Mintz's personal email account by accessing that account without Mr. Mintz's permission;

3. That Priority Sports' intrusion would be highly offensive to a reasonable person;

4. That Mr. Mintz was harmed; and

5. That Priority Sports' conduct was a substantial factor in causing Mr. Mintz's harm.

In deciding whether Mr. Mintz had a reasonable expectation of privacy in his personal email account, you should consider, among other facts, the following:

(a) The identity of Priority Sports;

(b) The extent to which other persons had access to Mr. Mintz's personal email account and could see the contents of that account;

(c) The means by which the intrusion occurred.

In deciding whether an intrusion is highly offensive to a reasonable person, you should consider, among other factors, the following:

(a) The extent of the intrusion;

(b) Priority Sports' motives and goals; and

(c) The setting in which the intrusion occurred.

17

Authority:  CACI 1800 (modified to add names of parties, appropriate pronouns and summary of contentions re claim for intrusion into private affairs).

**CACI 1820 Intrusion into Private Affairs – Damages**

If you decide that Mr. Mintz has proven his claim for invasion of privacy against Priority Sports, you must decide how much will reasonably compensate Mr. Mintz for the harm.  This compensation is called "damages."

The amount of damages must include an award for all harm that was caused by Priority Sports, even if the particular harm could not have been anticipated.

Mr. Mintz must prove the amount of his damages.  However, Mr. Mintz does not have to prove the exact amount of damage that will provide reasonable compensation for the harm.  You must not speculate or guess in awarding damages.

The following are the specific items of damage claims by Mr. Mintz:

1.      Mental suffering, anxiety, humiliation, emotional distress; and

2.      Harm to reputation and loss of standing in the community.

No fixed standard exists for deciding the amount of damages for mental suffering, anxiety, humiliation, and emotional distress.  You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

1  Authority:  CACI 1820 (modified to specify name of cause of action, delete
2  elements that do not apply, add names of parties, appropriate pronouns, and
3  summary of contentions re damages for claim).

**CACI 1704  Defamation per se – Essential Factual Elements (Private Figure – Matter of Private Concern)**

Mr. Mintz claims that Priority Sports and/or Mr. Bartelstein harmed him by making one or more of the following statements:

1. That Ernie Grunfeld, the general manager of the NBA team, the Washington Wizards, was so "disgusted and disappointed" with Mr. Mintz because he had resigned from Priority Sports that Mr. Grunfeld would no longer do business with Mr. Mintz.

2. That David Morway, the general manager of the NBA team, the Indiana Pacers, was so "disgusted and disappointed" with Mr. Mintz because he had resigned from Priority Sports that Mr. Morway would no longer do business with Mr. Mintz.

3. That while Mr. Mintz was employed at Priority Sports, he was merely a "runner and recruiter" who did not deal with Mr. Morway, and that Mr. Morway "always" dealt with Mr. Bartelstein, not Mr. Mintz.

4. That Mr. Mintz was "not going to be allowed to work in the business for the next two years?"

5. That Mr. Mintz was not going to be able to work as a sports agent.

6. That no NBA general manager would deal with Mr. Mintz after he resigned from Priority Sports.

7. That Mr. Bartelstein had proof that Mr. Mintz plotted and planned to steal Priority Sports' clients.

8. That Mr. Mintz was a dishonest person and clients should not work with Mr. Mintz because he could not be trusted.

21

9.    That Mr. Mintz was living a "double life" and working for both Priority Sports and CAA.

10.   That Mr. Bartelstein was the Michael Jordan of doing contracts and Mr. Mintz was a D-League player.

11.   That Mr. Mintz had never negotiated a veteran professional basketball player's contract.

To establish this claim, Mr. Mintz must prove all of the following:

*Liability*

1.    That Priority Sports and/or Mr. Bartelstein made one or more of the statements to a person or persons other than Mr. Mintz;

2.    That these people reasonably understood that the statements were about Mr. Mintz;

3.    That these people reasonably understood the statements to be directly injurious to Mr. Mintz in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade or business that has a natural tendency to lessen its profits, and

4.    That Priority Sports and/or Mr. Bartelstein failed to use reasonable care to determine the truth or falsity of the statements.

*Actual Damages*

If Mr. Mintz has proved all of the above, then he is entitled to recover his actual damages if he proves that Priority Sports' and/or Mr. Bartelstein's wrongful conduct was a substantial factor in causing any of the following:

a.    Harm to Mr. Mintz's trade, profession, or occupation;

b.    Harm to Mr. Mintz's reputation; or

22

1        c.      Shame, moritification, or hurt feelings.

2   *Assumed Damages*

3        Even if Mr. Mintz has not proved any actual damages for harm to reputation

4   or shame, mortification, or hurt feelings, the law assumes that he has suffered this

5   harm.  Without presenting evidence of damage, Mr. Mintz is entitled to receive

6   compensation for this assumed harm in whatever sum you believe is reasonable.

7   You must award at least a nominal sum, such as one dollar.

8   *Punitive Damages*

9        Mr. Mintz may also recover damages to punish Priority Sports and/or Mr.

10  Bartelstein if he proves by clear and convincing evidence that Priority Sports and/or

11  Mr. Bartelstein acted with malice, oppression, or fraud.

Authority:  CACI 1704 (modified to add alleged defamatory statements, delete elements that do not apply, and add names of parties and appropriate pronouns).

1

**CACI 1707 Fact Versus Opinion**

2

3          For Mr. Mintz to recover, Priority Sports' and/or Mr. Bartelstein's statements

4   must have been statements of fact, not opinion.  A statement of fact is a statement

5   that can be proved to be true or false.  An opinion may be considered a statement of

6   fact if the opinion suggests that facts exist.

7          In deciding this issue, you should consider whether the average listener would

8   conclude from the language of the statement and its context that Priority Sports

9   and/or Mr. Bartelstein was making a statement of fact.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Authority:  CACI 1707 (modified to add names of parties and appropriate

2   pronouns).

1

**CACI 1720 Affirmative Defense – Truth**

2

3        Priority Sports and/or Mr. Bartelstein is not responsible for Mr. Mintz's harm,

4   if any, if they prove that their respective statements about Mr. Mintz was true.

5   Priority Sports and/or Mr. Bartelstein do not have to prove that their respective

6   statements were true in every detail, so long as the statements were substantially

7   true.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Authority:  CACI 1720 (modified to add names of parties and appropriate pronouns).

**CACI 2202 Intentional Interference with Prospective Economic Relations**

Mr. Mintz claims that Priority Sports and/or Mr. Bartelstein intentionally interfered with an economic relationship between him and any of the following third party NBA players that probably would have resulted in an economic benefit to Mr. Mintz: Jared Dudley, Dahanty Jones, Taj Gibson, Dominic McGuire, Tyrese Rice, and/or Nick Young.

To establish this claim, Mr. Mintz must prove all of the following:

1.  That Mr. Mintz and any of the NBA players I just named were in an economic relationship that probably would have resulted in an economic benefit to Mr. Mintz;

2.  That Priority Sports and/or Mr. Bartelstein knew of the relationship;

3.  That Priority Sports and/or Mr. Bartelstein intended to disrupt the relationship;

4.  That Priority Sports and/or Mr. Bartelstein engaged in wrongful conduct by defaming him and/or unlawfully accessing his personal email account;

5.  That the relationship was disrupted;

6.  That Mr. Mintz was harmed; and

7.  That Priority Sports' and/or Mr. Bartelstein's wrongful conduct was a substantial factor in causing Mr. Mintz's harm.

29

Authority:  CACI 2202 (modified to add names of parties and third parties, appropriate pronouns, and description of wrongful conduct).

**CACI 2203 Intent**

  In deciding whether Priority Sports and/or Mr. Bartelstein acted intentionally, you may consider whether they knew that a disruption was substantially certain to result from their respective conduct.

Authority:  CACI 2203 (modified to add names of parties and appropriate pronouns).

**CACI 3903N Lost Profits (Economic Damage)**

To recover damages for lost profits based on his claim for intentional interference with prospective economic relations, Mr. Mintz must prove it is reasonably certain he would have earned profits but for Priority Sports' and/or Mr. Bartelstein's conduct.

