## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | N/A | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**    IN CHAMBERS ORDER re:

[48]    MOTION for Summary Judgment as to All Counterclaims or, alternatively, MOTION for Partial Summary Judgment as to declaratory relief; violation of the Computer Fraud and Abuse Act; violation of the Electronic Communications and Privacy Act; violation of California Penal Code §502; invasion of privacy; unfair business practices under state law; and all counterclaims filed by Plaintiff and Counterdefendants Creative Artists Agency LLC, Aaron L Mintz;

[56]    MOTION for Partial Summary Judgment filed by Defendants and Counterclaimants Mark Bartelstein and Associates Inc.

## I.    INTRODUCTION

This case arises from the departure of a basketball sports agent from his old agency, Mark Bartelstein & Associates, Inc. d/b/a Priority Sports & Entertainment ("Priority Sports"), to join the Creative Arts Agency ("CAA"). On March 23, 2012, Plaintiff Aaron Mintz ("Plaintiff") filed the instant action against his erstwhile employer, Priority Sports, seeking a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that two provisions of Plaintiff's employment contract with Priority Sports are unenforceable, namely a two-year non-compete clause and the requirement of fourteen days' written notice of termination. (Compl. I ¶¶ 15-16).

On April 6, 2012, Plaintiff filed a separate complaint against Priority Sports and its principal, Mark Bartelstein (collectively, "Defendants"), alleging that following Plaintiff's resignation, Defendants had engaged in a course of illegal retaliatory conduct, which included acquiring unauthorized access to Plaintiff's personal emails, obtaining confidential information about the terms of Plaintiff's employment with CAA, and disclosing this information to third parties. (Compl. II ¶ 1). Thus, the second complaint advances the following causes of action: (1) violation of the Computer Fraud and Abuse Act ("CFAA"),

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

18 U.S.C. § 1030; (2) violation of the Electronic Communications and Privacy Act ("EPCA"), 18 U.S.C. §§ 2501 et seq.; (3) violation of the California Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502; (4) defamation; (5) invasion of privacy; (6) interference with prospective economic relations; and (7) violation of the California Unfair Business Practices Act ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.[1]

On April 17, 2012, Priority Sports counterclaimed alleging that before and after his resignation, Plaintiff conspired with CAA to misappropriate Priority Sports' confidential information, to convert Priority Sports' clientele to CAA, and to breach the terms of Plaintiff's employment contract with Priority Sports. (Counterclaim ¶¶ 3-4). Priority Sports accordingly asserts the following counterclaims: (1) breach of contract against Mintz; (2) breach of the covenant of good faith and fair dealing against Plaintiff; (3) breach of the duty of loyalty against Plaintiff; (4) misappropriation of trade secrets against Plaintiff and CAA (collectively, "Counterdefendants"); (5) intentional interference with contractual relations as to CAA; (6) intentional interference with present and prospective economic advantage and business relationships against Counterdefendants; (7) conversion against Plaintiff; (8) violation of California Penal Code § 502 against Plaintiff; (9) defamation against Plaintiff; (10) trade libel against Plaintiff; (11) conspiracy against Counterdefendants; and (12) violation of the UCL against Counterdefendants. (Dkt. 9).

On October 1, 2012, Plaintiff and CAA filed the instant Motion for Summary Judgment as to all Defendants' counterclaims, or in the alternative, Motion for Partial Summary Judgment on Plaintiff's claims with respect to the Declaratory Judgment Act, the CFAA, the ECPA, California Penal Code § 502, invasion of privacy, and unfair competition. (Dkt. 48).[2] Defendants simultaneously filed a Motion for Partial Summary Judgment as to their claims against Plaintiff for breach of contract and breach of the duty of loyalty. (Dkt. 56).

For the reasons below, Plaintiff's Motion for Summary Judgment on its own claims is GRANTED with respect to the claims for violation of California Penal Code § 502 and invasion of privacy, but DENIED with respect to the claim under the UCL. Further, the Court GRANTS summary judgment in favor of Defendants on Plaintiff's claims for declaratory relief, violation of the CFAA, and

---

[1] This complaint initially was filed under a separate case number, 2:12-cv-03055-SVW-SS. On June 11, 2012, the Court consolidated Plaintiff's two complaints into a single case, with the first-filed action being the lead case. (Dkt. 19).

[2] In other words, the Motion does not seek summary judgment on the claims for defamation and the interference with prospective economic advantage.

| | : |
|---|---|
| Initials of Preparer | PMC |

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

violation of the ECPA.  Counterdefendants' Motion for Summary Judgment as to Defendants' counterclaims is GRANTED as to every claim.  Accordingly, Defendants' Motion for Partial Summary Judgment is DENIED as moot.

## II.    FACTS

### A.    Plaintiff's Employment Contract with Priority Sports

Priority Sports is a Chicago-based sports agency that represents professional atheletes.  Plaintiff worked in Priority Sports' Los Angeles office for eleven years, from September 25, 2001 until March 23, 2012.  When he began working for Priority Sports, Plaintiff signed an employment contract.  Pursuant to the employment agreement, Plaintiff agreed:

> (1)  To devote all working time, knowledge, skill, attention, and energy, using his best efforts, to the duties and responsibilities set forth herein;
> (2)  To serve and further the interest of the Company in every lawful way; and
> (3)  To follow the Company's policies and directives, and any modifications thereof.

(Compl. I, Ex. A ¶ II(A)).  Plaintiff further agreed:

> that during the Employee's employment with the Company the Employee will not, directly or indirectly, on behalf of himself or others either as an employee, consultant, owner, independent contractor or in any other capacity whatsoever:
>
> 1.  Solicit Company Clients or business on behalf of a Company Competitor;
> 2.  Recruit Company employees on behalf of a Company Competitor;
> 3.  Perform or engage in activities or in the provision of services, in any capacity, on behalf of or for a Company Competitor;
> . . . or
> 5.  Disclose Confidential Business Information to anyone, including, without limitation, Company Competitors not affiliated with the Company, without the Company's prior written consent.

(Id. ¶ II(B)).

_____ :  _____

Initials of Preparer                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

The employment contract also set forth specific terms concerning termination and its aftermath. Section IV(D) states that Plaintiff "may terminate his employment with the Company for any reason or no reason upon fourteen (14) days' written notice to the Company."  (Id. ¶ IV(D)).  Further, Section V(A) sets forth what is referred to by the parties as the non-compete provision:

> For two (2) years following the termination of the Employee's employment, regardless of the reason therefore, the Employee agrees that the Employee will not, directly or indirectly, on behalf of himself or others either as an employee, consultant, owner, independent contractor or in any other capacity whatsoever:
>
> 1.  Solicit Company Clients;
> 2.  Recruit Company employees for or on behalf of Company Competitors;
> 3.  Disclose Confidential Business Information to persons not affiliated with the Company, including, without limitation, Company Competitors, without the Company's prior written consent; or
> 4.  Provide, or assist in providing, either directly or through a Company Competitor, services that are, or are similar to the services, provided by the Company to a Company Client.