To decide the amount of damages for lost profits, you must determine the gross amount Mr. Mintz would have received but for Priority Sports' and/or Mr. Bartelstein's conduct and then subtract from that amount the expenses Mr. Mintz would have had had if Priority Sports' and/or Mr. Bartelstein's conduct had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

33

Authority: CACI 3903N (modified to specify cause of action, and to add names of parties and appropriate pronouns).

**CACI 3941, 3946 Punitive Damages – Individual and Entity Defendants –**

**Bifurcated Trial (First Phase)**

If you decide that Mr. Bartelstein's and/or Priority Sports' conduct, as alleged in Mr. Mintz's claims for violation of the Data Access and Fraud Act (California Penal Code § 502), violation of the Electronic Communications Privacy Act, invasion of privacy, defamation, and/or intentional interference with prospective economic relations, caused Mr. Mintz harm, you must decide whether that respective conduct justifies an award of punitive damages.

At this time, you must decide only whether Mr. Mintz has proved by clear and convincing evidence Priority Sports and/or Mr. Bartelstein engaged in the respective conduct with malice, oppression, or fraud.  The amount of punitive damages, if any, will be decided later.

To prove that Mr. Bartelstein acted with malice, oppression, or fraud, Mr. Mintz must prove malice, oppression, or fraud based on the definitions of those terms, which I will provide to you in a moment.

To prove that Priority Sports acted with malice, oppression, or fraud, Mr. Mintz must prove one of the following:

1.      That the conduct constituting malice, oppression, or fraud was committed by one or more officers directors or managing agents of Priority Sports, who acted on behalf of Priority Sports; or

2.      That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Priority Sports; or

3.      That one or more officers, directors, or managing agents of Priority Sports knew of the conduct constituting malice,

35

1    oppression, or fraud and adopted or approved that conduct after

2    it occurred.

3    "Malice" means that Mr. Bartelstein and/or Priority Sports acted with intent

4    to cause injury or that their respective conduct was despicable and was done with a

5    willful and knowing disregard of the rights or safety of another.  A person acts with

6    knowing disregard when he or she is aware of the probable dangerous consequences

7    of his or her conduct and deliberately fails to avoid these consequences.

8    "Oppression" means that Mr. Bartelstein's and/or Priority Sports' conduct

9    was despicable and subjected Mr. Mintz to cruel and unjust hardship in knowing

10   disregard of his rights.

11   "Despicable conduct" is conduct that is so vile, base, or contemptible that it

12   would be looked down on and despised by reasonable people.

13   "Fraud" means that Mr. Bartelstein and/or Priority Sports intentionally

14   misrepresented or concealed a material fact and did so intending to harm Mr. Mintz.

15   An employee is a "managing agent" if he or she exercises substantial and

16   independent authority and judgment in his or her corporate decisionmaking such

17   that his or her decisions ultimately determine corporate policy.

18

19

20

21

22

23

24

25

26

27

28

36

Authority:  CACI 3941, 3946 (modified to combine CACI 3941 and 3946, specify causes of action, delete elements that do not apply, and to add the names of parties and appropriate pronouns).

**CACI 3942 Punitive Damages – Bifurcated Trial (Second Phase)**

You must now decide the amount, if any, that you should award Mr. Mintz in punitive damages.  The purpose of punitive damages is to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages.  If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a)  How reprehensible was Priority Sports' and/or Mr. Bartelstein's conduct?  In deciding how reprehensible Priority Sports' and/or Mr. Bartelstein's conduct was, you may consider, among other factors:

     1.  Whether the conduct caused physical harm;

     2.  Whether Priority Sports and/or Mr. Bartelstein disregarded the health or safety of others;

     3.  Whether Mr. Mintz was financially weak or vulnerable and Priority Sports and/or Mr. Bartelstein knew Mr. Mintz was financially weak or vulnerable and took advantage of him;

     4.  Whether Priority Sports' and/or Mr. Bartelstein's conduct involved a pattern or practice; and

     5.  Whether Priority Sports and/or Mr. Bartelstein acted with trickery or deceit.

(b)  Is there a reasonable relationship between the amount of punitive damages and Mr. Mintz's harm, or between the amount of punitive damages and potential harm to Mr. Mintz that Priority Sports and/or Mr. Bartelstein knew was likely to occur because of its and/or his conduct?

38

(c)     In view of Priority Sports' and/or Mr. Bartelstein's financial
condition, what amount is necessary to punish it and/or him and
discourage future wrongful conduct?  You may not increase the
punitive award above an amount that is otherwise appropriate
merely because Priority Sports and/or Mr. Bartelstein may have
substantial financial resources.

39

CACI 3942 (modified to delete elements that do not apply, and to add names of parties and appropriate pronouns).

**Priority Sports' and Mr. Bartelstein's Special Instruction No. 1**

**Affirmative Defense – Unclean Hands**

Priority Sports and/or Mr. Bartelstein claim as a defense that Mr. Mintz's misconduct precludes his enforcement of violation of the Data Access and Fraud Act (California Penal Code § 502), violation of the Electronic Communications Privacy Act, invasion of privacy, defamation, and/or intentional interference with prospective economic relations.  To establish this defense, Priority Sports and/or Mr. Bartelstein must prove that Mr. Mintz's conduct was unconscionable and resulted in prejudice to Priority Sports and/or Mr. Bartelstein.

Mr. Mintz's misconduct must be directly connected to the respective claim, and of such prejudicial nature that it would be unfair for Mr. Mintz to affirmatively bring that claim.  If that is established by Priority Sports and/or Mr. Bartelstein, then Mr. Mintz is barred from affirmatively pursuing that affirmative claim.

For purposes of this defense, the term "unconscionable" means an act or transaction showing no regard for conscience, affronting the sense of justice, decency, or reasonableness.

41

1  Authority:  MB 300F.29 (modified to add relevant causes of action, and to add

2  names of parties and appropriate pronouns); *Black's Law Dictionary* 1561 (8th ed.

3  2004) (defining "unconscionability").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>INSTRUCTIONS FOR:</u>**

**Counterclaimants' Priority Sports' and Mark Bartelstein's Counterclaims**

**&**

**Counterdefendants' Aaron L. Mintz's and CAA's Affirmative Defenses**

**CACI 303 Breach of Contract – Essential Factual Elements**

Priority Sports claims that Mr. Mintz breached his Employment Agreement. To recover damages from Mr. Mintz for breach of contract, Priority Sports must prove all of the following:

1. That Priority Sports and Mr. Mintz entered into a contract;

2. That Priority Sports did all, or substantially all, of the significant things that the contract required it to do, or that it was excused from doing those things;

3. That all conditions required by the contract for Mr. Mintz's performance had occurred, or were excused;

4. That Mr. Mintz failed to do something that the contract required him to do, or that Mr. Mintz did something that the contract prohibited him from doing; and

5. That Priority Sports was harmed by that failure.

1   Authority:  CACI 303 (modified to add statement of claim, and to add names of

2   parties and appropriate pronouns).

**CACI 350 Introduction to Contract Damages**

If you decide that Priority Sports has proved its claim against Mr. Mintz for breach of contract, you also must decide how much money will reasonably compensate Priority Sports for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put Priority Sports in as good a position as it would have been if Mr. Mintz had performed as promised.

To recover damages for any harm, Priority Sports must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of the contract.

Priority Sports must also prove the amount of its damages according to the following instructions. It does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

Priority Sports claims general damages for the losses of player contracts, the value of which otherwise have accrued to Priority Sports.

46

Authority:  CACI 350 (modified to add names of parties and appropriate pronouns, and description of general damages claimed).

**CACI 352 Loss of Profits – No Profits Earned**

To recover damages for lost profits, Priority Sports must prove that it is reasonably certain it would have earned profits but for Mr. Mintz's breach of the contract.

To decide the amount of damages for lost profits, you must determine the gross, or total, amount Priority Sports would have received if the contract had been performed and then subtract from that amount the costs, including the value of the expenses, Priority Sports would have had if the contract had been performed.

You do not have to calculate the amount of the lost profits with mathematical precision, but there must be a reasonable basis for computing the loss.