(Id. ¶ V(A)).  Finally, the employment contract provides that:

> Upon and after the termination of Employee's employment, regardless of the reason therefor, the Employee shall not copy, duplicate, and/or remove documents containing Confidential Business Information from Company offices, and the Employee will promptly return to the Company any such documents the Employee possesses.

(Id. ¶ V(B)).

**B.    Plaintiff's Resignation from Priority Sports**

In early March 2012, CAA offered Plaintiff a job.  It is undisputed that on March 23, 2012, Plaintiff terminated his employment with Priority Sports without giving fourteen days' written notice. (Def. Response to Pl. Uncontroverted Facts ("DUF") 6).  That evening, Plaintiff spoke on the telephone

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|----------|---------------------------------------------|------|------------------|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

with Bartelstein and informed him of his resignation. Bartelstein allegedly concluded the conversation by saying, "Wait until I tell the world about this. You made your bed, you better be ready to lie in it." (Mintz Decl. ¶ 15).

### C.     Defendants' Alleged Retaliation Against Plaintiff

On March 25, 2012, Priority Sports' General Counsel, Rick Smith, instructed another employee, Bradley Ames, to access Plaintiff's personal email account (a.k.a. the "Gmail account") without Plaintiff's permission. (DUF 7-10). Ames obtained a temporary password without Plaintiff's consent and accessed Plaintiff's Gmail account for at least twenty minutes. (DUF 11). It is undisputed that Ames viewed a copy of Plaintiff's employment agreement with CAA. (DUF 12). The next day, Plaintiff's colleague, Kevin Zuckerman, emailed Plaintiff the following message: "I'm in shock! Rumor on the street is that CAA is paying you less money over 4 years then [sic] you would have made here. I don't get it[.] You had a 50-year guaranteed deal here." (DUF 15). Plaintiff contends that Defendants leaked his employment terms with CAA to a third party named Josh Ketroser. (DUF 16). Plaintiff further alleges that Bartelstein subsequently defamed him in front of various NBA team executives and players to persuade them not to follow Plaintiff to CAA. (Mot. at 6).

### D.     Plaintiff and CAA's Alleged Misconduct

Defendants first claim that Plaintiff breached his employment by failing to give fourteen days' written notice of his resignation effective March 23, 2012. In addition, Defendants assert that during Plaintiff's negotiations with CAA, and while Plaintiff was still employed by Priority Sports, he provided CAA with a copy of his employment contract with Priority Sports. Bartelstein also attested in his declaration that prior to his resignation, Plaintiff failed to inform Priority Sports that a client's relative had complained about the company's marketing department. (Bartelstein Decl. ¶ 10). Bartelstein further claims that prior to his resignation, Plaintiff failed to advise Priority Sports about (1) his communications with a prospective client named Mike Scott, (2) his attempted communications with prospective client Terrence Ross and his family; and (3) his communications with another prospective client, Rob Sacre. (Id. ¶¶ 11-12).

## III.   LEGAL STANDARD

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Tarin v. County of Los Angeles, 123 F.3d 1259, 1263 (9th Cir. 1997).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. See Celotex Corp v. Catrett, 477 U.S. 317, 323-24 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000) (internal quotations and citations omitted). However, if the moving party does not bear the burden of proof, it can satisfy its Rule 56(c) burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Either way, if the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the nonmoving party must identify specific facts, drawn from the materials on file, that show that an issue is genuinely disputed. See Celotex, 477 U.S. at 324. A nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Likewise, a scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. Addisu v. Fred Meyer, 198 F.3d 1130, 1134 (9th Cir. 2000). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id.

Only admissible evidence may be considered in deciding a motion for summary judgment. Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge . . . The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. "A 'justifiable inference' is not necessarily the most likely inference or the most persuasive inference. Rather, 'an inference as to another material fact may be drawn in favor of the nonmoving party ... if it is 'rational' or 'reasonable.'" United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (internal citation omitted).

## IV.   PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON HIS CLAIMS

### A.   Declaratory Judgment

Plaintiff seeks a declaratory judgment invalidating two provisions in his employment contract with Priority Sports: (1) the two-year non-compete clause; and (2) the requirement for fourteen days'

| | : |
|---|---|
| Initials of Preparer | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|----------|---------------------------------------------|------|------------------|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

written notice of termination.  (Compl. I. ¶¶ 2, 5).  Before reaching the merits, however, the Court addresses Defendants' argument that the issue of the non-compete clause is moot.

### 1.      No Controversy as to Non-Compete Provision

Where, as here, a plaintiff seeks a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the district court must first inquire whether there is an actual case or controversy within its jurisdiction.  Principal Life Ins. Ca v. Robinson, 394 F.3d 665, 669 (9th Cir. 2004).  "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Active Sports Lifestyle USA, LLC v. Old Navy, LLC, No. SACV 12–572 JVS (Ex), 2012 WL 2951924, at *2 (C.D. Cal. July 16, 2012) (internal quotation marks omitted).  The burden is on the party seeking declaratory relief to establish the existence of an actual controversy.  Id. at *2 n.3.

Here, Defendants claim there is no extant controversy with respect to the non-compete clause because "Priority Sports has made clear to Mintz and CAA that it would not attempt to enforce the two-year non-compete provision at issue."  (Def. Opp. at 7); (Dacus Decl. ¶ 8).  At the hearing before the Court held on October 29, 2012, defense counsel reassured the Court that Defendants had no intention of seeking to enforce the non-compete clause now or in the future.  In response, Plaintiff argues that notwithstanding its proffer, Defendants have refused some requests to stipulate to an order declaring that it will not enforce the non-compete clause.  (Horn Decl. ¶ 13).  At the hearing, Defendants responded that their refusal was not based on any desire to enforce the non-compete provision, but rather their concerns with the overbreadth of the stipulation.  At any rate, there is no evidence that Defendants have attempted, in this or any other litigation, to enforce the non-compete clause.  The Court therefore concludes that Plaintiff has not met its burden of demonstrating an actual controversy with "sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Active Sports, 2012 WL 2951924 at *2.

### 2.      No Controversy as to Notice of Termination

Plaintiff next argues that the contractual provision for two-weeks' notice is unenforceable.  To be clear, Plaintiff does not take issue with the notice requirement itself.  Rather, Plaintiff challenges Priority Sports' supposed position that Plaintiff *remained* employed for fourteen days *after* his resignation, and thus was barred from competing with Priority Sports during that time.  In short, Plaintiff only contends that the two-weeks' notice provision is unenforceable "to the extent Priority Sports asserts it prevented Mintz from competing for clients, including his own clients, *after* his

|  |  | : |  |
|--|--|---|--|
| | Initials of Preparer | | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

resignation." (Reply at 3) (emphasis added).

However, Plaintiff has misconstrued Defendants' position. In their Opposition, Defendants concede that the notice provision "did not prevent Mintz from terminating his employment or from joining CAA; nor did it prevent Mintz from competing fairly with Priority Sports after his termination date." (Opp. at 9). Instead, Defendants only argue that Plaintiff breached the notice provision by failing to give fourteen days' notice of his resignation. Plaintiff cannot conjure an actual controversy by distorting Defendants' position on the notice provision. Given the foregoing, the Court concludes that because Plaintiff and Defendants' positions are not in fact opposed, there is no actual controversy over the effect of the notice provision.