Authority:  CACI 352 (modified to add names of parties and appropriate pronouns).

**CACI 358 Mitigation of Damages**

      If Mr. Mintz breached the contract and the breach caused harm, Priority Sports is not entitled to recover damages for harm that Mr. Mintz proves Priority Sports could have avoided with reasonable efforts or expenditures.  You should consider the reasonableness of Priority Sports' efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk of hardship.

      If Priority Sports made reasonable efforts to avoid harm, then your award should include reasonable amounts that it spent for this purpose.

Authority: CACI 358 (modified to add names of parties and appropriate pronouns).

**CACI 325 Breach of the Covenant of Good Faith and Fair Dealing – Essential Factual Elements**

In every contract or agreement there is an implied promise of good faith and fair dealing.  This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.  Priority Sports claims that Mr. Mintz violated the duty to act fairly and in good faith.  To establish this claim, Priority Sports must prove all of the following:

1.     That Priority Sports and Mr. Mintz entered into a contract;
2.     That Priority Sports did all, or substantially all of the significant things that the contract required it to do, or that it was excused from having to do those things;
3.     That all conditions required for Mr. Mintz's performance had occurred;
4.     That Mr. Mintz unfairly interfered with Priority Sports' right to receive the benefits of the contract; and
5.     That Priority Sports was harmed by Mr. Mintz's conduct.

Authority:  CACI 325 (modified to add names of parties and appropriate pronouns).

**CACI 4102 Duty of Undivided Loyalty – Essential Factual Elements**

Priority Sports claims that it was harmed by Mr. Mintz's breach of the fiduciary duty of loyalty.  An agent owes his principal undivided loyalty.  To establish this claim, Priority Sports must prove all of the following:

1.     That Mr. Mintz was Priority Sports' agent;

2.     That Priority Sports knowingly acted against Priority Sports' interests in connection with his departure from Priority Sports;

3.     That Priority Sports did not give informed consent to Mr. Mintz's conduct;

4.     That Priority Sports was harmed; and

5.     That Mr. Mintz's conduct was a substantial factor in causing Priority Sports' harm.

54

Authority:  CACI 4102 (modified to add names of parties and appropriate pronouns).

**CACI 361 Plaintiff May Not Recover Duplicate Contract and Tort Damages**

Priority Sports has made claims against Mr. Mintz for breach of contract as well as the following tort claims:  (i) breach of the implied covenant of good faith and fair dealing, and (ii) breach of the duty of loyalty.  If you decide that Priority Sports has proven its claim for breach of contract and either (or both) of its tort claims, the same damages that resulted from the contract claim and tort claim(s) can be awarded only once.

1    Authority:  CACI 361 (modified to add names of parties and appropriate pronouns).
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CACI 4400 Misappropriation of Trade Secrets – Introduction**

Priority Sports claims that it is the owner of the following alleged trade secrets:

- Client names;
- Client addresses;
- Client email addresses;
- Client cell phone numbers;
- Client birthdates;
- Names of client family members and "other key decisionmakers";
- Contact information of client family members and "other key decisionmakers";
- Client contracts;
- Recruiting plans and strategies;
- Clients' career options and strategies;
- Clients' special requirements, interests, and preferences;
- Clients' consultants and preferred service providers;
- Side letters with client handlers.

Priority Sports claims that this information is a trade secret and that Mr. Mintz and/or CAA misappropriated them.  "Misappropriation" means the improper acquisition, use, or disclosure of the trade secrets.

Priority Sports also claims that Mr. Mintz's and/or CAA's misappropriation caused them to be unjustly enriched.

Mr. Mintz and CAA deny that either of them improperly acquired, used, or disclosed any of Priority Sports' alleged trade secrets.

Mr. Mintz and CAA also claim they could not have misappropriated any of Priority Sports' alleged trade secrets because the information was not secret and was

58

1  instead readily ascertainable through proper means available to the public or persons

2  in the professional basketball industry.

Authority:  CACI 4400 (modified to add names of parties, appropriate pronouns and summary of contentions re claim and defenses for misappropriation of trade secrets).

**CACI 4401 Misappropriation of Trade Secrets – Essential Factual Elements**

Priority Sports claims that Mr. Mintz and/or CAA has misappropriated a trade secret.  To succeed on this claim, Priority Sports must prove all of the following:

1.     That Priority Sports owned any of the following items of information:
   - Client names;
   - Client addresses;
   - Client email addresses;
   - Client cell phone numbers;
   - Client birthdates;
   - Names of client family members and "other key decisionmakers";
   - Contact information of client family members and "other key decisionmakers";
   - Client agreements or contracts;
   - Recruiting plans and strategies;
   - Career options and strategies;
   - Clients' special requirements, interests, and preferences;
   - Clients' consultants and preferred service providers;
   - Side letters with client handlers.

2.     That each item of information was a trade secret at the time of the misappropriation;

3.     That Mr. Mintz and/or CAA improperly acquired, used, and/or disclosed the trade secrets,

4.     That Priority Sports was harmed and/or that Mr. Mintz and/or CAA was unjustly enriched; and

61

5. That Mr. Mintz's or CAA's acquisition, use, and/or disclosure was a substantial factor in causing Priority Sports' harm and/or Mr. Mintz and/or CAA to be unjustly enriched.

Authority:  CACI 4401 (modified to add names of parties, appropriate pronouns and summary of contentions re claim and defenses for misappropriation of trade secrets).

**CACI 4402 "Trade Secret" Defined**

     To prove that each item of information was a trade secret, Priority Sports must prove all of the following:

1.     That each item of information secret;

2.     That each item of information had actual or potential independent economic value because it was secret; and

3.     That Priority Sports made reasonable efforts to keep each item of information secret.

1    Authority:  CACI 4402 (modified to add names of parties and appropriate

2    pronouns).

1

**CACI 4403 Secrecy Requirement**

2

3        The secrecy required to prove that something is a trade secret does not have to

4   be absolute in the sense that no one else in the world possesses the information.  It

5   may be disclosed to employees involved in Priority Sports' use of the trade secret as

6   long as they are instructed to keep the information secret.  It may also be disclosed

7   to non-employees if they are obligated to keep the information secret.  However it

8   must not have been generally known to the public or to people who could obtain

9   value from knowing it.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Authority:  CACI 4403 (modified to add names of parties and appropriate pronouns).

**CACI 4404 Reasonable Efforts to Protect Secrecy**

To establish that the items of information are trade secrets, Priority Sports must prove that it made reasonable efforts under the circumstances to keep it secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Priority Sports, exercising due care to protect important information of the same kind.  This requirement applies separately to each item that Priority Sports claims to be a trade secret.

In determining whether or not Priority Sports made reasonable efforts to keep the items of information secret, you should consider all of the facts and circumstances.  Among the factors you may consider are the following:

    a.    Whether documents or computer files containing the items of information were marked with confidentiality warnings;

    b.    Whether Priority Sports instructed its employees to treat the items of information as confidential;

    c.    Whether Priority Sports restricted access to the items of information to persons who had a business reason to know the information;

    d.    Whether Priority Sports kept the items of information in a restricted or secured area;

    e.    Whether Priority Sports required employees or others with access to the items of information to sign confidentiality or nondisclosure agreements;

    f.    Whether Priority Sports took any action to protect the specific items of information, or whether it relied on general measures taken to protect its business information or assets;

g.    The extent to which any general measures taken by Priority Sports would prevent the unauthorized disclosure of the items of information;

h.    Whether there were other reasonable measures available to Priority Sports that it did not take.

The presence of absence of any one or more of these factors is not necessarily determinative.

Authority: CACI 4404 (modified to add names of parties and appropriate pronouns).

**CACI 4405 Misappropriation by Acquisition**

Mr. Mintz and/or CAA misappropriated Priority Sports' trade secrets by acquisition if Mr. Mintz and/or CAA acquired the trade secrets and knew or had reason to know that he and/or it used improper means to acquire them.

1    Authority:  CACI 4405 (modified to add names of parties and appropriate

2    pronouns).