For the reasons above, the Court concludes that there is no litigable controversy with respect to either claim for declaratory relief. Therefore, Plaintiff lacks standing to seek declaratory relief. The Court therefore GRANTS summary judgment for Defendants with respect to the claims for declaratory relief. See Gospel Missions of America v. City of Los Angeles, 328 F.3d 548, 553 (9th Cir. 2003) ("Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment against a moving party if that party has had a full and fair opportunity to ventilate the issues involved in the matter.") (internal quotation marks omitted).

### B.      Computer Fraud and Abuse Act ("CFAA")

Plaintiff contends that Defendants violated the CFAA by hacking into Plaintiff's Gmail account. (Compl. II ¶¶ 22-25). The CFAA is a federal statute that imposes liability on anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." 18 U.S.C. § 1030(a)(2). The CFAA also imposes liability on whoever "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value." 18 U.S.C. § 1030(a)(4).

A person who "suffers damage or loss" by reason of a CFAA violation may bring a civil action against the violator under five enumerated circumstances. 18 U.S.C. §§ 1030(g), (c)(4)(A)(i)(I)-(V). In the present case, only one of these avenues is relevant: Plaintiff must show that his case involves "loss to 1 or more persons during any 1–year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). "Loss" is defined as "***any reasonable cost to any victim***, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11) (emphasis

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|----------|---------------------------------------------|------|------------------|

| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. |
|-------|-----------------------------------------------------------|

added).

Defendants do not dispute that Priority Sports violated the terms of either §§ 1030(a)(2) or (4). (Opp. at 10). Rather, they challenge whether Plaintiff has presented evidence worthy of a directed verdict that he sustained a "loss" in excess of $5,000. Plaintiff has submitted evidence that he incurred $27,796.25 in attorneys' fees and costs to use the Court's subpoena power to identify Priority Sports as the party that hacked into the Gmail account. (Horn Supp. Decl. (Dkt. 72-1) ¶ 2, Ex. A). The Court concludes, however, that this is insufficient to satisfy the statutory threshold, for two reasons.

First, a "loss" is defined as "any reasonable cost *to any victim*." 18 U.S.C. § 1030(e)(11) (emphasis added). It is undisputed, however, that the legal fees in question were paid not by Plaintiff, but by CAA, which is not a victim of this offense. Moreover, Plaintiff has cited no evidence that he will be required to repay CAA in part or in full. Accordingly, there is no basis to conclude that Plaintiff has personally suffered a loss as a result of the offense.[3]

Second, even if CAA's involvement does not preclude a finding that Plaintiff suffered a loss, the Court holds that the litigation expenses in this case do not qualify as a "loss" under the CFAA. To be sure, courts in the Ninth Circuit have recognized the general principle that "[c]osts associated with investigating intrusions into a computer network and taking subsequent remedial measures are losses within the meaning of the state." Kimberlite Corp. v. Does, No. C08-2147 TEH, 2008 WL 2264485, at *1-2 (N.D. Cal. 2008). Careful examination of these cases, however, reveals that the instant litigation costs do not fall under this precept.

In Kimberlite, for instance, an individual hacked into a corporation's computer network and email system. In pursuing a CFAA claim, the plaintiff corporation submitted evidence that its staff "spent over 100 hours investigating the matter and taking steps to repair the Kimberlite email system following the intrusions," and that "the cost of securing the Kimberlite email system and conducting [an] investigation has exceeded $5,000." Id. at *2. The court found the alleged loss was enough to state a claim under the CFAA. See also Multiven, Inc. v. Cisco Systems, Inc., 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010) (awarding summary judgment to plaintiff where it provided evidence that it "expended

---

[3] The Eighth Circuit reached a different conclusion in United States v. Millot, 433 F.3d 1057 (8th Cir. 2006). The court focused on the language that a plaintiff must show "loss to 1 *or more persons* during any 1-year period . . . aggregating at least $5,000 in value." Id. at 1061-62 (citing 18 U.S.C. § 1030(a)(5)(B)(i) (West 2006)) (emphasis added). However, this approach fails to take account of the fact that "loss" is expressly delimited to the reasonable cost *to any victim*. Accordingly, the Court is not persuaded by this non-controlling authority.

|  |  | : |  |
|--|--|---|--|
|  | Initials of Preparer | | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

at least $75,000 investigating the intrusions into their network and restoring the security and integrity of Cisco's proprietary systems"). In both Kimberlite and Multiven, the expenses were oriented toward investigating the extent of the harm and repairing the harm.

Only in limited circumstances have courts considered the cost of discovering the identity of the offender to be part of the "loss" under the statute. In SuccessFactors, Inc. v. Softscape, Inc., 544 F. Supp. 2d 975 (N.D. Cal. 2008), one of the plaintiff's competitors hacked into a password-protected area of the plaintiff's website and took several screenshots. Id. at 978. The competitor then sent those screenshots to hundreds of the plaintiff's actual or prospective customers in an email titled "SuccessFactors Failures and Problems." Id. at 977. The plaintiff brought a CFAA claim, alleging that it had expended more than $5,000 in investigating the extent of the breach and locating the perpetrator's IP address. Id. at 981. The Court held that these expenses qualified as a "loss," reasoning that "where the offender has actually accessed protected information, discovering who has that information and what information he or she has is essential to remedying the harm." Id. In other words, investigating the perpetrator's identity was only justified to the extent that it was necessary to remedy the harm.

As an initial matter, the Court recognizes that this case is similar to SuccessFactors insofar as the offender here also accessed protected information, namely the employment contract with CAA. However, the instant case is readily distinguishable because the litigation costs in question were not "essential to remedying the harm" of the unauthorized access. In SuccessFactors, the relevant "harm" of the unauthorized access was that the plaintiff had no clue whether the hacker might invade the website again or send additional spam emails to the plaintiff's customers. To remove that extant risk, it was necessary for the plaintiff to track down the perpetrator. This kind of harm is conspicuously absent from the instant case. To begin, Plaintiff's own evidence establishes the undisputed fact that, within days of the hacking incident, Plaintiff was already convinced that Priority Sports was responsible for the breach of the Gmail account. (Mintz Decl. ¶ 19); (Ketroser Decl. ¶ 3). Moreover, it is undisputed that within days of the hacking, Plaintiff discovered that a Priority Sports employee, Kenny Zuckerman, had learned of, and disclosed to others, Plaintiff's compensation with CAA. (Mintz. Decl. ¶ 20); (Ketroser Decl. ¶ 2). Thus, by that time, it was pellucid that Priority Sports was responsible for the offense, and that it had accessed Plaintiff's employment contract with CAA. All Plaintiff needed to do to secure his Gmail account – indeed, all he could do – was to change the password and the back-up email address used to retrieve the password. It defies common sense to believe that Plaintiff's subsequent legal efforts to confirm Priority Sports' involvement were "essential to remedying the harm" of the unauthorized access. By the time the subpoena motions were filed, the harm had long since run its course. Accordingly, the Court concludes as a matter of law that the litigation costs in this case do not count as a "loss" under the CFAA.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|----------|---------------------------------------------|------|------------------|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

In sum, the undisputed facts establish that Plaintiff fails to satisfy the $5,000 threshold and therefore lacks standing to bring a civil action. The Court therefore GRANTS summary judgment for Defendants on the CFAA claim.