1

**CACI 4406 Misappropriation by Disclosure**

2

3      Mr. Mintz and/or CAA misappropriated Priority Sports' trade secrets by

4   disclosure if Mr. Mintz and/or CAA:

5          1.      Disclosed them without Priority Sports' consent; and

6          2.      Acquired knowledge of the trade secrets by improper means.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Authority:  CACI 4406 (modified to delete elements that do not apply, and to add names of parties and appropriate pronouns).

**CACI 4407 Misappropriation by Use**

Mr. Mintz and/or CAA misappropriated Priority Sports' trade secrets by use if Mr. Mintz and/or CAA:

1.    Used them without Priority Sports' consent; and

2.    Acquired knowledge of the trade secrets by improper means.

75

Authority:  CACI 4407 (modified to delete elements that do not apply, and to add names of parties and appropriate pronouns).

**CACI 4408 Improper Means of Acquiring Trade Secret**

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, theft, bribery, misrepresentation, or breach or inducing a breach of a duty to maintain secrecy.

However, it is not improper to acquire a trade secret or knowledge of a trade secret by any of the following:

1.      Independent efforts to discover the information;

2.      Observing the information in public use or on public display; or

3.      Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.

Authority:  CACI 4408 (modified to delete elements that do not apply, and to add names of parties and appropriate pronouns).

**CACI 4410 Unjust Enrichment**

Mr. Mintz and/or CAA were unjustly enriched if their misappropriation of Priority Sports' trade secrets caused Mr. Mintz and/or CAA to receive a benefit that they otherwise would not have achieved.

To decide the amount of any unjust enrichment, first determine the value of Mr. Mintz's and/or CAA's benefit that would not have been achieved except for their misappropriation.  Then subtract from that amount Mr. Mintz's and/or CAA's reasonable expenses.  In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for Priority Sports' actual loss.

79

1  Authority:  CACI 4410 (modified to add names of parties and appropriate

2  pronouns).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CACI 4412 "Independent Economic Value" Explained**

**[*See* SET TWO]**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CACI 4420 Affirmative Defense – Information Was Readily Ascertainable by Proper Means**

Mr. Mintz and/or CAA did not misappropriate Priority Sports' trade secrets if they prove that a particular item of information was readily ascertainable by proper means at the time of the alleged acquisition, use, and/or disclosure of that item.

There is no fixed standard for determining what is "readily ascertainable by proper means."  In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, the Internet, or other published materials.  On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.

Authority:  CACI 4420 (modified to add the Internet as example of source of readily ascertainable information (*see* CACI 4408), and to add names of parties and appropriate pronouns).

**CACI 2201 – Intentional Interference with Contractual Relations**

Priority Sports claims that CAA intentionally interfered with the contract between it and Mr. Mintz.  To establish this claim, Priority Sports must prove all of the following:

1. That there was a contract between Priority Sports and Mr. Mintz;

2. That CAA knew of the contract;

3. That CAA intended to disrupt the performance of this contract;

4. That CAA's conduct prevented performance or made performance more expensive or difficult;

5. That Priority Sports was harmed; and

6. That CAA's conduct was a substantial factor in causing Priority Sports' harm.

1   Authority:  CACI 2201 (modified to add names of parties and appropriate

2   pronouns).

**CACI 2203 Intent**

     In deciding whether CAA acted intentionally, you may consider whether it knew that a breach was substantially certain to result from its conduct.

Authority:  CACI 2203 (modified to add names of parties and appropriate pronouns).

**BAJI 7.86 Privilege of Competition (Fall 2010 Revision)**

Ordinarily, a person who engages in business with the primary aim of making profits for himself or herself is not liable for business losses suffered by a competitor. The privilege of competition is an affirmative defense to a claim of interference with contractual relations where the contract was terminable at will.

The essential elements of the privilege of competition are:

1.  Priority Sports and CAA were engaged in economic competition;

2.  The economic relationship between Priority Sports and Mr. Mintz concerns a matter involved in the competition between Priority Sports and CAA;

3.  CAA did not use wrongful means; and

4.  CAA's purpose was at least in part to advance its interest in competing with Priority Sports.

Authority:  BAJI 7.86 (Fall 2010 revision) (modified to add names of parties and appropriate pronouns).

1

## BAJI 7.86.1 Wrongful Conduct – Defined (2003 Revision)

2

3       "Wrongful conduct" is conduct that is wrongful separate and apart from the

4   fact that the conduct interfered with or disrupted the economic relationship between

5   Priority Sports and Mr. Mintz, and is also wrongful in the sense that the conduct

6   considered by itself constitutes the basis for a claim of breach of contract, breach of

7   the duty of loyalty, or misappropriation of trade secrets.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Authority:  BAJI 7.86.1 (modified to delete elements that do not apply, and to add
2   names of parties and appropriate pronouns).

**CACI 2202 – Intentional Interference With Prospective Economic Relations**

**[*See* Set Three]**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CACI 2203 Intent**

In deciding whether Mr. Mintz and/or CAA acted intentionally, you may consider whether they knew that a breach was substantially certain to result from their respective conduct.

1  Authority:  CACI 2203 (modified to add names of parties and appropriate

2  pronouns).

**BAJI 7.86 Privilege of Competition (Fall 2010 Revision)**

Ordinarily, a person who engages in business with the primary aim of making profits for himself or herself is not liable for business losses suffered by a competitor.  The privilege of competition is an affirmative defense to a claim of interference with contractual relations where the contract was terminable at will.

The essential elements of the privilege of competition are:

1.  Priority Sports was engaged in economic competition with CAA and/or Mr. Mintz;

2.  The economic relationship between Priority Sports and Paul George, Jordan Crawford, Terrence Ross, Mike Scott, Danny Granger, Jeff Adrien, Acie Law, Bobby Brown, Malcolm Thomas, J.R. Giddens, Joe Crawford, Mike Taylor, Bryce Taylor, Jared Sullinger, Damien Lillard, Meyers Leonard, John Jenkins, and/or Robert Sacre concerns a matter involved in the competition between Priority Sports and CAA, and/or between Priority Sports and Mr. Mintz;

3.  Neither CAA nor Mr. Mintz used wrongful means; and

4.  CAA's and/or Mr. Mintz's purpose was at least in part to advance their respective interest in competing with Priority Sports.

95

1  Authority:  BAJI 7.86 (Fall 2010 revision) (modified to add names of parties and
2  appropriate pronouns).

1

**BAJI 7.86.1 Wrongful Conduct – Defined (2003 Revision)**

2

3        "Wrongful conduct" is conduct that is wrongful separate and apart from the

4   fact that the conduct interfered with or disrupted the economic relationship between

5   Priority Sports and Paul George, Jordan Crawford, Terrence Ross, Mike Scott,

6   Danny Granger, Jeff Adrien, Acie Law, Bobby Brown, Malcolm Thomas, J.R.

7   Giddens, Joe Crawford, Mike Taylor, Bryce Taylor, Jared Sullinger, Damien Lillard,

8   Meyers Leonard, John Jenkins, and/or Robert Sacre, and is also wrongful in the

9   sense that the conduct considered by itself constitutes the basis for a claim of breach

10  of contract, breach of the duty of loyalty, or misappropriation of trade secrets.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Authority:  BAJI 7.86.1 (modified to delete elements that do not apply, and to add names of parties and appropriate pronouns).

**CACI 2100 Conversion – Essential Factual Elements**

Priority Sports claims that Mr. Mintz wrongfully exercised control over its personal property.  To establish this claim, Priority Sports must prove all of the following:

1.    That Priority Sports owned a Blackberry, laptop computer, and/or three boxes of Priority Sports' documents;

2.    That Mr. Mintz intentionally and substantially interfered with Priority Sports' property by:

- Preventing Priority Sports from having access to the Blackberry, laptop computer, and/or three boxes of Priority Sports' documents; and/or
- Refusing to return the Blackberry, laptop computer, and/or three boxes of Priority Sports' documents after Priority Sports demanded its and/or their return;

3.    That Priority Sports did not consent;

4.    That Priority Sports was harmed;

5.    That Mr. Mintz's conduct was a substantial factor in causing Priority Sports' harm.

1   Authority:  CACI 2100 (modified to add claimed items of personal property, and to

2   add names of parties and appropriate pronouns).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Priority Sports' Special Instruction No. 2**

**California Data Access and Fraud Act**

**(Cal. Pen. Code § 502(c))**

Priority Sports also claims that Mr. Mintz violated California's Data Access and Fraud Act, California Penal Code § 502(c) ("Section 502").  Priority Sports has alleged five (5) ways in which Mr. Mintz may have violated Section 502.