**C.      Electronic Communications and Privacy Act ("ECPA")**

Plaintiff next alleges that Defendants violated the Electronic Communications and Privacy Act ("ECPA") by intentionally intercepting an electronic communication, 18 U.S.C. § 2511(1)(a), intentionally disclosing an electronic communication they knew was obtained through an interception, § 2511(1)(c), and intentionally using the contents of an electronic communication they knew was obtained through an interception, § 2511(1)(d).  (Compl. II ¶ 27).

These claims fail as a matter of law because there was no "interception" in this case.  For an email to be "intercepted" in violation of the foregoing provisions, "it must be acquired during transmission, not while it is in electronic storage."  Konop v. Hawaiian Airlines, Inc., 302 F.3d 868, 878 & n.6 (9th Cir. 2002).  The undisputed facts here show that Defendants did not access, disclose, or use any emails that had been acquired during transmission.  Rather, the emails Defendants viewed were stored on Gmail.

Plaintiff attempts to skirt this problem by arguing that Priority Sports' conduct violated the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701, et seq., which is located in a separate part of the ECPA.  See Columbia Pictures, Inc. v. Bunnell, 245 F.R.D. 443, 449-50 (C.D. Cal. 2007). Specifically, Plaintiff now suggests that Priority Sports violated the SCA by "intentionally access[ing] without authorization a facility through which an electronic communication service is provided . . . and thereby obtain[ing] . . . access to a wire or electronic communication while it is in electronic storage in such system."  18 U.S.C. § 2701(a)(1); (Reply at 5).

Plaintiff may not now inject a new theory into the action at the summary judgment stage.  See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000).  The mere fact that the SCA is also part of the ECPA does not mean it covers the same theory of liability.  To state the obvious, section 2701 proscribes unauthorized access to data ***in storage***, whereas section 2511 prohibits unauthorized access to data ***in transmission***.  These are distinct claims.  Nowhere in the complaint does Plaintiff attempt to plead a claim under the SCA.

Because Plaintiff's claim under the ECPA fails as a matter of law, the Court GRANTS summary judgment in favor of Defendants.

|  | : |
|--|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

### D.  California Penal Code § 502

Plaintiff alleges that Priority Sports' unauthorized entry into his Gmail account violated California Penal Code § 502.  (Compl. II ¶¶ 34-37).  That statute imposes liability on whoever "[k]nowingly accesses and without permission . . . uses any data, computer, computer system, or computer network in order to . . . wrongfully control or obtain money, property, or data." § 502(c)(1).[4] In addition, the statute permits "the owner or lessee" of the computer or data "who suffers damage or loss by reason of a violation" to bring a civil action. § 502(e)(1).  "Section 502 sets no threshold level of damage or loss that must be reached to impart standing to bring suit.  Under the plain language of the statute, any amount of damage or loss may be sufficient."  Facebook, Inc. v. Power Ventures, Inc., No. C 08–05780 JW, 2010 WL 3291750, at *4 (N.D. Cal. 2010) (holding that the fact that plaintiff "expended resources" to stop further violations of § 502 sufficed to establish damages, even if such resources only comprised a few "clicks of a mouse" and some "keystrokes").

Upon review, the Court finds that the undisputed facts show that Priority Sports knowingly and without permission used a computer to wrongfully obtain data, in violation of § 502(c)(1).  Specifically, Defendants do not dispute that at the direction of Priority Sport's senior counsel, a Priority Sports employee accessed Plaintiff's Gmail account without permission, and viewed the contents of several emails, including Plaintiff's employment agreement with CAA.  (Opp. at 9).

The Court further finds that Plaintiff has experienced sufficient damage to support a private right of action.  It is undisputed that after the hacking incident, Plaintiff spent some time restoring his Gmail password and investigating who had hacked the Gmail account.  (Mintz Decl. ¶ 19).

In light of the foregoing undisputed facts, the Court concludes that Defendants violated California Penal Code § 502.  Accordingly, the Court GRANTS Plaintiff summary judgment on the § 502 claim.

### E.  Invasion of Privacy

Plaintiff asserts that Priority Sports' unauthorized access to his Gmail account violated his right to privacy under the California Constitution.  (Compl. II ¶¶ 47-55).  To prevail on this claim, Plaintiff

---

[4]  Plaintiff also alleges that Defendants violated other subsections of § 502, though these claims are superfluous to establish liability in this case.  For example, § 502 also imposes liability on any person who takes, copies, or makes use of wrongfully obtained data, § 502(c)(2); or unlawfully accesses or provides a means for accessing any computer, § 502(c)(6)-(7).

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

must establish "(1) a legally protected privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) a serious invasion of the privacy interest." Int'l Fed'n Prof'l & Technical Eng'rs, Local 21, AFL-CIO v. Super. Ct., 165 P.3d 488, 499 (Cal. 2007).

"Whether a legally recognized privacy interest is present in a given case is a question of law to be decided by the court." Hill v. Nat'l Collegiate Athletic Assn., 865 P.2d 633, 657 (Cal. 1994). "Whether plaintiff has a reasonable expectation of privacy in the circumstances and whether defendant's conduct constitutes a serious invasion of privacy are mixed questions of law and fact. If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." Id.

If all three of these elements are established, the plaintiff's privacy interest must be balanced against any countervailing interests of the defendant. "Invasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion is justified by a competing interest." Id. at 655–56. "Conduct alleged to be an invasion of privacy is to be evaluated based on the extent to which it furthers legitimate and important competing interests." Id. at 656.

### 1.     Legally Protected Privacy Interest

Priority Sports does not genuinely dispute that a person has a legally protected privacy interest in his personal financial and employment information. "The protection of one's personal financial affairs . . . against compulsory public disclosure is an aspect of the zone of privacy which is protected by the Fourth Amendment and which also falls within that penumbra of constitutional rights into which the government may not intrude absent a showing of compelling need and that the intrusion is not overly broad." Int'l Fed'n, 165 P.3d at 493. Although the California Supreme Court has recognized that "an individual's expectation of privacy in a salary earned in public employment is significantly less than the privacy expectation regarding income earned in the private sector," id. at 494, this observation reinforces the premise that individuals have a legitimate privacy interest with respect to income earned in the private sector. California courts have similarly recognized an individual's protected privacy interest in his employment personnel file. See El Dorado Sav. & Loan Ass'n v. Super. Ct., 235 Cal. Rptr. 303, 304-305 (Ct. App. 1987). Here, it is undisputed that Priority Sports used Plaintiff's Gmail account to view information about the terms of Plaintiff's employment with CAA, including his compensation. This clearly implicated Plaintiff's legally protected interest in the privacy of his employment and financial affairs.