The first way Priority Sports may prevail on this claim is to prove, by a preponderance of the evidence, that Mr. Mintz:

1.      Knowingly accessed Priority Sports' computer system; and

2.      Without permission, used the data stored on Priority Sports' computer system in order to either:  (i) devise or execute any scheme or artifice to defraud, or (ii) wrongfully control or obtain property or data.

The second way Priority Sports may prevail on this claim is to prove, by a preponderance of the evidence, that Mr. Mintz:

1.      Knowingly accessed Priority Sports' computer system; and

2.      Without permission, took, copied, or made use of any data stored in Priority Sports' computer system.

The third way Priority Sports may prevail on this claim is to prove, by a preponderance of the evidence, that Mr. Mintz:

1.      Knowingly and without permission used or assisted in using Priority Sports' computer time, data processing, storage functions, or other uses of a computer system or computer network.

The fourth way Priority Sports may prevail on this claim is to prove, by a preponderance of the evidence, that Mr. Mintz:

1.      Knowingly and without permission provided or assisted in

101

1    providing a means of accessing Priority Sports computer

2    system.

3        The fifth way Priority Sports may prevail on this claim is to prove, by a

4    preponderance of the evidence, that Mr. Mintz:

5        1.    Knowingly and without permission accessed or caused to be

6              accessed, Priority Sports computer system.

102

Authority:  Cal. Pen. Code § 502(c)(1),(2),(3),(6),(7).

**CACI 1704 – Defamation per se – Essential Factual Elements (Private Figure – Matter of Private Concern)**

Priority Sports claims that Mr. Mintz harmed it by making one or more of the following statements:

- That another employee was leaving Priority Sports;
- There would be a "mass exodus" of players from Priority Sports, including Danny Granger, David Lee, or Jared Dudley;
- That "he did all the work" at Priority Sports and that Mr. Bartelstein "only came in at the last minute to get his name in the paper;"
- That there was a "mass exodus" of employees leaving Priority Sports and that Reggie Brown was going to leave Priority Sports and join Mr. Mintz at CAA;
- That he was taken advantage of by Mr. Bartelstein in that Mr. Mintz was only paid $125,000 and Mr. Bartelstein took 50% of everything Mr. Mintz brought in;
- That Mr. Bartelstein did not have one or more player's best interests in mind;
- That Mr. Bartelstein was favoring another player, Gordon Hayward, and his career over Paul George;
- That Mr. Bartelstein was favoring Brandon Rush and Carl Landry over Dominic McGuire;
- That Mr. Bartelstein thought Paul George was a bad basketball player and that Gordon Hayward was better than Paul George;
- That during the draft when both Gordon Hayward and Paul George were in the same class, Mr. Bartelstein did everything in his power to make sure that Hayward went ahead of George;

104

1        ▪   That Mr. Bartelstein was more concerned about other basketball

2             players, Brandon Rush and Carl Landry, than he was about

3             Dominic McGuire;

4        ▪   That Mr. Bartelstein had too many clients;

5        ▪   That Mr. Bartelstein was not concerned about having relationships

6             with players, only relationships with teams;

7        ▪   That it was Mr. Mintz, and not Mr. Bartelstein, who had the

8             relationships with the players;

9        ▪   That Mr. Bartelstein was just a figurehead and Mr. Mintz did all

10           the work.

11      To establish this claim, Priority Sports must prove all of the following:

12   *Liability*

13      1.    That Mr. Mintz made one or more of the statements to a person

14           or persons other than Priority Sports;

15      2.    That these people reasonably understood that the statements

16           were about Priority Sports;

17      3.    That these people reasonably understood the statements to be

18           directly injurious to Priority Sports in respect to its office,

19           profession, trade or business, either by imputing to it general

20           disqualification in those respects which the office or other

21           occupation peculiarly requires, or by imputing something with

22           reference to its, profession, trade or business that has a natural

23           tendency to lessen its profits, and

24      4.    That Mr. Mintz failed to use reasonable care to determine the

25           truth or falsity of the statements.

26

27

28

*Actual Damages*

If Priority Sports has proved all of the above, then it is entitled to recover its actual damages if it proves that Mr. Mintz's wrongful conduct was a substantial factor in causing any of the following:

a. Harm to Priority Sports property, business, trade, profession, or occupation;

b. Expenses Priority Sports had to pay as a result of the defamatory statements;

c. Harm to Priority Sports reputation; or

d. Shame, mortification, or hurt feelings.

*Assumed Damages*

Even if Priority Sports has not proved any actual damages for harm to reputation or shame, mortification, or hurt feelings, the law assumes that it has suffered this harm.  Without presenting evidence of damage, Priority Sports is entitled to receive compensation for this assumed harm in whatever sum you believe is reasonable.  You must award at least a nominal sum, such as one dollar.

*Punitive Damages*

Priority Sports may also recover damages to punish Mr. Mintz if it proves by clear and convincing evidence that Mr. Mintz acted with malice, oppression, or fraud.

Authority:  CACI 1704 (modified to add alleged defamatory statements, and to add party names and appropriate pronouns).

1

## CACI 1707 Fact Versus Opinion

2

3       For Priority Sports and/or Mr. Bartelstein to recover, Mr. Mintz's statements

4  must have been statements of fact, not opinion.  A statement of fact is a statement

5  that can be proved to be true or false.  An opinion may be considered a statement of

6  fact if the opinion suggests that facts exist.

7       In deciding this issue, you should consider whether the average listener would

8  conclude from the language of the statement and its context that Mr. Mintz was

9  making a statement of fact.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Authority:  CACI 1707 (modified to add names of parties and appropriate pronouns).

1

**CACI 1720 Affirmative Defense – Truth**

2

3       Mr. Mintz is not responsible for Priority Sports' and/or Mr. Bartelstein's

4  harm, if any, if he proves that his statements about Priority Sports and/or Mr.

5  Bartelstein were true.  Mr. Mintz does not have to prove that the statements were

6  true in every detail, so long as the statements were substantially true.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Authority:  CACI 1720 (modified to add names of parties and appropriate pronouns).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Priority Sports' and Mr. Bartelstein's Special Instruction No. 3**

**Trade Libel**

**[*See* SET THREE]**

## CACI 1707 Fact Versus Opinion

For Priority Sports and/or Mr. Bartelstein to recover, Mr. Mintz's statements must have been statements of fact, not opinion.  A statement of fact is a statement that can be proved to be true or false.  An opinion may be considered a statement of fact if the opinion suggests that facts exist.

In deciding this issue, you should consider whether the average reader would conclude from the language of the statement and its context that Mr. Mintz was making a statement of fact.

Authority:  CACI 1707 (modified to add names of parties and appropriate pronouns).

1

**CACI 1720 Affirmative Defense – Truth**

2

3          Mr. Mintz is not responsible for Priority Sports' and/or Mr. Bartelstein's

4   harm, if any, if he proves that his statements about Priority Sports and/or Mr.

5   Bartelstein were true.  Mr. Mintz does not have to prove that the statements were

6   true in every detail, so long as the statements were substantially true.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Authority:  CACI 1720 (modified to add names of parties and appropriate pronouns).

**CACI 3600 Conspiracy – Essential Factual Elements**

Priority Sports claims that it was harmed by one or more acts by Mr. Mintz, which I will describe to you in a moment, and that CAA is also responsible for the harm because it was part of a conspiracy with Mr. Mintz to commit those acts.  A conspiracy is an agreement by two or more persons to commit a wrongful act.  Such an agreement may be made orally or in writing or may be implied by the conduct of the parties.  Here, Priority Sports claims that it was harmed by the following acts:

- Mr. Mintz's alleged misappropriation of Priority Sports' purported trade secret information;
- Mr. Mintz's alleged intentional interference with prospective economic relations;
- Mr. Mintz's alleged defamatory statements about Priority Sports; and/or
- Mr. Mintz's alleged trade libel about Priority Sports.