### 2.     Expectation of Privacy

|  | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

Plaintiff has presented evidence that he had a reasonable expectation of privacy in his personal emails. It is undisputed that the hacked Gmail account was a web-based, personal email account under the address, amintz31@gmail.com. (DUF 7-12). Plaintiff attested in his declaration that he has been the sole account holder since he opened the account. (Mintz Decl. ¶ 18). He further averred that he has "accessed the account through the website www.gmail.com and [has] used it for personal matters." (Id.). He had a separate business email address, aaronm@prioritysports.biz, which he used for business matters. (Id.). He only forwarded email from the business account to the personal account when the email itself concerned personal matters (e.g., medical issues), or if he needed to print a document away from the office where he could not access the business account. (Id.). Plaintiff's Gmail account was password protected at all times, and he has never authorized any Priority Sports employees to access it. (Id.). Based on the foregoing, a reasonable jury could only find that Plaintiff had an expectation of privacy in this personal email account.

Defendants argue that Plaintiff engaged in conduct that belied his expectation of privacy, but none of these contentions have merit. First, Defendants suggest that it was Plaintiff, not Priority Sports, who first divulged the terms of the CAA agreement to a third party named Josh Ketroser. (Opp. at 13). This mischaracterizes Ketroser's testimony. In fact, Ketroser stated that after Plaintiff's resignation, Kenny Zuckerman, an employee of Priority Sports, first disclosed to Ketroser that he had accessed Plaintiff's email account and discovered that his salary at CAA would be less than at Priority Sports. (Ketroser Decl. ¶ 2). It was only afterward that Ketroser contacted Plaintiff, who confirmed the salary figures. (Id. ¶ 3).

Second, Defendants argue, without citing specific evidence, that Plaintiff's girlfriend, Jenna Manos, had access to Plaintiff's Gmail account. However, Plaintiff testified that he gave Manos access to his temporary password so that she could help him investigate who had hacked his Gmail account. (Mintz Decl. ¶ 19). Defendants cite no specific evidence that Manos had always had access to the Gmail account. Therefore, this does not create a triable issue as to whether Plaintiff had an expectation of privacy in the Gmail account.

Third, Defendants contend that because Plaintiff disclosed to CAA the terms of his employment agreement with Priority Sports, he must not, as a general matter, treat any of his employment agreements as confidential. This argument is frivolous. Plaintiff's decision to disclose his existing employment terms in the course of negotiations with CAA does not constitute evidence that he relinquished any expectation of privacy in his separate employment agreement with CAA. If anything, Plaintiff's conduct is consistent with an expectation that absent his voluntary disclosure, the terms of his employment with Priority Sports would have remained confidential.

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

In sum, Defendants have failed to point to specific facts raising a triable issue of whether Plaintiff had a reasonable expectation of privacy. The Court therefore turns to whether Plaintiff has suffered a substantial invasion of his privacy.

### 3.      Serious Invasion of Privacy Interest

"Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." Hill, 865 P.2d at 655. Here, Priority Sports' employee, Ames, admitted in his deposition that (1) he purposely obtained a temporary password to Plaintiff's Gmail account without permission, (2) he opened two to three emails that had been forwarded from Plaintiff's Priority Sports email account; (3) he opened an additional three to four ***personal*** emails that had ***not*** come from Plaintiff's business account; (4) that one of these personal emails related to Plaintiff's employment agreement with CAA; and (5) he then viewed the CAA employment agreement itself. (DUF 7-12).

Based on this evidence, it is clear that Ames did not accidentally stumble into Plaintiff's zone of privacy. Cf. Hernandez v. Hillsides, Inc., 211 P.3d 1063, 1079 (Cal. 2009) ("[N]o cause of action will lie for accidental, misguided, or excusable acts of overstepping upon legitimate privacy rights."). Instead, Ames deliberately accessed Plaintiff's Gmail account without permission, opened several emails, and even read their contents, including the CAA agreement. Indeed, this conduct is so serious and offensive that the California legislature subjects the perpetrator to criminal liability under California Penal Code § 502. Faced with the foregoing, no reasonable jury could find that the invasion was not an egregious breach of social norms.

Rather than citing facts to dispute the seriousness of the invasion, Defendants baldly assert that the intrusion was "de minimis" because it "stems from a review of Mintz's agreement with CAA, nothing more." (Opp. 13). This contention lacks merit. As discussed above, Ames first had to hack into Plaintiff's Gmail account and open several other emails before he read the CAA agreement. This conduct was illegal under California law. Therefore, Defendants have failed to create a triable issue that the invasion was not serious.

### 4.      Competing Interests

Defendants have not posited, and the Court is unaware of any legitimate competing interests that would justify an employer to obtain unauthorized access to an employee's personal, password-protected email account. The balance therefore weighs decisively in favor of Plaintiff.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

Based on the foregoing analysis, the Court concludes that Defendants have failed to adduce specific facts to controvert the evidence supporting the serious invasion that took place in this case. Accordingly, the Court GRANTS Plaintiff summary judgment on the invasion of privacy claim.

### F.    Unfair Competition Law

Plaintiff alleges that by virtue of the aforementioned claims, Defendants have engaged in "unlawful business acts or practices" in violation of California's UCL.  (Compl. II ¶¶ 67-75).  The statute proscribes any business act or practice forbidden by another law.  Walker v. Countrywide Home Loans, Inc., 98 Cal. App. 4th 1158, 1169 (2002).  However, following the passage of Proposition 64, a private plaintiff has standing to sue under the UCL only if he "has suffered injury in fact and has lost money or property as a result of such unfair competition."  Californians for Disability Rights v. Mervyn's, LLC, 138 P.3d 207, 209 (Cal. 2006) (internal quotation marks omitted).  "The plain import of this is that a plaintiff now must demonstrate some form of economic injury."  Kwikset Corp. v. Superior Court, 246 P.3d 877, 885 (Cal. 2011).

Even if Plaintiff has suffered some injury, he has failed to carry his initial burden to show that he lost any money or property as a result of violations of other laws.  "Numerous courts have held that a plaintiff's 'personal information' does not constitute money or property under the UCL."  In re iPhone Application Litig., No. 11–MD–02250–LHK, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011).  Accordingly, the Court DENIES Plaintiff's Motion for Summary Judgment on the UCL claim.[5]

## V.    PLAINTIFF AND CAA'S MOTION FOR SUMMARY JUDGMENT AS TO PRIORITY SPORTS' COUNTERCLAIMS[6]

### A.    Breach of Contract (Against Plaintiff)

In its counterclaim, Priority Sports alleges that Plaintiff breached his employment contract by,

---

[5]  The Court would have gone further and granted summary judgment in favor of Defendants, but for the fact that Plaintiff's claims for defamation and economic interference remain outstanding. Because the fact-finder may decide at trial that the defamation and intentional interference, if any, resulted in economic injury, it is possible that these claims would form the predicate acts of Plaintiff's UCL claim.  The Court therefore declines to grant summary judgment for Defendants on the UCL claim.