If you find that Mr. Mintz committed any or all of the acts which I just described to you, then you must determine whether CAA is also responsible for the harm.  CAA is responsible for the harm if Priority Sports proves both of the following:

1. That CAA was aware that Mr. Mintz planned to misappropriate Priority Sports' alleged trade secrets, intentionally interfere with prospective economic relations, defame Priority Sports, and/or commit trade libel; and

2. That CAA agreed with Mr. Mintz and intended that he commit any of those acts.

Mere knowledge of a wrongful act without cooperation or an agreement to cooperate is insufficient to make CAA responsible for the harm.

A conspiracy may be inferred from circumstances, including the nature of the

117

1  acts done, the relationships between the parties, and the interests of the alleged

2  coconspirators.  Priority Sports is not required to prove that CAA personally

3  committed a wrongful act or that it knew all the details of the agreement or the

4  identities of all the other participants.

Authority:  CACI 3600 (modified to specify alleged wrongful conduct, and to add names of parties and appropriate pronouns).

**CACI 3941, 3946 Punitive Damages – Individual and Entity Defendants –**

**Bifurcated Trial (First Phase)**

If you decide that Mr. Mintz's and/or CAA's conduct, as alleged in Priority Sports' and/or Mr. Bartelstein's claims for violation of the breach of the covenant of good faith and fair dealing, breach of the duty of loyalty, misappropriation of trade secrets, intentional interference with contractual relations, intentional interference with prospective economic relations, Data Access and Fraud Act (California Penal Code § 502), defamation, and/or trade libel, caused Priority Sports and/or Mr. Bartelstein harm, you must decide whether that conduct justifies an award of punitive damages.

At this time, you must decide only whether Priority Sports and/or Mr. Bartelstein has proved by clear and convincing evidence that Mr. Mintz and/or CAA engaged in the respective conduct with malice, oppression, or fraud.  The amount of punitive damages, if any, will be decided later.

To prove that Mr. Mintz acted with malice, oppression, or fraud, Priority Sports and/or Mr. Bartelstein must prove malice, oppression, or fraud based on the definitions of those terms, which I will provide to you in a moment.

To prove that CAA acted with malice, oppression, or fraud, Priority Sports and/or Mr. Bartelstein must prove one of the following:

1.      That the conduct constituting malice, oppression, or fraud was committed by one or more officers directors or managing agents of Priority Sports, who acted on behalf of Priority Sports; or

2.      That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Priority Sports; or

120

3.    That one or more officers, directors, or managing agents of Priority Sports knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Mr. Mintz and/or CAA acted with intent to cause injury or that their respective conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another.  A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid these consequences.

"Oppression" means that Mr. Mintz's and/or CAA's conduct was despicable and subjected Priority Sports and/or Mr. Bartelstein to cruel and unjust hardship in knowing disregard of his rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Mr. Mintz and/or CAA intentionally misrepresented or concealed a material fact and did so intending to harm Priority Sports and/or Mr. Bartelstein.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decisionmaking such that his or her decisions ultimately determine corporate policy.

Authority:  CACI 3941, 3946 (modified to combine CACI 3941 and 3946, specify causes of action, delete elements that do not apply, and to add the names of parties and appropriate pronouns).

**CACI 3942 Punitive Damages – Bifurcated Trial (Second Phase)**

You must now decide the amount, if any, that you should award Priority Sports and/or Mr. Bartelstein in punitive damages.  The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages.  If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a)   How reprehensible was Mr. Mintz's and/or CAA's conduct?  In deciding how reprehensible Mr. Mintz's and/or CAA's conduct was, you may consider, among other factors:

1.   Whether the conduct caused physical harm;

2.   Whether Mr. Mintz and/or CAA disregarded the health or safety of others;

3.   Whether Priority Sports and/or Mr. Bartelstein was financially weak or vulnerable and Mr. Mintz and/or CAA knew Priority Sports and/or Mr. Bartelstein was financially weak or vulnerable and took advantage of it and/or him;

4.   Whether Mr. Mintz's and/or CAA's conduct involved a pattern or practice; and

5.   Whether Mr. Mintz and/or CAA acted with trickery or deceit.

(b)   Is there a reasonable relationship between the amount of punitive damages and Priority Sports' and/or Mr. Bartelstein's harm, or between the amount of punitive damages and potential harm to Priority Sports and/or Mr. Bartelstein that Mr. Mintz

123

and/or CAA knew was likely to occur because of his and/or its conduct?

(c)    In view of Mr. Mintz's and/or CAA financial condition, what amount is necessary to punish him and/or it and discourage future wrongful conduct?  You may not increase the punitive award above an amount that is otherwise appropriate merely because Mr. Mintz and/or CAA may have substantial financial resources.

1  CACI 3942 (modified to delete elements that do not apply, and to add names of

2  parties and appropriate pronouns).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Mr. Mintz's and CAA's Special Instruction No. 5**

2

**Affirmative Defense – Unclean Hands**

3

4      Mr. Mintz and/or CAA claim as a defense that Priority Sports' and/or Mr.

5   Bartelstein's misconduct precludes their respective enforcement of the following

6   counterclaims:

7           ▪ Breach of contract;

8           ▪ Breach of the implied covenant of good faith and fair dealing;

9           ▪ Breach of the duty of loyalty;

10          ▪ Misappropriation of trade secrets;

11          ▪ Intentional interference with contractual relations;

12          ▪ Intentional interference with prospective economic relations;

13          ▪ Conversion

14          ▪ Violation of the Data Access and Fraud Act (California Penal

15            Code § 502),

16          ▪ Defamation;

17          ▪ Trade Libel; and

18          ▪ Conspiracy

19      To establish this defense, Mr. Mintz and/or CAA must prove that Priority

20   Sports' and/or Mr. Bartelstein's conduct was unconscionable and resulted in

21   prejudice to Mr. Mintz and/or CAA.

22      Priority Sports' and/or Mr. Bartelstein's misconduct must be directly

23   connected to the respective counterclaim, and of such prejudicial nature that it

24   would be unfair for Priority Sports' and/or Mr. Bartelstein's to affirmatively bring

25   that counterclaim.  If that is established by Mr. Mintz and/or CAA, then Priority

26   Sports and/or Mr. Bartelstein are barred from affirmatively pursuing that respective

27   affirmative counterclaim.

28

1     For purposes of this defense, the term "unconscionable" means an act or

2  transaction showing no regard for conscience, affronting the sense of justice,

3  decency, or reasonableness.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Authority:  MB 300F.29 (modified to add relevant causes of action, and to add

2    names of parties and appropriate pronouns); *Black's Law Dictionary* 1561 (8th ed.

3    2004) (defining "unconscionability").

# SET TWO

**Contested Instructions**

**Propounded by Plaintiff Aaron L. Mintz**

**Opposed by Defendants Priority Sports and Mark Bartelstein**

### CACI 4412 "Independent Economic Value" Explained

[Propounded by Mr. Mintz and CAA / Opposed by Priority Sports and Mr. Bartelstein]

Information has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.

In determining whether each item of information had actual or potential independent economic value because it was secret, you may consider the following:

    a.    The extent to which Priority Sports obtained or could obtain economic value from the items of information in keeping them secret;

    b.    The extent to which others could obtain economic value from the items of information if they were not secret;

    c.    The amount of time, money, or labor that Priority Sports expended in developing the items of information; and

    d.    The amount of time, money, or labor that would be saved by a competitor who used the items of information.

The presence of absence of any one or more of these factors is not necessarily determinative.

1    Authority:  CACI 4412 (modified to add names of parties and appropriate

2    pronouns).

3

4    **Basis for Adopting Mr. Mintz's and CAA's Proposed Instruction:**

5         Mr. Mintz and CAA respectfully request that the Court adopt their proposed

6    instruction regarding the definition of "independent economic value" because the

7    "additional factor" proposed by Priority Sports and Mr. Bartelstein is duplicative of

8    a factor already included in CACI 4412.