[6]  This section overlaps with Defendants' Cross-Motion for Partial Summary Judgment on its claims for breach of contract and breach of the duty of loyalty.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

inter alia, (1) working for CAA prior to his resignation; (2) soliciting players on CAA's behalf prior to his resignation; (3) misappropriating Priority Sports' trade secret and confidential information and sharing it with CAA before and after his resignation; (4) failing to provide fourteen days' written notice; and (5) failing to return company property, i.e. conversion. (Counterclaim ¶ 67). Because the Court concludes in separate sections below that the misappropriation and conversion claims fail as a matter of law, they likewise cannot support a breach of contract claim here. The Court therefore proceeds to address whether Priority Sports has raised any triable issues as to the remaining grounds for breach of contract.

A claim for breach of contract has three essential elements: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis West Realty, LLC v. Goldman, 250 P.3d 1115, 1121 (Cal. 2011).

Plaintiff moves for summary judgment on the ground that Priority Sport has failed to raise a triable issue that it suffered damages as a result of any breach by Plaintiff. For example, Plaintiff concedes that there is evidence that, at some point before or after his resignation, he solicited the personal agent of NBA player Taj Gibson. Even assuming the conversation took place before Plaintiff's resignation, it is undisputed that Gibson did not leave Priority Sports to follow Plaintiff to CAA. (DUF 23); (Mintz Decl. ¶ 35). Accordingly, no jury could find that this harmed Priority Sports.

To attempt to stave off summary judgment, Priority Sports cites a different example of Plaintiff's alleged misconduct. Priority Sports alleges that Plaintiff "admitted that he communicated with at least two recruits while at Priority Sports, Mike Scott and Terrence Ross, did not provide updated information to Priority Sports, and instead signed their deals at CAA." (Opp. at 16). This bare allegation fails to raise a triable issue for several reasons. To begin, Priority Sports entirely neglects to cite the relevant facts in the record that support this assertion.[7] Nor has Priority Sports directed the Court to any shred of evidence that Scott and Ross are now clients with CAA. Furthermore, the only place in the record any ostensible support is found is in the declaration of Mark Bartelstein. He only averred, however, that Plaintiff failed to inform him of "communications" or "contacts" with Scott, Ross, and Sacre prior to Plaintiff's resignation. Even crediting this testimony, which lacks foundation, there is no evidence that

---

[7] Priority Sports cites "Additional Material Facts" 47 and 48, but these cited parts of the record do not support the allegations concerning Ross and Scott. This lack of diligence is reason enough to disregard these allegations. Carmen v. San Francisco United School District, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

Plaintiff's "communications" with these players included solicitations to join CAA. To make this assumption would constitute mere speculation. <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1277 (9th Cir. 2005) ("A 'reasonable' inference is one that is supported by a chain of logic, rather than, as in this case, mere speculation dressed up in the guise of evidence."). For all the reasons above, these allegations are insufficient to create a triable issue.

Priority Sports likewise cannot establish damage resulting from Plaintiff's failure to give fourteen days' notice. Priority Sports contends that the lack of notice "deprived Priority Sports of the opportunity to reach out to those of its clients who had worked with client-service teams that included Mintz and to secure its relationships with those clients before Mintz's departure was a *fait accompli*." (Opp. at 16). The sole support for this assertion is Bartelstein's declaration, in which he claims that because of the lack of notice, he was unable to contact a client until five days after Plaintiff's resignation. (Bartelstein Decl. ¶ 7). But Bartelstein also concedes that the client remained with Priority Sports. (<u>Id.</u>). Therefore, there is no basis to conclude Priority Sports was damaged. Moreover, Bartelstein's deposition testimony belies the contention that the lack of notice prevented Priority Sports from calling its clients. When asked, "Didn't you call all of those players?" Bartelstein replied, "I did." (Horn Decl. (Dkt. 61), Ex. A at 301:9-11). Finally, Priority Sports fails to identify a single client that it lost as result of Plaintiff's failure to give notice. Based on this deficient showing, the Court concludes that no rational fact-finder could conclude that Plaintiff's failure to give notice damaged Priority Sports.

In review, Priority Sports has failed to create a triable issue that it suffered damages as a result of the alleged breach of contract. Accordingly, the Court GRANTS Plaintiff summary judgment on the breach of contract counterclaim.

**B.    Breach of Implied Covenant of Good Faith and Fair Dealing (Against Plaintiff)**

Where "allegations of breach of the covenant of good faith do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." <u>Bionghi v. Metropolitan Water Dist. of So. California</u>, 70 Cal. App. 4th 1358, 83 Cal. Rptr. 2d 388 (Ct. App. 1999).

In reviewing Priority Sports' Counterclaim, it clearly relies on the same predicate acts that undergird the breach of contract claim. (Counterclaim ¶¶ 71-74). Priority Sports responds in its papers by raising various new theories of liability not raised in the Counterclaim, but these may not be deployed at the last minute to avoid summary judgment. <u>See</u> Coleman, 232 F.3d at 1294. Thus, the Court GRANTS Plaintiff summary judgment on the breach of implied covenant counterclaim.

|  | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

### C.      Breach of the Duty of Loyalty (Against Plaintiff)

Priority Sports next alleges that Plaintiff breached his duty of loyalty to Priority Sports.  To establish this claim, Priority Sports must demonstrate: "(1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach."  Huong Que, Inc. v. Luu, 58 Cal. Rptr. 3d 527, 535 (Ct. App. 2007).

Preliminarily, the Court notes that this claim is based in large part on the same factual allegations of misconduct discussed in the section above.  (Counterclaim ¶ 77).  Because the foregoing facts do not create a triable issue of breach of contract, neither can they give rise to a breach of the duty of loyalty.  Nygard, Inc. v. Uusi-Kerttula, 72 Cal. Rptr. 3d 210, 224 (Ct. App. 2008) (because defendant did not breach his employment contract, the court "necessarily" concluded that he did not breach the duty of loyalty).

The Court recognizes, however, that Priority Sports also bases its duty of loyalty claim on other factual allegations not discussed above.  For example, the Counterclaim alleges that Plaintiff planned his transition to CAA while he was still employed by Priority Sports.  (Counterclaim ¶¶ 77(e)-(f)).  Thus, in its Opposition, Priority Sports points to facts that supposedly establish a pattern of disloyal conduct: (1) Plaintiff and CAA agreed that CAA would pay for Plaintiff's representation in connection with his future employment with CAA; (2) Plaintiff and CAA entered into a joint defense agreement related to the instant litigation; and (3) Plaintiff met with CAA's attorneys once he decided he would resign from Priority Sports.  (Def. St. Uncontroverted Facts II (Dkt. 56-1) ¶¶ 16-18).

Even if these facts are true, they do not create a triable issue for two reasons.  First, under California law, an employee does not breach his duty of loyalty merely by preparing to compete with his employer.  Mamou v. Trendwest Resorts, Inc., 81 Cal. Rptr. 3d 406, 433 (Ct. App. 2008).  Thus, courts have held that an employee may set up a competing organization without breaching the duty of loyalty.  Id. at 433-34.  While some preparation is permitted, "California law does not authorize an employee to transfer his loyalty to a competitor."  Fowler v. Varian Assoc., Inc., 241 Cal. Rptr. 539, 543 (Ct. App. 1987).  Here, Plaintiff's interactions with CAA and its attorneys were made in preparation for his future employment with CAA.  Without more, however, the facts presented do not reasonably support an inference that Plaintiff had transferred his loyalty to CAA before his resignation.