9         Specifically, CACI 4412 lists "[t]he amount of time, money, or labor that

10   would be saved by a competitor who used the [item of information]" as a factor in

11   the jury's consideration of whether certain information has actual or potential

12   independent economic value.  The common sense rationale for this factor is that if a

13   competitor can use the information to compete more selectively and/or efficiently

14   (*i.e.*, by saving time, money, or labor in acquiring the information on its own), then

15   that information may have independent economic value.  Priority Sports' suggested

16   additional element of "[t]he extent [the information] permits a competitor to solicit

17   customers both more selectively and efficiently" is redundant and would only serve

18   to confuse the jury.

19

20

21

22

23

24

25

26

27

28

## CACI 4412 "Independent Economic Value" Explained

[Alternative Instruction Propounded by Priority Sports and Mr. Bartelstein / Opposed by Mr. Mintz and CAA]

Information has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.

In determining whether each item of information had actual or potential independent economic value because it was secret, you may consider the following:

a.   The extent to which Priority Sports obtained or could obtain economic value from the items of information in keeping them secret;

b.   The extent to which others could obtain economic value from the items of information if they were not secret;

c.   The amount of time, money, or labor that Priority Sports expended in developing the items of information; and

d.   The amount of time, money, or labor that would be saved by a competitor who used the items of information.

e.   The extent it permits a competitor to solicit customers both more selectively and more efficiently.

The presence of absence of any one or more of these factors is not necessarily determinative.

132

1   Authority:  CACI 4412 (modified to add optional, additional factor, and add names

2   of parties and appropriate pronouns); *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514,

3   1522 (Cal. App. 1st Dist. 1997) (quoting *Klamath-Orleans Lumber, Inc. v. Miller*,

4   87 Cal. App. 3d 458, 466 (Cal. App. 2d Dist. 1978)).

5

6   **Basis for Adopting Priority Sports' and Mr. Bartelstein's Alternative Proposed**

7   **Instruction:**

8        CACI 4412 lists four factors a jury may consider in determining whether

9   information has independent economic factors.  It also invites the parties to "insert

10  other applicable factors."  Priority Sports has incorporated the language from

11  *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1522 (1997), which quotes *Klamath-*

12  *Orleans Lumber, Inc. v. Miller*, 87 Cal. App. 3d 458, 466 (1978) with approval.

13  *Morlife* dealt with a trade secrets claim where a defendant, after leaving his

14  employment with the plaintiff, used a customer list to solicit business and compete

15  with his former employer.  The court in *Morlife* discussed factors to determine

16  whether the customer list held "independent economic value."  The court found:

17       [A] customer list can be found to have economic value because its disclosure

18       would allow a competitor to direct its sales efforts to those customers who

19       have already shown a willingness to use a unique type of service or product as

20       opposed to a list of people who only might be interested. [Citation]. Its use

21       enables the former employee "to solicit both more selectively and more

22       effectively." (*Klamath-Orleans Lumber*, *supra*, 87 Cal. App. 3d at 466.)

23  *Morlife, Inc*., 56 Cal. App. 4th at 1522.  In the case at bar, Priority Sports alleges that

24  its trade secrets is comprised of confidential information that included client names

25  and their contact information, contact information for clients' family members and

26  other key decision makers, recruiting plans and strategies, special client

27  requirements and preferences.  The information is directly analogous to the customer

28  lists discussed in *Morlife*, which dealt with a list where an "employer has expended

133

1   time and effort identifying customers **with particular needs or characteristics**[.]"

2   *Id*. at 1521 (emphasis added).  CACI 4412 invites the parties to add factors

3   established in law, applicable to the case at hand.  The proposed instruction is both

4   proper and instructive for the jury.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Mr. Mintz Special Instruction No. 5**

**Preparation to Leave Employment versus Active Competition**

[Propounded by Mr. Mintz and CAA / Opposed by Priority Sports and Mr. Bartelstein]

An employee does not breach his duty of loyalty by preparing to compete with his employer.  Nor does an employee have to disclose his preparations to resign from his employer or preparations to compete with his employer following his resignation.

Thus, for Priority Sports to recover on its claim for breach of the duty of loyalty, it must prove, by a preponderance of the evidence, that Mr. Mintz was actively involved in a competing enterprise while he was still employed by Priority Sports, and not merely preparing to resign from Priority Sports and/or preparing to compete with Priority Sports following his resignation.

Authority:  *See Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 719 (2008) ("An employee does not breach his duty of loyalty by *preparing* to compete with his employer") (emphasis in original); *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 347 (1966) (no duty to disclose plans for resignation or post-resignation competition absent special circumstances); *Fowler v. Varian Associates*, 196 Cal. App. 3d 34, 41 (1987) (finding breach of the duty of loyalty where employee became actively involved in forming a competitor company during his employment and failed to use information about the new company's plans to further his employer's business); *Stokes v. Dole Nut Co.*, 414 Cal. App. 4th 285, 292 (1995) (finding breach of the duty of loyalty where two employees actively built competitive business during employment, including buying land, meeting with banks to secure loans, discussing plans to leave with other employees, generating financial projections and proposals, and reaching out to governmental and financial agencies regarding new business).

**Basis for Adopting Mr. Mintz's and CAA's Proposed Instruction:**

Mr. Mintz and CAA respectfully request that the Court adopt their proposed special instruction related to Priority Sports' counterclaim for breach of the duty of loyalty.  Mr. Mintz and CAA do not dispute that an employee cannot engage in conduct inimical to the employer's interests.  This instruction would explain to the jury the boundaries of lawful and unlawful conduct in the context of this case.  The above-cited authorities state that an employee does not engage in conduct inimical to the employer's interests when the employee's conduct constitutes preparations to compete, as opposed actual competition, with the employer.  The jury should be aware of this legal principle, and decide whether the facts presented at trial support a finding that Mr. Mintz prepared to compete, rather than actively competed, against Priority Sports during his employment.

1    **Priority Sports' and Mr. Bartelstein's Objection to Mr. Mintz's Proposed**
2    **Special Instruction No. 5**

3    [Propounded by Mr. Mintz and CAA / Objected to by Priority Sports and Mr.
4    Bartelstein]

5          Mr. Mintz adds a special instruction not contained in CACI that is both
6    superfluous and improper. As a matter of law, an employer is entitled to an
7    employee's undivided loyalty, and as such, an employee may not take actions during
8    the term of his employment that are contrary to the best interest of his employer.
9    *See Stokes v. Dole Nut Co*., 41 Cal.App.4th 285, 295 (1995) (duty of loyalty is
10   breached "when the employee takes action which is inimical to the best interests of
11   the employer"); *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007) ("thus
12   an employee, while employed, owes *undivided loyalty* to his employer"; also
13   holding that the employee duty of loyalty is encompassed by the fiduciary duty of an
14   agent to a principal because both flow from a relationship, not a contract) (emphasis
15   added); *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34 (1987) ("California law
16   does not authorize an employee to transfer his loyalty to a competitor. During the
17   term of employment, an employer is entitled to its employees' 'undivided loyalty.')
18   (citation omitted). Mr. Mintz's proposed special instruction is nothing but a rehash
19   of an argument he made at summary judgment. His attempt to now create his own
20   jury instruction to persuade the jury that he was merely "preparing to compete" is
21   inappropriate and unnecessary.