Second, and in any event, Priority Sports has presented no facts that describe how it was harmed by Plaintiff's preparatory steps.  It fails to direct the Court to any evidence, for example, that Plaintiff's plan-making resulted in the loss of a client.  Nor has Priority Sports pointed to evidence of how it may have been disadvantaged in this litigation by virtue of Plaintiff's anticipatory steps.  Because there is no

| | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

triable issue of breach or of damages, the Court GRANTS Plaintiff summary judgment on the duty of loyalty counterclaim.

### D.    Misappropriation of Trade Secrets (Against Counterdefendants)

Priority Sport's Fourth Counterclaim is for misappropriation of trade secrets in violation of California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426.1. This claim has three core elements: "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." Cytodyn, Inc. v. Amerimmune Pharm., Inc., 72 Cal. Rptr. 3d 600, 607 (Ct. App. 2008); Cal. Civ. Code 3426.1(b). The CUTSA defines a "trade secret" as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique or process that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). Plaintiff argues, inter alia, that Priority Sports has failed to offer evidence of any specific instance of misappropriation. The Court agrees.

Priority Sports' Opposition is utterly devoid of evidence that Plaintiff or CAA misappropriated any trade secrets belonging to Priority Sports. Priority Sports argues that Plaintiff "concedes" to using Priority Sports' client lists to contact unidentified "players" via Skype on behalf of CAA. (Opp. 15:10-13, 19:7-9 (citing AMF 47, 55)). The cited evidence, however, comprises statements by Bartelstein, not by Plaintiff. Moreover, none of Bartelstein's statements mention any misappropriation by Plaintiff or CAA. (Bartelstein Decl. ¶¶ 6-7, 13-14). Because Priority Sports has failed to discharge its burden under Rule 56, the Court GRANTS Plaintiff and CAA summary judgment on the misappropriation counterclaim.

### E.    Intentional Interference with Contractual Relations (Against CAA)

Priority Sport asserts that CAA induced Plaintiff to breach his employment contract. (Counterclaim ¶ 93). In the usual case, to prove intentional interference with contractual relations, a plaintiff must demonstrate:

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

> (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

Pac. Gas & Elec. Co. v. Bear Stearns & Co., 791 P.2d 587, 589-90 (Cal. 1990).  However, California affords greater solicitude to interfering conduct in the context of at-will employment:

> [T]o recover for a defendant's interference with an at-will employment relation, a plaintiff must plead and prove that the defendant engaged in an independently wrongful act—i.e., an act proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard—that induced an at-will employee to leave the plaintiff.

Reeves v. Hanlon, 95 P.3d 513, 520 (Cal. 2004) (internal citation and quotation marks omitted).

Priority Sports has failed to present any evidence that CAA committed any independently wrongful act to induce Plaintiff to breach or disrupt its at-will employment contract with Priority Sports. This conclusion is bolstered by the Court's grant of summary judgment for CAA on the misappropriation counterclaim.  Accordingly, the Court GRANTS CAA summary judgment as to the interference with contractual relations counterclaim.

**F.      Intentional Interference with Present and Prospective Economic Advantage and Business Relationships (Against Plaintiff and CAA)**

Priority Sports alleges that (1) CAA interfered with Priority Sports' business relationship with Plaintiff; and (2) Plaintiff and CAA interfered with Priority Sports' business relationships with NBA players.  (Counterclaim ¶¶ 100-101).

The elements of a claim for intentional interference with prospective economic advantage mirror those for intentional interference with an at-will employment contract, including the requirement that the plaintiff establish that the defendant engaged in an "independently wrongful act," that is, "if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d 937, 953-54 (Cal. 2003).

The Court has already determined that no jury could find that (1) Plaintiff breached the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|----------|---------------------------------------------|------|------------------|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

employment contract, the implied covenant, or his duty of loyalty; or that (2) Plaintiff or CAA misappropriated any of Priority Sports' trade secrets; or that (3) CAA intentionally interfered with Priority Sports' contractual relations with Plaintiff. Apart from this, Priority Sports provides no evidence that either Plaintiff or CAA has engaged in any other independently wrongful conduct. Accordingly, the Court GRANTS Counterdefendants summary judgment as to this counterclaim.

### G.    Conversion (Against Plaintiff)

Defendants assert that Plaintiff removed and retained without permission property belonging to Priority Sports, including two boxes of documents, a laptop computer, and cell phone. (Counterclaim ¶ 105). Priority Sports has since conceded, however, that Plaintiff has returned the laptop and the boxes of documents. (Counterclaim ¶ 84); (Opp. at 21). Thus, the only question is whether Plaintiff's failure to return the cell phone constitutes conversion.

Conversion has three elements under California Law: (1) ownership or right to possession of property; (2) wrongful disposition of the property right; and (3) damages. G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc., 958 F.2d 896, 906 (9th Cir. 1992). Plaintiff asserts that the cell phone belongs to him, and that he has turned over to Priority Sports any telephone numbers and text messages on the device. (UF 57). Plaintiff further argues that Priority Sports cannot show it has been damaged.

Priority Sports claims ownership on the ground that "Mintz recently admitted in deposition that he still has possession of his company Blackberry and that he is not willing to return it to Priority Sports." (Opp. at 21:13-15 (citing AMF 38)). The cited evidence, however, states to the contrary that "Priority Sports and Mr. Mintz dispute ownership of the Blackberry he used while employed by Priority Sports." (Horn Decl. ¶ 15). This is not the first time in this Order that the Court has exposed clear misstatement of evidence by counsel for Priority Sports. Counsel are warned that further errors of such an egregious nature will be construed by the Court as indicative of bad faith, and may be grounds for sanctions. At any rate, this error serves to highlight Priority Sports' lack of evidence that it owns the cell phone in question. The Court GRANTS Plaintiff summary judgment as to the conversion claim.

### H.    California Penal Code § 502 (Against Plaintiff)

Priority Sports initially claimed that Plaintiff accessed its computers without permission and copied or deleted data in violation of California Penal Code §§ 502(c)(1), (2), (3), (6), (7). (Counterclaim ¶¶ 110, 111, 113). Plaintiff contends, however, that the evidence refutes this allegation. Specifically, when Bartelstein, Priority Sport's "Person Most Knowledgeable," was asked, "You can't

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|----------|---------------------------------------------|------|------------------|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

identify any files that Mr. Mintz copied or deleted from Priority Sports, correct, you sitting here today cannot?" Bartelstein responded, "Correct." (Bartelstein Depo. at 147:5-16).

In response, Priority Sports shifts theories, arguing that Plaintiff violated § 502 by wrongfully accessing Priority Sports' confidential information and forwarding it to his Gmail account. This argument fails for two reasons. First, Priority Sports cite no supportive facts in their papers. "Rule 56(e) requires that the adverse party's response, not just the adverse party's various other papers, set forth specific facts establishing a genuine issue." Carmen, 237 F.3d at 1031.