22
23
24
25   **SET THREE**

26   **Contested Instructions**

27   **Propounded by Counterclaimants Priority Sports and Mark Bartelstein**
28   **Opposed by Counterdefendants Aaron L. Mintz and CAA**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25 **CACI 2202 – Intentional Interference With Prospective Economic Relations**

26 [Propounded by Priority Sports and Mr. Bartelstein / Opposed by Mr. Mintz and

27 CAA]

28

1    Priority Sports claims that Mr. Mintz and/or CAA intentionally interfered with

2 an economic relationship between it and any of the following third party NBA

3 players that probably would have resulted in an economic benefit to Mr. Mintz: Paul

4 George, Jordan Crawford, Terrence Ross, Mike Scott, Danny Granger, Jeff Adrien,

5 Acie Law, Bobby Brown, Malcolm Thomas, J.R. Giddens, Joe Crawford, Mike

6 Taylor, Bryce Taylor, Jared Sullinger, Damien Lillard, Meyers Leonard, John

7 Jenkins, and/or Robert Sacre. To establish this claim, Priority Sports must prove all

8 of the following:

9      1.      That Priority Sports and any of the NBA players I just named

10             were in an economic relationship that probably would have

11             resulted in an economic benefit to Priority Sports;

12     2.      That Mr. Mintz and/or CAA knew of the relationship;

13     3.      That Mr. Mintz and/or CAA intended to disrupt the

14             relationship;

15     4.      That Mr. Mintz and/or CAA engaged in wrongful conduct

16             through conduct through breaching his employment contract

17             with Priority Sports, breaching his duties of good faith and fair

18             dealing and loyalty, misappropriating trade secrets,

19             intentionally interfering with contractual relations, conversion,

20             violation of Cal. Penal Code § 502, defamation, and/or trade

21             libel;

22     5.      That the relationship was disrupted;

23     6.      That Priority Sports was harmed; and

24     7.      That Mr. Mintz's and/or CAA's wrongful conduct was a

25             substantial factor in causing Priority Sports' harm.

26

27

28

139

Authority:  CACI 2202 (modified to add names of parties and third parties, appropriate pronouns, and description of wrongful conduct).

**Basis for Adopting Priority Sports' and Mr. Bartelstein's Proposed Instruction:**
Such conduct included providing proprietary information to competitor CAA, and interfering with player contracts.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

23 **Mr. Mintz's and CAA's Objection to Priority Sports' Use of CACI 2202**

24 [Propounded by Priority Sports and Mr. Bartelstein / Objected to by Mr. Mintz and

25 CAA]

26

27 CACI 2202 requires Priority Sports to specify the alleged *conduct* that it

28 contends constitutes the unlawful interference.  Priority Sports has identified causes

141

of action.  Causes of action are not conduct.  The Court should inform the jury of the specific conduct that Priority Sports contends was "wrongful" other than the alleged interference itself.  Informing the jury that the alleged wrongful conduct was a "breach of contract" or a "misappropriation of trade secrets" invites the jury to make a legal determination rather than a factual determination.

**Priority Sports' Special Instruction No. 2**

**Trade Libel**

[Propounded by Priority Sports and Mr. Bartelstein / Opposed by Mr. Mintz and CAA]

Priority Sports claims that Mr. Mintz has committed trade libel.  Trade libel occurs through the publication of a false statement that intentionally disparages the

142

quality of a party's business and induces another not to deal with that party, which causes the party an actual economic loss.  To establish this claim, Priority Sports must prove all of the following:

1. That Mr. Mintz made a false statement;

2. That the statement made by Mr. Mintz specifically refers to Priority Sports, or is of and concerning Priority Sports in some way;

3. That Mr. Mintz made the statement to persons other than Priority Sports; and

4. That Priority Sports incurred pecuniary harm or loss; and

5. That Mr. Mintz's statements caused Priority Sports' pecuniary harm or loss.

Authority:  *ComputerExpress, Inc.*, 93 Cal. App. 4th 993, 1010 (2001); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1113 (C.D. Cal. 2004).

**Basis for Adopting Priority Sports' and Mr. Bartelstein's Proposed Instruction:**

The purpose of jury instructions is to provide jurors with the law, not a summary of the facts.  *See* CACI 100 ("At the end of the trial, ***I will explain the law***

143

that you must follow to reach your verdict.") (emphases added). Discovery in the instant case is ongoing, and Priority Sports is not obligated to predict what facts it will or will not present for the purposes of a jury instruction. The instruction is a proper guide to the law to which the jury may then apply the facts presented.

**Priority Sports' Special Instruction No. 2**

**Trade Libel**

[Alternate Instruction Propounded by Mr. Mintz and CAA / Opposed by Priority Sports and Mark Bartelstein]

Priority Sports also claims that Mr. Mintz has committed trade libel.  Trade libel is the intentional disparagement of the quality of property resulting in pecuniary (monetary) damage.  Trade libel differs from defamation in that an action for defamation is designed to protect the reputation of the plaintiff, whereas an action for trade libel is based on pecuniary damages and succeeds only where the plaintiff suffers such damage.

To establish on its claim for defamation, Priority Sports must prove all of the following:

1.    That Mr. Mintz published one or more of the following statements to a person other than Priority Sports:

- That another employee was leaving Priority Sports;
- There would be a "mass exodus" of players from Priority Sports, including Danny Granger, David Lee, or Jared Dudley;
- That "he did all the work" at Priority Sports and that Mr. Bartelstein "only came in at the last minute to get his name in the paper;"
- That there was a "mass exodus" of employees leaving Priority Sports and that Reggie Brown was going to leave Priority Sports and join Mr. Mintz at CAA;
- That he was taken advantage of by Mr. Bartelstein in that Mr. Mintz was only paid $125,000 and Mr. Bartelstein took 50% of everything Mr. Mintz brought in;
- That Mr. Bartelstein did not have one or more player's best interests in mind;
- That Mr. Bartelstein was favoring another player, Gordon Hayward, and his career over Paul George;
- That Mr. Bartelstein was favoring Brandon Rush and Carl

145

1  Landry over Dominic McGuire;

2  ▪ That Mr. Bartelstein thought Paul George was a bad

3  basketball player and that Gordon Hayward was better than

4  Paul George;

5  ▪ That during the draft when both Gordon Hayward and Paul

6  George were in the same class, Mr. Bartelstein did

7  everything in his power to make sure that Hayward went

8  ahead of George;

9  ▪ That Mr. Bartelstein was more concerned about other

10  basketball players, Brandon Rush and Carl Landry, than he

11  was about Dominic McGuire;

12  ▪ That Mr. Bartelstein had too many clients;

13  ▪ That Mr. Bartelstein was not concerned about having

14  relationships with players, only relationships with teams;

15  ▪ That it was Mr. Mintz, and not Mr. Bartelstein, who had the

16  relationships with the players;

17  ▪ That Mr. Bartelstein was just a figurehead and Mr. Mintz

18  did all the work.

19  2.    That the statements were false;

20  3.    That the statements disparaged Priority Sports;

21  4.    That the statements induced others not to deal with Priority

22  Sports;

23  5.    That Priority Sports incurred specific, pecuniary damage; and

24  6.    That Mr. Mintz's publication of the statement(s) was a

25  substantial factor in causing Priority Sports' pecuniary damage.

26  For purposes of this claim, "disparagement" means derogatory or belittling to

27  the quality of Priority Sports' property or its business in general.

28

146

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
Authority:  *ComputerExpress, Inc.*, 93 Cal. App. 4th 993, 1010 (2001) (providing
24
elements); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1113 (C.D. Cal. 2004)
25
(providing elements); *Nichols v. Great Am. Ins. Cos.*, 169 Cal. App. 3d 766, 773
26
(1985) (defining "disparage" for purposes of trade libel) (citing *Erlich v. Etner*, 224
27
Cal. App. 2d 69. 73 (1964)); *Cort v. St. Paul Fire & Marine Ins. Cos.*, 311 F. 3d
28
979, 986 (9th Cir. Cal. 2002) (distinguishing defamation from trade libel).

147

1

2   **Basis for Adopting Mintz's and CAA's Proposed, Alternative Instruction:**

3       Mr. Mintz and CAA respectfully request that the Court adopt their proposed

4   special instruction regarding trade libel for two reasons.  First, knowing the

5   statements at issue enables the jury (as well as the Court and the parties) to assess

6   correctly whether the specific facts of this case establish each element of the

7   counterclaim.  Indeed, CACI 1704 (defamation per se) requires the parties to include

8   the specific statements at issue.  The parties have included CACI 1704 in these

9   instructions and do not dispute the inclusion of the allegedly defamatory statements

10  therein.  There is no reason the instruction for trade libel should be any different.

11  Second, the element requiring Priority Sports to demonstrate that the alleged

12  statements induced others not to deal with it is plainly required by the above-cited

13  authority.  Priority Sports' failure to include this element in its proposed instruction

14  is contrary to the law.

15

16

17

18

19

20

21

22

23

24

25

26

27

28