Second, Priority Sports concedes the absence of evidence showing that Priority Sports was damaged by the email forwarding. Specifically, Priority Sports admits that "additional discovery is needed to determine whether and to what extent Mintz's unauthorized access to Priority Sports' computers caused 'damages' of the type that Section 502 was designed to protect." (Opp. at 25 n.3). As a threshold matter, a party seeking further discovery under Rule 56(d)(2) must show that "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008). Priority Sports has failed to file such an affidavit. In any event, the Court finds that Priority Sports has had ample opportunity to pursue discovery on the issue of damages. Accordingly, the Court proceeds to summary judgment. Id. Because Priority Sports has failed to show any evidence of damages, the Court GRANTS Plaintiff summary judgment on the § 502 claim.

**I.      Defamation and Trade Libel (Against Plaintiff)**

Priority Sports alleges that Plaintiff uttered several false and defamatory statements about Priority Sports to third parties that have damaged Priority Sports. It further alleges that Plaintiff made false statements disparaging the quality of Priority Sports' property, goods, and/or services, which has damaged Priority Sports. (Counterclaim ¶¶ 119-22, 127-29). Specifically, Priority Sports asserts "on information and belief" that Plaintiff told an industry blogger that another employee was leaving Priority Sports. (Horn Decl. ¶ 16, Ex. L, Response to Interrogatory 1). In addition, Plaintiff allegedly made various statements to certain NBA players or their associates, conveying that: (1) there would be a "mass exodus" of players from Priority Sports; (2) Priority Sports "was going to fall apart" because of Plaintiff's departure; (3) Bartelstein was "just a figurehead" and Plaintiff "did all the work;" (4) Bartelstein did not have certain players "best interests" in mind; (4) Bartelstein favored other players over the percipient players. (DUF 63).

Plaintiff contends that Priority Sports has not produced evidence that Plaintiff made these

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

statements, and that in any event, the statements are inadmissible hearsay and non-actionable opinions. In response, Priority Sports proffers that it "will prove at trial" that Plaintiff made these statements. Priority Sports misunderstands the purpose of summary judgment: now is the time to produce evidence. Priority Sports has failed to identify any testimony from third parties attesting that Plaintiff made any of the alleged statements.  A nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data.  Taylor, 880 F.2d at 1045.

Priority Sports blames its lack of evidence on CAA for its failure to produce certain NBA players for depositions.  Accordingly, Priority Sports requests a continuance pursuant to Rule 56(d)(2). (Opp. at 23-24).  However, as already explained, a party seeking a continuance pursuant to Rule 56(d)(2) must show that "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."  Family Home, 525 F.3d at 827.

Priority Sports has not satisfied the requirements of Rule 56(d).  Its request for a continuance "did not identify the specific facts that further discovery would have revealed or explain why those facts would have precluded summary judgment."  Tatum v. City and Cnty. of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006).  In a declaration supporting Priority Sports' Opposition, defense counsel stated that he was informed that "counsel for Priority Sports identified to CAA players it believed overheard defamatory statements and CAA's counsel represented that it would accept service for those players." (Dacus Decl. ¶ 9).  The declaration does not, however, refer to any specific facts that the players would establish, or explain why their testimony was "essential to justify" Priority Sport's opposition.  Fed. R. Civ. P. 56(d).  The declaration does not indicate that deferring the resolution of Plaintiff's Motion for Summary Judgment until these players have been deposed would have allowed Priority Sports to supply evidence creating a triable issue that Plaintiff made defamatory remarks that caused damaged.  Absent a showing pursuant to Rule 56(d), the Court denies Priority Sports' request for a continuance.

Because Priority Sports has failed to create a triable issue that Plaintiff made any defamatory or libelous statements, the Court GRANTS Plaintiff summary judgment on the defamation and trade libel claims.

### J.      Conspiracy (Against Counterdefendants)

Priority Sports alleges that Plaintiff and CAA conspired to commit the alleged wrongful acts described in the preceding sections, including the breach of contract, breach of duty of loyalty, and misappropriation.  (Counterclaim ¶ 133).  "Standing alone, a conspiracy does no harm and engenders no tort liability.  It must be activated by the commission of an actual tort.  A civil conspiracy, however

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

atrocious, does not give rise to a cause of action unless a civil wrong has been committed resulting in damage." Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 869 P.2d 454, 457 (Cal. 1994) (internal quotation marks omitted).

Counterdefendants argue that the conspiracy claim cannot survive summary judgment because Priority Sports has failed to raise a triable issue as to any predicate tortious acts. Priority Sports responds with the naked assertion that "there is substantial evidence that Mintz and CAA conspired with each other to inflict severe harm on Priority Sports, both financially and to its reputation, and Priority Sports is entitled to present such evidence in support of its claims at trial." (Opp. at 24). This mere conclusion is insufficient to raise a triable issue of fact. Because there is no evidence of any predicate wrongful acts, the Court GRANTS Counterdefendants summary judgment on the conspiracy claim.

**K.     Unfair Competition Law (Against Counterdefendants)**

Finally, Priority Sports alleges that it was damaged by Counterdefendants' "unlawful, unfair, or fraudulent business practices." (Counterclaim ¶ 139). "By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Cel–Tech Comms. Inc. v. L.A. Cellular Tel. Co., 973 P.2d 527, 539-40 (Cal. 1999). "However, the law does more than just borrow. . . . Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." Id. at 540.

Here, Plaintiff argues that the UCL claim fails because neither Plaintiff nor CAA violated an underlying, predicate law. In response, Priority Sports rests on its papers, maintaining that it "has obtained substantial evidence that Mintz and CAA engaged in numerous unfair and unlawful acts that support their claim for violation of the UCL." (Opp. at 25). The Court has already determined, however, that the evidence presented does not create any triable issue that Counterdefendants are liable for any unlawful act. Moreover, Priority Sports fails to identify any evidence creating any triable issue that Counterdefendants' behavior was unfair or fraudulent within the meaning of the UCL. Because Priority Sports failed to carry its burden under Rule 56(e), the Court GRANTS Counterdefendants summary judgment as to the UCL claim.

**VI.    CONCLUSION**

For the reasons above, Plaintiff's Motion for Summary Judgment on its own claims is GRANTED with respect to the claims for violation of California Penal Code § 502 and invasion of

|  |  | : |  |
|---|---|---|---|
| | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-02554-SVW-SS (2:12-cv-03055-SVW-SS) | Date | November 1, 2012 |
|----------|---------------------------------------------|------|------------------|
| Title    | Aaron Mintz v. Mark Bartelstein and Associates Inc et al. | | |

privacy, but DENIED with respect to the claim under the UCL.  Further, the Court GRANTS summary judgment in favor of Defendants on Plaintiff's claims for declaratory relief, violation of the CFAA, and violation of the ECPA.  Counterdefendants' Motion for Summary Judgment as to Defendants' counterclaims is GRANTED as to every claim.  Defendants' Motion for Partial Summary Judgment on its breach of contract and breach of duty of loyalty claims is DENIED as moot.  In short, the only causes of action that remain to be tried are Plaintiff's claims for defamation, interference with prospective economic relations, and violation of the UCL.

:

Initials of Preparer                    PMC